

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 24 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIE ANNE THOMAS, LEVERETT HOLMES, JOSEFINA CRUZ,
BRIAN SALAZAR, DAVID PAKTER, PAUL SANTUCCI
    On behalf of all persons similarly situated pedagogues,
    Or tenured educational personnel unfairly brought up
    on 3020-a Disciplinary Charges since the 2002
    abolishment of the NYC Board of Education and
    subjected to unlawful confinement in Teacher
    Reassignment Centers a/k/a Rubber Rooms,

                        Plaintiffs,

    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
    f/k/a BOARD OF EDUCATION OF THE CITY
    SCHOOL DISTRICT OF THE CITY OF NEW YORK;
JOEL I. KLEIN, in his official capacity as Chancellor of the
    CITY SCHOOL DISTRICT OF THE CITY
    OF NEW YORK and individually;
    LAWRENCE BECKER, in his official capacity as
    Chief Executive Officer DIVISION OF HUMAN
    RESOURCES and individually;
PHILIP CROWE, in his official capacity as
    HUMAN RESOURCES DIRECTOR, and individually;
JUDITH RIVERA, in her official capacity as DEPUTY
    HUMAN RESOURCES DIRECTOR and individually;
                      Defendants.

ECF CASE:



**CLASS ACTION
COMPLAINT FOR
DECLARATORY,
INJUNCTIVE AND
OTHER RELIEF**

JURY TRIAL IS
DEMANDED

TOWNES, J.

MANN, M.J.

Plaintiffs Marie Ann Thomas, Leverett Holmes, Josefina Cruz, Brian Salazar, David Pakter, Paul

Santucci, on behalf of all similarly situated pedagogues, *i.e.* tenured educational personnel

**unfairly** brought up on 3020-a Disciplinary Charges since the 2002 abolishment of the NYC

Board of Education, who were and many still are, subjected to unlawful confinement in Teacher

Reassignment Centers a/k/a Rubber Rooms where Plaintiffs and the Plaintiff class members

were, are and/or continue to be (i) confined based on charges that are improperly brought without

statutorily required school board vote, without the required checks and balances, without the

required vote by independent officials to determine that "probable cause" existed

upon which to bring charges against teachers removed from their school, (ii) subjected to a "hostile work environment", (iii) kept in the Rubber Rooms through no fault of Plaintiffs or the Plaintiff Class Members, (iv) kept in Rubber Rooms because Defendant NYC Department of Education ("DOE") is simply overwhelmed by the number of teachers they caused to be confined in the overcrowded Rubber Rooms, (v) kept in Rubber Rooms because Defendant NYC DOE does not know what to do with number of teachers teachers they caused to be confined in Rubber Rooms, (vi) kept in Rubber Rooms that in some instances are similar to prison barracks or trailers [1], (vii) kept in Rubber Rooms where there are health and fire dangers, (viii) kept in Rubber Rooms for years upon end during which time they are given no obligations nor provided any in-service training (ix) kept in Rubber Rooms where they are watched by security guards and surveillance cameras; (x) kept in Rubber Rooms in retaliation for and as a means to chill their speech on matters of significant public concern, (xi) transferred to Rubber Rooms outside their districts and given no duties commensurate with their position, both in violation of their rights and the applicable regulations related to where and under which terms they can be removed from or transferred out of their schools, (xii) kept in Rubber Rooms for indefinite periods of time without the timely right to challenge the removal, transfer and/or improperly brought charges, (xiii) kept in Rubber Rooms as a means to cause them with their due process rights, (xiv) kept in Rubber Rooms as a means and in an effort to cause them to quit or force them into retirement, (xv) kept in Rubber Rooms where the only person to whom they may turn for their day to day administrative and reporting needs is a clerical level aide who treats the educators with disrespect, (xvi) kept in Rubber Rooms where they are forced to sign that they will bring no

---

[1]      Photographs of the Rubber Room that was recently created at 191st Street and Audubon Avenue in Northern Manhattan are attached to show examples of the terrible conditions to which Plaintiffs and/or other class members are subjected. At the present time, more than 750 teachers are confined in these trailers enclosed in chain-linked cages, surrounded by double wire fences having security guards control all entry and exit, or in similar confines in other the four other boroughs..

2

electronic devices of any kind and where no telephones, computers, printers, faxes are available for their use (xvii) kept in Rubber Rooms in violation of the constitutional, due process, equal protection, civil and human rights protections as guaranteed under US New York State and New York City law and (xvi) kept in Rubber Rooms in violation of their contractual rights.[2] Plaintiffs complaining of the defendants, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action against Defendants pursuant to Section 1, of the Fourteenth Amendment to the United States Constitution claiming violation of equal protection and violation of due process.

2.     It is also brought pursuant to the free speech clause of the First Amendment to the United States Constitution both reached via 42 U.S.C. 1983.

3.     This Action is also brought under Article I., Sections 8 and 11 of the New York State Constitution.

4.     Plaintiffs, meeting all the requirements under Federal Rule of Civil Procedure 23 (a), (b) (1), (2), (3), assert the Class period is from the abolishment of the NYC Board of Education in 2002 to the present time. The Class is comprised of between 1000 and 2000 tenured educators employed or previously employed by the DOE who were brought up on disciplinary charges without benefit of a vote of the Board of the City School District as required by the provisions of NYS Education Law 3020-a.

5.     In this action, the Plaintiffs, public school teachers and former public school teachers, seek declaratory and injunctive relief, arising from the intentional actions of the

---

[2]       The complaint is brought at this time because of the admissions made during proceedings In the Matter of: New York City Department of Education v David Pakter File  # 9,354 pursuant to Educ. L. 3020-a  during her August 2009 testimony.  That testimony of Defendant Rivera appears to be the first time an official within the Defendant New York City Public Schools was confronted with the issues of the Rubber Rooms and made the admissions that led in part to the filing of this complaint.

defendants acting under color of state law in promulgating policies in which New York City tenured teachers are denied contractual and statutory rights to which all other New York State Teachers are accorded and which New York City teachers were accorded prior to the advent of Mayoral control of the New York City Schools.

## JURISDICTION AND VENUE

6. With respect to the federal claims asserted herein, the Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(a) (3) and (4) for the violation of Plaintiffs' federal statutory rights under 42 U.S.C. § 1983 for violation of their U.S. constitutional rights.

7. Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. The Court's supplemental jurisdiction is invoked under 28 U.S.C. § 1367(a) for state claims herein.

9. The principal place of business for Human Resources administration of NYC Department of Education f/k/a Board of Education of the City School District of the City of New York ("District") is 65 Court Street, Brooklyn, New York, and therefore, venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. §1391.

## PLAINTIFFS

10. Plaintiffs who are putative class representatives are citizens of the United States and several are residents of Brooklyn, New York, residing in Kings County; others reside in New York County and one is a resident of New Jersey, residing in Bergen County. Plaintiffs are or were each tenured public school teachers currently or formerly employed by Defendants, capriciously brought up on disciplinary charges after BOE was abolished.

that were pre-textual, orchestrated, and in some cases perjured and fabricated. Each was sent to a Teacher Reassignment Center ("TRC"), to await the commencement of the New York State Educational Law §3020-a ("3020-a") process. Both the TRC and the way the Collective Bargaining Agreement ("CBA") with the United Federation of Teachers ("UFT") supercedes the statutory provisions of 3020 and 3020-a are unique to NYC.

11.    Each plaintiff was employed by the Defendant DOE, during all or part of the class period.

<u>DEFENDANTS</u>

12.    The DOE is empowered to be the governing body of the District and existing under the laws of the State of New York, and is subject to the provisions of New York State Law, the New York State Constitution and the United States Constitution. At all times relevant to this action, or until Defendants, unlawfully terminated individual Plaintiffs, the DOE has been Plaintiffs' employer within the meaning of employment and contract law.

13.    Defendant Joel I. Klein ("Klein") is the Chancellor of the District at 52 Chambers Street, New York, New York 10007 and, as such, is responsible for its operation. He has held this position since 2002.

14.    Defendant Lawrence Becker ("Becker"), serves as Chief Executive Officer, Division of Human Resources, and as such is the highest level individual below the Chancellor responsible for personnel policies. His offices are located at 65 Court Street, Brooklyn, New York, 11201; he has held this position for all relevant times.

15.    Defendant Philip Crowe ("Crowe") is the Human Resources Director ("HRD") responsible for developing and implementing personnel policies, with and under the direction of Becker to whom he reports. When not in the field, Crowe is to be found at

either 65 Court Street, Brooklyn, New York 11201 or 333 Seventh Avenue, New York, New York, 10001.  Crowe joined the DOE in recent years at the level and position he now holds.

16. Defendant Judith Rivera ("Rivera") has been the Deputy HRD since 2002.  When she is not working from her home in Stroudsburg, PA, she maintains an office at 333 7th Avenue New York, New York 10001; she is responsible for the "oversight" of "reassigned personnel" and has held this position. for all relevant times.

<u>CLASS ACTION ALLEGATIONS</u>

17. Plaintiffs bring this action as a class action pursuant to Rules 23 (a), 23 (b) (1), (b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a Class consisting of all NYC tenured educators who were brought up on NY Education Law §3020-a charges in violation of the provisions of §3020-a which requires that the District's School Board must vote to bring these charges.

18. The members of the Class, comprised of over 1000 tenured, or once tenured, educators, is so numerous that joinder of all members would be impractical.

19. While the number of Class Members is only estimated by Plaintiffs, the exact number will be readily ascertainable through appropriate discovery.

20. Common questions of law and of fact exist as to all members of the Class which predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a. Was the Defendants' creation and use of Teacher Reassignment Centers a/k/a Rubber Rooms an intentional, knowing or reckless act to deprive and/or violate

Plaintiffs' due process, civil and constitutional rights?;

b.   Was the Defendants' creation and use of the Rubber Rooms an attempt to induce constructive termination?;

c.   Does the transfer to and confinement in the Rubber Rooms constitute pre-judging and/or imposition of discipline before proper charges have been filed and adjudicated and in deprivation and/or violation of Plaintiffs' due process, civil and constitutional rights?;

d.   Does the manner of operation of the Rubber Rooms constitute a "hostile work environment" to which Plaintiffs have been wrongfully, improperly and/or negligently subjected?

e.   Do the Rubber Rooms constitute unlawful and/or improper imposition of discipline against Plaintiffs before it has been determined that Plaintiffs should be disciplined and/or before Plaintiffs have been found to have allegedly engaged in any improper conduct or alleged failed to competently discharge their duties?;

f.   Did the Defendants by-passing of or failure to follow the NYS Law Educ. L. 3020-a requirement that the proffered charges against Plaintiffs be reviewed by a formally constituted Board of Education for probable cause and the requirement that a vote be taken before the 3020-a charges are actually brought, constitute a denial of Plaintiffs' due process rights?

g.   Are the Plaintiffs entitled to have any and all adverse ruling made against them, based upon charges that were filed against them without having been reviewed by a formally constituted Board of Education for probable cause and without a vote

being taken before the 3020-a charges are actually brought, reversed and/or expunged for violation of their due process rights?

h. Does the practice of providing Plaintiffs (i.e. NYC tenured educators) with fewer options and rights, under the NYS Educ. L. 3020, than the options and rights afforded tenured educators throughout the rest of NYS, constitute denial of Plaintiffs' equal protection?

i. Does the fact that Defendants have recently admitted that they are aware that their use of the Rubber Rooms violates Chancellor's Regulation C-770 justify immediate, declaratory and injunctive relief?

j. Should the Rubber Rooms should be immediately closed and Plaintiffs reassigned to duties that are in accordance with Chancellor's Regulation C-770?

k. Have the Rubber Rooms been used as a means to interfere with Plaintiffs 1st Amendment Rights or chill their protected speech ?

l. Is the Class is entitled to immediate injunctive and equitable relief and damages?

21. Plaintiffs' claims are shared with the other members of the Class, as Plaintiffs and all members of the class sustained injuries out of Defendants' violation of Plaintiffs' due process and equal protection rights.

22. Plaintiffs shall fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in educational and constitutional law and with NY Educ. L. §§3020, 3020-a, in particular, and who has unique, first hand and extensive experience as to DOE policies, practices and operations.

23. The interests of the named Plaintiffs are coincident with and not antagonistic to the interests of the other Class members.

24. Prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards for conduct of Defendants.

25. In addition, adjudication of the claims of the individual named Class representatives would as, a practical matter, be dispositive of the interests of the other members not parties and would not substantively impair or impede any class members' ability to protect their individual rights and interests.

26. A Class action is superior to other available methods for the fair and efficient adjudication of the claims since joinder of all members of the class is impractical.

<u>FACTUAL ALLEGATIONS</u>

27. In 2002, the Mayor of New York City took over the administration of NYC public schools from the independent school board.

28. One of the first acts was to install a "Chancellor" who had no educational experience but whose principal job was to get rid of the system of tenure, fire tenured pedagogues or make their lives such that work was unbearable.

29. Defendants place budget over programs and competence.

30. Students, teachers, Plaintiffs and the entire NYC public school system suffered.

31. Since 2002 the Mayor of New York City exercised executive control over its school system, granted to him by enabling legislation enacted by the New York State legislature.

32.    The Board of Education was dissolved and operations of the City School District for the City of New York was taken over by the Department of Education.

33.    Some – but not all - functions of the previous Board of Education were transferred to 13-member "Panel on Educational Policy". This Panel was appointed by the Mayor and the functions were to followed as embodied in New York State Education Law §2590-g.

34.    However, unlike the checks and balances and protections prior to Mayoral take over, NYS Education Law §2590-g does not address the issue of review and scrutiny of whether there is Probable Cause to proceed with the prosecution of Disciplinary Charges against tenured educational personnel.

35.    The requirements of NYS Education Law 3020-a, under which tenured personnel may be disciplined for "Just Cause" are absolute and require that before charges can be brought against a tenured educator, the School Board must:

a.    Determine that there is "probable cause" for the proceeding with charges by a majority vote. of the Board.

b.    Make this determination within 5 days of the Charges being filed with the Board.

c.    Ensure that the decision to proceed with the charges is not frivolous, arbitrary, capricious or discriminatory.

36.    Without a School Board to perform these functions, and without the duty to perform this independent review assigned to the Panel on Educational Policy, there is no oversight by anyone other than the tenured educator's Principal to initiate the disciplinary process and Local Superintendent to endorse the Principal's request to prefer file charges against any educator a Principal chooses to remove from the school that Principal administers.

37.   The lack of independent review and the lack of oversight by anyone other than the tenured educator's Principal to initiate the disciplinary process and Local Superintendent to endorse the Principal's request to prefer file charges against any educator a Principal chooses to remove from the school that Principal administers is not consistent with NYS Education Law 3020-a.

38.   This taking away of of due process review of Disciplinary Charges mandated by 3020-a, has been occurring since the Mayoral Control of the NYC Schools began in 2002 and continues to the present.

39.   Concomitant to the failure of a School Board to review, there has been a three to fourfold increase of 3020-a charges brought against NYC teachers compared to a lack of increase in the rate of similar charges being brought against tenured educators elsewhere in the State.

40.   These differential rates, of filing of disciplinary charges, confirm the *de facto* denial of equal protection of the 3020-a law.

41.   Plaintiffs and other pedagogues brought up on disciplinary charges, since the advent of Mayoral control, earn average salaries that are at least $20,000.00 higher than the average for other educators.

42.   They also have the right to earn significant extra "per session" pay for summer school, after school, evening, Saturday, early morning, classes, coaching or other school activities which they are deprived of as soon as they are under investigation until they are completely exonerated.

43.   When teachers go through disciplinary hearings conducted under NYS Educ. Law 3020a, complete exoneration of all charges is exceptionally rare, because Defendant DOE

lawyers work with the Principals (who make the complaints, file the charges and then themselves decide that there is "probable cause" upon which to proceed) to enumerate as many "specifications" or individual charges as can be made, and at times stretching the facts so that the arbitrator will find on some allegation is substantiated, no matter how trivial.

44.    Once a teacher is found guilty of even a frivolous, *de minimus,* or trivial allegation the teacher in NYC, he/she is not returned to regular service but is relegated to serve as an Absent Teacher Reserve ("ATR") or day-to-day substitute, albeit at the same salary level as before.

45.    NYC teachers who are accused of misconduct that could be construed as an inappropriate relationship or inappropriate touching of a student, even if no criminal charges are pending undergo a very brief "probable cause determination" before an arbitrator which is essentially an *ex parte* inquisition where the teacher is present but does not testify or present any witnesses.  If probable cause is determined by the arbitrator, the teacher is removed from the payroll for three months.

46.    Outside of NYC, only conviction of a drug felony or the physical abuse of a minor would cause the suspension without pay of a teacher pending the hearing; conviction of sexual abuse of a minor leads to termination without an additional 3020-a hearing.

47.    Defendants have held workshops at 49-51 Chambers Street, 6th Floor during the 2007-2008 School year during which they instructed staff that the goal of reducing the average teacher salary from $70,000.00 per annum to $60,000.00 per annum included bringing teachers up on 3020-a charges and getting them to retire.

12

48. The teachers brought up on disciplinary charges are also disproportionately African-American, Latino, and over 50 years of age.

49. Without oversight of an independent Board, the charges preferred are more often than not, frivolous, arbitrary, capricious, and frequently an attempt to silence criticism by senior teachers observing new Principals undertaking inappropriate means to make it appear that students are progressing more successfully than is actually occurring to protect their own jobs having traded their tenure for considerable incentive pay based on student performance.

50. Charges are also more often than not preferred against the highest paid teachers, since actual teacher salaries rather than merely number of teachers allocated to a specific school, have been charged to school budgets only since the advent of Mayoral control of the NYC schools.

51. New York City students are thus, being deprived of some of the best educated and most experienced teachers, under the guise of purging the system of what the Chancellor has been told is "deadwood," but in actuality is any teacher or administrator who is perceived by the school Principal to even question much less challenge that Principal's practices.

52. The NYC students have lost some of their most acclaimed teachers in Math, the Sciences, Film, Arts, and other subjects.

53. The minority students who were prepared each year for the best colleges via this program lost an important vehicle to upward achievement and mobility.

54. Teachers with established contacts to assist students with their lives and careers have been removed from the classroom and replaced with younger less experienced teachers to

13

save money and gain submissiveness. The students of said teachers removed without probable cause have suffered. The fine educational programs developed by said teachers have been discontinued.

55.   Instructional initiatives taking years to develop are abandoned when an experienced teacher is replaced with first a year recruit.

56.   Such replacement of tenured teachers to save money is not only detrimental to instruction, it is against the law and it is a deprivation of contractual, statutory and constitutional rights, comprising a "taking" without due process, if charges are brought without "probable cause" and adjudicated without "just cause."

57.   School Districts can be assessed all costs associated with the prosecution of frivolous charges.

58.   Education Laws §§ 2590-j, 3020-a and 3020 were amended to treat New York City different from the rest of the state; these changes *de jure* deny due process and equal protection to New York City tenured educators which they previously enjoyed and which remains the rights of tenured educators in all other parts of the state.

59.   These changes include but are not limited to:

   a.   Loss of the right to select procedures under either a Collective Bargaining Agreement ("CBA") or the statutory language of 3020-a; itself. Only in NYC are tenured educators, denied the provisions of the very statute under which their due process rights are protected  and have no option other than that offered by the CBA.

   b.   Only in New York City do tenured educators have no say in selection of an

14

arbitrator for their proceeding; instead they are assigned an arbitrator from a panel whose members are selected or retained by a process that may be influenced by factors other than obtaining the fairest and most sympathetic arbitrators for the union members facing charges.

c.    Only in NYC are tenured educators brought up on charges for incompetence, denied the statutory provision of the right to a three member panel for their arbitration.

d.    Only in NYC, are arbitrators on a permanent panel paid up to $2000/day while serving on a panel, when the statutory provision is that only *ad hoc* individually selected arbitrators may be paid at the American Arbitration Association ("AAA") rate, while permanent panel members may only be paid $200.00/day.  This arrangement tends to induce arbitrator dependancy on the steady permanent arrangement and to favor the employer they perceive as the more powerful in influencing their own job retention in this role.

e.    Only in NYC are tenured educators, always removed from their assignment pending long waits until their hearings in "reassignment centers"; elsewhere in the state tenured educators who face allegations that are not deemed dangerous to students await their proceedings in place sewhere in the state those accused of conduct that could harm students await their proceedings at home.

f.    Only in NYC must tenured educators, await their hearings on the 3020-a charges in reassignment centers that are tantamount to constructive termination and intentionally operated in a manner designed to induce constructive termination

15

before the 3020-a hearing has ever begun.

g.    Only in NYC are teachers who have not been convicted (or pled guilty) to anything removed from the payroll for three months if the allegation relates to an impropriety of a physical or sexual nature; there may not even be any criminal complaint pending, merely a student's or even a third party allegation.

h.    Elsewhere in the state when the tenured educator has completed the 3020-a process, they are returned to regular duty after a suspension or a fine or a letter of reprimand is imposed as a penalty.

i.    Only in NYC are the only tenured educators to be returned to regular assignment those exceedingly few who are totally exonerated of any and all charges.

j.    In NYC, all tenured educators who have undergone a 3020-a process, and been fined, even nominally, or reprimanded, are forever, thereafter, relegated to perform day-to-day substitute assignments and looked down upon as "pharisees."

60.    Only in NYC are tenured educators, awaiting 3020-a hearings reassigned to "holding pens" where uniformed guards monitor their movements; where they must agree in writing not to use electronic devices of any kind; and where they have no assigned duties but are not permitted to perform other work.

61.    These practices are in violation of Chancellor's Regulation C-770, which specifies, that tenured educators must be reassigned in their own community school district; must be assigned meaningful, appropriate professional work, and must be treated in a dignified, professional and respectful manner.

62.    On June 27, 2008, the DOE and the UFT entered into an agreement which vowed to end

16

many of the most egregious practices herein complained of.  Hereto annexed is said agreement See Exhibit 1.

63.  Said agreement was executed by Defendant Klein and Randi Weingarten, then President of Plaintiffs' union, the UFT.

64.  That agreement has not been complied with by the DOE or the Defendants.

65.  Instead, NYC educators have been, and continue to be herded into over-crowded spaces which confine as many as 300 tenured educators, in a single space (25 Chapel Street, Brooklyn, New York) or in detention camp environments, that are comprised of trailers within chain link cages, prison-style, supervised by a uniformed employee referred to as a "warden." (W. 193rd Street and Audubon Avenue, New York, New York).

66.  No one confined to the reassignment centers or "rubber rooms," sometimes for three or more years has been found guilty of any infraction, whatsoever–the rubber rooms are totally pre-adjudication detention.

67.  To further harass reassigned educators, they are supervised by unskilled, clerical level staff subordinate to Defendant Rivera, who with Defendant Rivera and the Principals who sent them to the rubber rooms, make *post hoc* rules, change the rules after the fact and intentionally conduct themselves in a manner most likely to induce Plaintiffs to suffer humiliation, defamation and to retire earlier than they would otherwise elect to retire.

68.  The conditions can be horrific; the overcrowding and the poor air circulation in the windowless space that was the 333 7th Avenue rubber room, with several Public Employees Safety and Health ("PESH") violations having caused serious respiratory disease in at least 25% of the "reassigned" tenured educators, and having caused the death

17

of one educator, Gilda Teel, whose bronchial pneumonia was not only directly due to the poor air quality in that rubber room, but was exacerbated by clinical depression caused by the false and unjust, but nevertheless trivial single accusation against her, for which the DOE sought her termination.   See Exhibit 2 hereto annexed for a view of the crowded conditions at the 333 Seventh Avenue, Rubber Room in 2006-2007.

69.   Finally, the 10-day statute of limitations in Educ. L. 3020-a to file a Petition with the New York State Supreme Court to commence a Special Proceeding under Article 75 of the Civil Practice Laws and Rules ("CPLR") to contest the arbitral award is highly prejudicial to Petitioners, and denies due process; all other Special Proceedings brought under CPLR Art. 75 have a 90-day statute of limitations.   This may also be an equal protection violation as it only applies to educators.

### FIRST CLAIM: Pursuant to *Amendment XIV of the United States Constitution*

70.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 69.of the complaint with the same force and effect as though fully set forth herein.

71.   Plaintiffs and Class rights to equal protection and due process are protected by the U.S. Constitution

72.   Defendants are a Division of the Municipal Government of the City of New York; Defendants operate under color of state educational law at all times.

73.   Defendants subject plaintiffs to unsafe inhumane degrading conditions at reassignment centers known as "rubber rooms."   The prohibitions are draconian; they are guarded by uniformed but unskilled security officers and harassed by clerical level DOE employees, who are abusive; their movements are closely monitored, and the entire confinement

18

which often lasts three years or more is entirely preadjudication—no one in the rubber rooms has been found guilty of anything.

74. No teacher outside of New York City awaiting the disposition of disciplinary charges is confined to a rubber room.

75. The few teachers reassigned pending disciplinary charge resolution prior to the Bloomberg/Klein regime were assigned to meaningful professional work at their local community school district offices, worked alongside other educators and were treated professionally in compliance with Chancellor's regulation C-770.

76. The aforesaid actions of defendants in violating the due process and equal protection rights of Plaintiffs and the entire Class, in deliberately creating hostile work environments, in attempting to dissuade tenured educators from asserting whatever rights remain available to NYC teachers under 3020-a, subject Plaintiffs and the Class to unfair and abusive tactics, involving unfair initiation of disciplinary charges seeking Plaintiffs' termination, harassing Plaintiffs in the rubber rooms before any plaintiff is found guilty of anything whatsoever, are all undertaken to attempt to force Plaintiffs and all Class members to retire earlier than they would otherwise wish to.

SECOND CLAIM: Pursuant to *Amendment I of the United States Constitution*

77. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 76 of the complaint with the same force and effect as though fully set forth herein.

78. Plaintiffs and Class members rights, as public employees to speak freely on important issues of public concern are protected by the Fisrt Amendment to the U.S. Constitution.

19

79. Defendants are a Division of the Municipal Government of the City of New York; Defendants operate under color of state educational law at all times.

80. The unfair preferring of false and frivolous charges against Plaintiffs and other Class members, stems from the disbanding of the oversight previously exerted by the Board of Education to prevent unreasonable charges from being preferred by Principals, now without tenure themselves, who stand to earn enticing incentive pay for reporting unrealistic data while possibly losing their jobs for failing to do so.

81. Thus, the punitive and wrongful actions of Defendants were undertaken, at times, because of the Plaintiffs' and other Class members exercise of their 1st Amendment right to oppose defendants' illegal acts of creating false reports and covering up other wrongdoing in their school, all in violation of the U.S. Constitution.

82. All of defendants' acts of denying Plaintiffs and the entire Class equal protection, due process and for retaliation for exercise of Plaintiffs' first amendment rights are in violation of the United States Constitution and were willful and intentional.

83. As a result of the defendants' violation of Plaintiffs' and all Class members civil rights and in retaliation against Plaintiffs and other Class members for exercise of their rights to speak freely on matters of important public concern, and in opposition to wrongdoing they observed in their respective schools, all Plaintiffs and Class members have suffered lost wages for per-session work plus interest and consequential reduction of pension benefits for their lifetime payout.

84. Some Plaintiffs and some class members who have been fined, suspended or terminated have suffered lost wages plus interest and consequential reduction of pension benefits for

20

their lifetime payout.  Some Plaintiffs and other Class Members were constructively terminated by being coerced into resigning or retiring after being told the arbitrator would surely terminate them by their assigned counsel.

85. As a result of the defendants' unlawful acts, Plaintiffs and other Class members have suffered and continue to suffer, and will in the future suffer extreme embarrassment, humiliation, mental anguish, emotional distress, pain and suffering, and other non-pecuniary losses.

THIRD CLAIM

Pursuant to 42 U.S.C. §1983 (Equal Protection, Due Process, Privileges & Immunities)

86. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 85 of the complaint with the same force and effect as though fully set forth herein.

87. Denial of per session employment to which attaches retention rights, unfair fines and suspensions, termination, creation of a hostile work environment, and denial of due process and equal protection of the laws, in the terms and conditions of public employment compared to NYS tenured educators outside of NYC, as well as retaliation for opposing these unlawful practices, by state actors, amount to a violation of plaintiffs' and Class' rights to equal protection of the laws, as guaranteed by the Section 1., 14th Amendment to the U.S. Constitution.

88. The Post-Hoc rule making by state actors violates the privileges and immunities section of the 14th Amendment, e.g. Rivera instructed her subordinate Donna Dennis to announce on or about January 15, 2008, that conferences with assigned counsel for the purpose of preparing for the 3020-a hearings would be thereafter docked if held during the workday

and later called a Principal who then noticed a reassigned tenured educator that the educator was to be docked retroactively from August 30, 2007 for such conferences, though that rule had never heretofore been promulgated.

89.   Defendants have intentionally and invidiously retaliated against Plaintiffs and the Class with respect to their public employment because of their tenure, their salary level, their questioning of questionable practices and to retaliate against them for opposing non-compliance with State Educational Regulatory Codes and NYC Chancellor's Regulations.

90.   Defendants participated directly in violating Plaintiffs' constitutional rights.

91.   Unlawful acts of the defendants were part of the policy or custom of the defendants, and were reviewed by and adopted by the defendant DOE, by virtue of their serving of disciplinary charges against Plaintiffs and each of the members of the Class.

92.   By their actions, defendants have intentionally deprived Plaintiffs of valuable rights in public employment based on unlawful and unconstitutional motives of denial of equal protection of state educational law 3020 and 3020-a; both of which laws have been amended to deny NYC tenured educators the same rights as tenured educators in the rest of New York State.

93.   All of defendants' actions were taken under color of State law.

94.   Defendants by their actions have violated Plaintiffs' rights to equal protection of the laws as provided by the 1st and14th Amendment to the U.S. Constitution.

95.   Because of defendants' intentional acts, Plaintiffs have suffered lost wages for per session work and consequential reduction of pension benefits, and in some cases loss of regular wages with concomitant reduction in pension benefits and have suffered, continue to

22

suffer, and will in the future suffer extreme embarrassment, humiliation, mental anguish, emotional distress, pain and suffering, and other non-pecuniary losses.

96.    Individual defendants have acted with malicious intent and/or with reckless or callous indifference to Plaintiffs' federally protected rights, entitling Plaintiffs to punitive damages[1]

FOURTH CLAIM: Pursuant to *ARTICLE  I Section 11 of the New York State Constitution*

97.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 96.of the complaint with the same force and effect as though fully set forth herein.

98.    Plaintiffs and Class rights to equal protection and due process are protected by the New York State Constitution.

99.    Defendants are a Division of the Municipal Government of the City of New York; Defendants operate under color of state educational law at all times.

100.   The aforesaid actions of defendants in violating the due process and equal protection rights of  Plaintiffs and all Class members, in deliberately creating hostile work environments, in attempting to dissuade tenured educators from asserting whatever rights remain available to NYC teachers under 3020-a, subject Plaintiffs and the Class to unfair and abusive tactics, involving unfair initiation of disciplinary charges seeking Plaintiffs' termination, harassing Plaintiffs and all Class members in the rubber rooms before any plaintiff is found guilty of anything whatsoever, are all undertaken to attempt to force Plaintiffs and all Class members to retire earlier than they would otherwise wish to.

---

[1] All monetary damage claims shall be limited to the extent that no individual class member shall recover on any specific claim which overlaps a claim pending, or one finally decided, or settled, pursuant to another action.  All

FIFTH CLAIM: Pursuant to *ARTICLE I Section 8 of the New York State Constitution*

101. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 100 of the complaint with the same force and effect as though fully set forth herein.

102. Plaintiffs and Class rights, as public employees to speak freely on important issues of public concern are protected by the New York State Constitution

103. Defendants are a Division of the Municipal Government of the City of New York; Defendants operate under color of state educational law at all times.

104. The unfair preferring of false and frivolous charges against Plaintiffs and other Class members, stems from the disbanding of Board of Education and the concomitant abolishment of the oversight review and vote by the Board to prevent unreasonable charges from being preferred by Principals, now without tenure themselves who stand to earn enticing incentive pay for reporting unrealistic data while possibly losing their jobs for failing to do so.

105. Thus, the punitive and wrongful actions of defendants were undertaken, at times, because of the Plaintiffs' and other Class members exercise of their 1st Amendment right to oppose defendants' illegal acts of creating false reports and covering up other wrongdoing in their schools, all in violation of the New York State Constitution.

106. All of defendants' acts of denying Plaintiffs and Class members equal protection, due process and for retaliation for exercise of Plaintiffs and Class right to speak freely on matters of significant public concern are in violation of the of the New York State Constitution and were willful and intentional.

---

class members shall, nevertheless, be entitled to the declaratory and injunctive relief accorded the class.

107.  As a result of the defendants' violation of Plaintiffs' and Class' civil rights and in retaliation against Plaintiffs and Class' for exercise of their rights to speak freely on matter of important public concern, and in opposition to wrongdoing they observed in their schools, all Plaintiffs have suffered lost wages for per-session work plus interest and consequential reduction of pension benefits for their lifetime payout.

108.  Some Plaintiffs and some Class members who have been fined, suspended or terminated, actually or constructively, have suffered lost wages plus interest and consequential reduction of pension benefits for their lifetime payout.

109.  As a result of the defendants' unlawful acts, Plaintiffs and Class members have suffered and continue to suffer, and will in the future suffer extreme embarrassment, humiliation, mental anguish, emotional distress, pain and suffering, and other non-pecuniary losses.

<u>SIXTH CLAIM Pursuant to Common Law Contractual Rights</u>

110.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 109 of the complaint with the same force and effect as though fully set forth herein.

111.  The agreement between the UFT and the DOE executed on June 27, 2008, embodied in Exhibit 1, confers the contractual rights embodied in that agreement to UFT members, so affected.

112.  These contractual rights have not been implemented by the DOE.

113.  The Defendants are therefore violating the contractual rights of the Plaintiffs and the Class.

114.  The Plaintiff have a right to have the agreement enforced, by this Court's oversight, if necessary.

115.   The Plaintiffs representing the entire class of UFT members affected by that agreement have standing to seek its enforcement.

WHEREFORE, Plaintiffs respectfully pray for a judgment from this Court as follows:

(1)    Determining that this is a proper class action to be certified under FRCP 23 and appointing Plaintiffs representatives on behalf of the Class;

(2)    Declaring, adjudging and decreeing that defendants have violated the due process, equal protection, and free speech rights conferred by the United States Constitution and have done so willfully, that defendants have violated 42 U.S.C. §1983;

(3)    Declaring, adjudging and decreeing that defendants have violated the due process, equal protection, and free speech rights conferred by the New York State Constitution and have done so willfully, that defendants have violated Plaintiffs' state constitutional rights;

(4)    Declaring, adjudging and decreeing that the amendments to New York State Educational Law which abolished the Board of Education of the City of New York and thus abolishes Board review of putative Disciplinary Charges prior to bringing these charges against tenure educators violate the due process rights of said educators intended by the legislature of New York State as embodied in 3020-a, and violates the equal protection rights of NYC educators compared to their similarly situated NYS tenured educators outside of NYC, as conferred by the United States Constitution and have done so willfully, that defendants have violated 42 U.S.C. §1983;

26

(5)   Declaring, adjudging and decreeing that Defendants have violated NYS Education Law 3020-a by failing to follow the mandated statutory provision requiring a majority vote of the relevant School Board, finding "probable cause" prior to bringing disciplinary charges against tenured educators;

(6)   Declaring, adjudging and decreeing that the charges so brought without the required prior Board of Education review and endorsement by a majority of the Board of Education, violated the due process rights of the tenured educators and at a minimum, the results should be expunged from NYSED files, to at least allow the educators to seek educational employment in other School Districts;

(7)   Declaring, adjudging and decreeing that the confinement of tenured educators to punitive\ rubber rooms with draconian rules and monitored by guards before they have been found guilty of anything is a denial of their due process rights under both U.S. and NYS Constitutions;

(8)   Striking down those sections of NYS Education Laws 3020, 3020-a, 2590-j which differentiate the 3020-a process in NYC from the same process as implemented in the rest of New York State, including but not limited to requiring that NYC educators subject the 3020-a process be able to mutually select with the DOE, the arbitrator who shall preside over the case, being able to select an *ad hoc* arbitrator from an AAA list, being granted a three member arbitration panel when the charges involve incompetency or pedagogical judgment;

27

(9)     Striking down the 10-day statute of limitations to file a petition challenging the arbitral award for 3020-a arbitrations, in which case there would be the 90 day statute of limitations provided for in CPLR Art. 75, as for all other arbitrations;

(10)    Enjoining the use of rubber rooms to confine tenured pedagogues who have not yet been adjudged guilty of any charge forthwith as a due process violation;

(11)    Ending daily reporting requirements to rubber room or teacher reassignment centers of tenured educators awaiting hearings while allowing the DOE to assign said educators to meaningful professional work within their community school districts (or what constituted their community school districts) in compliance with Chancellor's Regulation C-770;

(12)    Ending relegating tenured educators who have paid their fine or ended their suspension to  pejorative status of an absent teacher reserve, "substitute," and Order having paid their penalty, that they are assigned back to regular service placements as they are elsewhere in NYS;

(13)    Enforcing all other provisions of the June 27, 2008 agreement between the UFT and DOE;

(14)    Awarding extraordinary equitable and/or injunctive relief as permitted by equity, law and federal and state statutory provisions set forth herein, pursuant to FRCP 64 and 65;

(15)    Award Plaintiffs and Class members restitution, compensatory damages for past and future extreme embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, and other non-pecuniary losses arising from

28

defendants' violation of Plaintiffs' rights under the United States and NYS Constitutions an in amount to be determined at trial and other remedial relief; [2]

(16)   Award punitive damages arising from the violation of 42 U.S.C. §1983 by individual defendants, in an amount to be determined at trial;

(17)   Award Plaintiffs and members of the Class pre-judgment and post-judgment interest, the costs incurred herein, together with reasonable attorney's fees  as provided by 42 U.S.C. §1988; and

(18)   Award Plaintiffs and the Class such further and other additional equitable and legal relief as this Court deems just and proper.

Dated: New York, New York
         November 23, 2009

JOY HOCHSTADT, P.C.
Attorney for the Plaintiffs
300 Central Park West, Suite 2E
New York, New York 10024-1513
212 580 9930 (voice)
212 580 9322 (fax)

By:   _____
Joy Hochstadt (JH0935)

---

[2] Except as limited in *fn.* 1.

29