UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS et al

                                               Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION et al

                                               Defendants.

ECF Case

09-CV-5167 (SLT)(RLM)

DECLARATION OF PLAINTIFF PAKTER IN SUPPORT OF ORDER TO SHOW CAUSE

David Pakter, hereby declares and says:

**INTRODUCTION**

1. I am one of the named plaintiffs in this case

2. I make this Declaration in support of the Order to Show Cause for miscellaneous relief (i) for my individual situation and (i) for the situation involving my fellow plaintiffs and teachers who are members of the putative class.

3. I submit that the relief sought is necessary and appropriate to (i) ensure the preservation of evidence (including Electronically Stored Information – ESI) and to enjoin Defendants from further alteration, spoliation and concealment of evidence; (ii) to enjoin further retaliation against me and fellow class members who have been targeted for our speaking out against what we believe to be the discriminatory and unlawful practices that infect the NYC public school system and through students and teachers suffer on a daily basis; (iii) to enjoin further retaliation against me and fellow class members who are kept confined in hostile work environments (i.e. the Rubber Rooms) in violation of our due process and constitutional rights, contract rights and applicable regulations; (iv) to enjoin further

1

retaliation against me and fellow class members whose 1st Amendment rights and due process rights are violated as we are segregated from others and forced to wait months and years before being given access to disciplinary hearings convened and conducted in compliance with the timing provisions of NYS Educ. L. 3020-a; and (v) to enjoin other retaliatory practices that have been leveled against me and the other plaintiffs since the filing of this lawsuit.

4. I respectfully submit that my particular circumstances and what I submit has been the retaliatory, improper and unlawful conduct that has been directed against me, are symbolic of the retaliatory, improper and unlawful conduct against my fellow plaintiffs and absent class members.

5. I am sorry that I have become one of the "Poster Children" for the issue of retaliation by Defendants against teachers. [1]

6. Since I chose to speak out against Defendants on matters of public importance, to wit: the unlawful use of the Rubber Rooms, the violation of NYS Educ. L. 3020-a regarding discipline of teachers and since I became a named plaintiff in this action, the Defendants retaliation against me worsened and has led me into a desperate situation.

**SPECIFIC FACTS SUPPORTING REQUEST FOR EMERGENCY RELIEF**

7. As explained below, I make this request as an Order to Show Cause because of the dire circumstances and situation in which I have been placed as a result of Defendants' wrongful acts.

8. I received my W-2 statement for 2009 about two weeks ago. My DOE employer is

---

[1] The facts related to my situation were investigated and my story was reported in the January 2, 2010 International Edition of the Financial Times. *See Exhibit 1*.

2

reporting that they paid me $93,379.12.  Yet Defendant Rivera (either on her own or in concert with other named Defendants) has sequestered the paychecks issued to me after October 1, 2009 and I only received 18 of the 24 annual paychecks totaling $75,036.78.

9. I have also received none of the issued paychecks from 2010 though payroll continues to issue them as will be detailed below.

10. Defendants have and continue to attempt to "stifle" my ability to speak out against what my fellow plaintiffs and I believe are the wrongful and discriminatory conduct that we believe has infected the NYC public school system and which we believe adversely affects the quality of public school education in NYC, has led to waste of hundreds of millions of dollars annually and discriminates against teachers such as myself.

11. As a direct result of what I believe and am submitting to be Defendants' wrongful conduct, my constitutional rights to freedom of speech, my individual property rights, my good name and my livelihood are at risk.

12.  Defendants' conduct is designed and intended to do one thing – make David Pakter and his fellow plaintiffs "shut up," give up and retire ", thus denying and/or violating my constitutional right to freedom of speech, as well as equal protection under law.

13. They do that by keeping us confined in Rubber Rooms where we are humiliated, demeaned, deprived of professional development and forced to endure demeaning treatment at the hands of "security guards" while we are forced to sit like "criminals" in rooms without libraries, without internet, without educational opportunities, without access to the outside world (but for the "break times" when we are allowed to "walk" about or in the yard) and where we are stripped of our dignity and emotional well being as we wait for days, weeks, months and years to have the disciplinary hearings through

3

which we hope to clear our names but which are usually little more than "Kangaroo Courts" because of the following abridgements to the statutory guarantees of due process embodied in NYS Educ. L. 3020-a and 2590 (j).

14. There is rife non-compliance with the timeline requirements of 3020-a, reiterated in both the UFT-DOE agreement (i.e. our "contract") and in each arbitrator's assignment to each case—if complied with there would be a maximum of 120 days from disciplinary charge being brought to decision, so far I have been away from teaching since the end of November 2006 and my 3020-a hearing began in May of 2009 and is scheduled to continue until May 2010..

15. There is no independent oversight to the changes brought against me or other class members, as there is in the rest of the state once NYS Educ. L. 2590 (j) was enacted, *de jure* and for a long time unlawfully before it was enacted.[2] Had there been oversight, as there should be, the frivolous and retaliatory charges brought against me and other class members would never have been brought.

16. There is no educator input to selection of arbitrators as there is in the rest of the state and there is no three-arbitrator panel for incompetence cases as there is in the rest of the state. Had there been such input and a three-arbitrator panel, the disciplinary hearings would provide a chance at due process, rather than the Kangaroo Court that most if not all 3020

---

[2]   Chancellor Klein recently testified before the Budget Committee in Albany that he was asking for the law to be changed so that principals had the "flexibility" to remove any tenured teacher they wanted from the school.  This has been the practice for years but Defendants want the laws to be changed to give retroactive "approval" to their unlawful practice that abrogates tenure and allows Principals to exercise powers that are vested in an independent board rather than as a vehicle through which to remove disfavored teachers – like me - and force me/us to languish in the Rubbers Rooms for years before our hearing.  The rubber rooms are designed to be hostile work environment through which to induce constructive termination and strip us of our property interests, licenses, positions and retirement benefits. .

4

– a hearings are these days. [3]

17. The disciplinary hearings process to which I have been and to which we are subjected does NOT comply with NYS Educ. L. 3020-a. It is instead simply a process where after years of waiting, our accusers finally give us a chance to tell our "story". However, no matter what we say, we are promptly pronounced "guilty" of one or more of the charges. Then, severe punishment is imposed.

18. Mayor Bloomberg and Chancellor Klein must know that my colleagues and have been unfairly sent to the rubber rooms, but they turn a blind eye to what is going on.

19. In my particular case, I was removed from my school over 6 & ½ years ago, subjected to one set of retaliatory charges (because I spoke out against what I believed was a practice of discriminating against minority students in favor of "white" students and because I believed school funds were diverted from intended programs) which included the heinous offense of supposedly being "late", then in the midst of those charges I was required to undergo psychiatric evaluations which took me 1 year and tens of thousands of dollars to clear my name, and then after being in another school for 17 days, I was charged with the offense of providing plants to make the school atmosphere a more enjoyable and better place for learning. [4]

20. In the last few months, as I started to discover more and more facts about what I believe are, were and continue to be wrongful acts by Defendant NYC DOE, and as I started to

---

[3]  It is ironic and I believe not a coincidence that the hearing officer who is presiding over my hearings has been fired and he contract is not being renewed after he concludes my hearing. I believe it is because the arbitrator in my case has given me a chance to present my case and to defend myself and that is not what Defendants' expected would happen in my 3020-a hearings.

[4]  Prior to the filing of this lawsuit, and as noted in the complaint, I filed a claim against Defendant NYC DOE and others for what I believed to be their wrongful acts from 2004 to 2008.

report and share them with my colleague teachers and fellow plaintiffs, and as I/we prosecuted this lawsuit, Defendants NYC DOE increased their retaliation against me in an attempt to stop me from exercising my 1st Amendment Rights to speak out. [5]

21. Because of my senior status and more than 40 + years of service as a tenured teacher, I would earn more money if I were to immediately "retire". Were I to retire, the disciplinary hearings would end. Also, were I to retire, the Defendants could not demand that I appear at and be confined in the Rubber Rooms. However, were I to retire now, and without an Order from this Court, I would not have the opportunity to complete and be exonerated in the disciplinary hearing. The completion of the disciplinary hearing may be the only way I will be able to clear my name, restore my reputation and prove the wrongful, unconstitutional, discriminatory and retaliatory acts to which I and my fellow teachers have been subjected.

22. Defendant NYC DOE and its employees, agents and representatives are in the midst of an ongoing campaign to shut me up, to interfere with my rights and to stop me from being able to survive (both financially and emotionally) until the completion of my 3020-a disciplinary hearing.

23. Defendants' campaign threaten my 1st Amendment Rights to speak out against (i) abuses, (ii) waste, nepotism, favoritism and discriminatory conduct in the NYC public school, (iii) failure to provide equal educational opportunities to and disenfranchisement of minority students, and (iv) targeting and discrimination of senior tenured teaching staff such as myself.

24. From my own investigations, I have learned that Defendants' retaliation and wrongful

---

[5] My story and the wrongful acts that I believe have been taken against me were investigated by and reported in the Jan. 2, 2010 International Edition of the Financial Times. *See Exhibit 1 attached.*

6

conduct as directed against me appears to be their "modus operandi". And, their retaliation and wrongful conduct is comparable to what they have done against other named plaintiffs [6] and class members who sought to speak out against the same, similar or other instances discriminatory and wrongful policies and practices.

25. In my particular circumstances, the retaliation has reached a point where – I respectfully submit – IF relief is not granted, Defendants will be unjustly and inequitably rewarded for their own wrongful conduct and their ability to "starve me out", or "starve me into silence" or "starve me into retirement".

26. **Defendants' retaliation against me/us has included**:

   a. **Withholding of $ 20,009.91 in duly issued paychecks [7] [8]**, specifically:

      i. Check # Q 40833726, in the gross amount of $4,168.71, net amount of $2,618.88, with deductions of $1,549.83, for the period 10/1 – 15/09 and which monies are included in and formed the basis for the payments

---

[6] For example, named plaintiff Paul Santucci was confined in a Rubber Room for years and then his salary was withheld (because he reported nepotism, favoritism and improper conduct involving a senior staff member in the Chancellor's office and a "friend" of his principal) and in the end he was terminated. Plaintiff Santucci has challenged this conduct in his individual case. Named plaintiff Josefina Cruz was deprived of a disability accommodation and confined in a Rubber Room for years (where she became ill) because she spoke out against problems with the administration of the Regents exam and in the end she was stripped of her counsel in the midst of her 3020a disciplinary proceeding and then terminated. Named Plaintiff Leevert Holmes is presently confined in a Rubber Room for an entire year without having charges filed against him. Other putative class members have been confined in Rubber Rooms for years as they waited for disciplinary hearings and for over two years without charges ever being brought.

[7] I was able to obtain copies of each issued but withheld payroll checks. *They are attached collectively as Exhibit 2.*

[8] On Sept. 8th 2009, Defendants Payroll Secretary Darlene Alba Hart testified in my ongoing 3020a disciplinary hearing that my status was "Leave with Pay", that I did not have to come to Rubber Room to be paid, that my paychecks were issued and sent to her but that she was instructed not to forward them to me. *See Exhibit 4.*

7

reflected in the January 2010 W-2 [9];

ii. Check # Q 40851564, in the gross amount of $4,168.71, net amount of $2,618.88, with deductions of $1,549.83, for the period 10/16 – 30/09 and which monies are included in and formed the basis for the payments reflected in the January 2010 W-2;

iii. Check # Q 40869737, in the gross amount of $4,168.71, net amount of $2,618.89, with deductions of $1,549.82 for the period 11/1 – 15/09, and which monies are included in and formed the basis for the payments reflected in the January 2010 W-2;

iv. Check # Q 40884813, in the gross amount of $4,168.71, net amount of $2,031.62, with deductions of $2,137.09, for the period 11/16-30/09 and which monies are included in and formed the basis for the payments reflected in the January 2010 W-2;

v. Check # Q 40903254, in the gross amount of $833.75, net amount of $75.09, with deductions of $758.66, for the period 12/1-15/09 and which monies are included in and formed the basis for the payments reflected in the January 2010 W-2;

vi. Check # Q 40919543, in the gross amount of $833.75, net amount of $75.08, with deductions of $758.67, for the period 12/16-30/09 and which monies are included in and formed the basis for the payments reflected in

---

[9] The W – 2 was issued at the end of January 2010 and it too was withheld from me.  However, I was again able to get a "duplicate" of the originally issued W-2.  The W-2 confirms the issuance and withholding of each paycheck.  *The W-2 is attached as Exhibit 3.*

8

the January 2010 W-2;

    vii. Check # Q 40935504, in the gross amount of $833.75, net amount of $70.43, with deductions of $763.32, for the period 1/1-15/10;

    viii. Check # Q 40950573, in the gross amount of $833.75, net amount of $70.42, with deductions of $763.33, for the period 1/16-30/10;

b. **Un-authorized underpayment of $ 13,339.68 of my salary**; my salary is $100,049 *per annum* and even the issued but withheld checks amount to only $93,379.82 for 2009.

c. **Subjecting me to a disciplinary hearing initiated as retaliation for the exercise of my 1st Amendment Right to speak out against Defendant Policies involving NYC public schools, educational policies, labor practices and discriminatory treatment relating to certain minority students and tenured teachers, all of which are of considerable public interest**;

d. **Subjecting me to a disciplinary hearing that is being conducted in violation of the specific time provisions of NYS Educ. L. 3020-a.** *See Exhibit 5.*;

e. **Delaying the disciplinary hearing beyond the period allowed by NYS Educ. L. 3020-a in an effort to force me to resign rather than complete and be completely exonerated the hearing** [10];

---

[10] NYS Educ. L. 3020-a requires that my disciplinary hearing be commenced within 35 days after the Charges were filed and then completed with 3 months from the date of the original charges. *A highlighted copy of NYS Educ. L. 3020-a is attached as Exhibit 5*. Disciplinary charges against me were filed in April 2007. The hearing was not commenced within the time required by NYS Educ. L. 3020-a. The hearing finally started in May 2009 and it continues to be delayed through no fault of my own. My hearing was not been completed within the 60 days required by NYS Educ. L. 3020-a. And, there is no end in sight. The next hearing dates are April and May 2010 and there are only four days scheduled. At this rate, my disciplinary hearing will not be completed until the end of 2010, at the earliest. Because of

9

f.  **Requiring that as a condition to my/our being paid [11] [12], I/we must appear at and be confined in a "Teacher Reassignment Center" a/k/a/ Rubber Room, that violates Chancellors Regulation C-770 [13] and which is a hostile work environment**, that are overcrowded, do not have facilities similar to a "school environment", where my/our freedom of movements are restricted and I/we are monitored by security guards and cameras, where I/we are required to sit all day long doing nothing, where we are given no assignments commensurate with my/our experience, where there are no public phones, no copy and fax machines, no computer terminals, no library facilities, no internet access, and no continuing education courses for professional development and training;

g.  **Fabrication and/or falsification of evidence** - In an effort to deprive me of my pay, to claim that I have failed to report to a Rubber Room to which I have not been assigned after 2006 and to otherwise make it appear as if I was failing to

---

my senior status and more than 40 + years of service as a tenured teacher, I would earn more money if I were to immediately "retire". However, (i) were I to retire, the disciplinary hearings would end; (ii) were I to retire Defendants could not demand that I appear at and be confined in the Rubber Rooms and (iii) were I to retire now, and without an Order from this Court, I would not have the opportunity to complete and be exonerated in the disciplinary hearing. The completion of my disciplinary hearing may be the only way I am able to clear my name, restore my reputation and prove the wrongful, unconstitutional, discriminatory and retaliatory acts to which I have been subjected.

[11]   Prior to my filing of this complaint, my official status with Defendant NYC DOE was "Leave with Pay" and that status is effective through July 2010. *A copy of the excerpt from my Official Employee file showing my status until July 2010 is attached as Exhibit 6.*

[12]   Virtually all NYS Districts allow teachers to continue serving in place until the 3020-a hearing decision is rendered or the teachers remain at home until completion of the 3020-a hearing. The use of the Rubber Rooms amounts to "constructive termination" and in some cases, teachers re-assigned to Rubber Rooms become physically and psychologically ill because of their confinement, suffer post-traumatic stress disorder and at least one died of complications from the conditions in the Rubber Room.

[13]   *A copy of Chancellor's Regulation C-770 is attached as Exhibit 7.*

10

perform some work related obligation as I am forced to sit months at a time to conduct and conclude the disciplinary hearings, Defendants have manufactured, altered and falsified evidence [14];

h. **Violation of 1st and 14th Amendment Rights, Aiding & Abetting a Conspiracy to Retaliate for Exercise of 1st Amendment Rights, Aiding & Abetting a Conspiracy to Violate 1st & 14th Amendment Rights, Infliction of Emotional Distress and *Amalfitano v Rosenberg*** – (i) Since I started to help other teachers, (ii) since I joined this group to file this Complaint publicly challenging Defendants' policies that affect me, fellow teachers, my former students, students in the NYC public school, (iii) since I filed this lawsuit, (iv) since I refused to retire or go away, (v) since I spoke out against the discriminatory policies of the Rubber Rooms, (vi) since I spoke out against the violations of NYS Educ. L.

---

[14]  Defendants' representatives have presented three different versions of a "Time Sheet" they say was the "time sheet" for the Rubber Room to which I was assigned and which I was to attend since Sept. 2009. Defendants produced one version of the "Time Sheet" – which was sworn to by their counsel as being "THE" September 2009 time sheet – in late November 2009 shortly after this lawsuit was filed. Another version of the September 2009 Time Sheet was produced at my 3020-a hearing in December 2009 and again this one was sworn to as being "THE" Time Sheet. And, last week yet another version of the September 2009 Time Sheet was produced. Each of the Time Sheets was represented to be THE actual Time Sheet. Yet, each of The Time Sheets is different. Each of the Time Sheets has been altered one from the next. And, each of the time sheets has mistakes that prove that they were generated, created or altered after the fact and appear to be manufactured evidence to support Defendants wrongful conduct and otherwise unsupported positions. Certain of the individually named Defendants in this action were involved with this falsified evidence, as were those of Defendants' counsel who previously swore that the Time Sheets presented were in fact THE Time Sheets. *A sample of the multiple altered time sheets for Sept. 2009 are attached collectively as Exhibit 8.* The issue of falsification of evidence, that has arisen related to the "Time Sheets" has been presented to (i) the Hon. Deborah A. Batts USDJ before whom my individual claims against Defendants for wrongful acts against me up to Sept 2008 and (ii) Douglas J. Bantle Esq., the hearing office conducting the disciplinary hearings because the time sheets were used and submitted as evidence in each of those cases. A Notice of Claim was just filed against Defendant NYC DOE and its employees or agents involved in or whom I believe orchestrated the wrongful acts against me based and who I believe can each be held liable for (i) fabricating evidence against me, (ii) aiding and abetting a conspiracy to retaliate against me for the exercise of my 1st Amendment Rights, (iii) aiding and abetting a conspiracy to violate my 1st and 14th Amendment Rights, (iv) infliction of emotional distress and (v) fraud, fraud on the court and fraud against an adversary as recognized pursuant to *Amalfitano v Rosenberg* 12 N.Y. 3d 8 (NY 2009) and *Amalfitano v Rosenberg* 572 F. 3d 91 (2nd Cir. 2009) A copy of the Notice of Claim is attached as Exhibit 9.

11

3020-a as related to disciplinary hearings and (vii) since I started to expose the wrongdoings of the Defendants as related to me, to my fellow plaintiffs and to the other class members, I have been targeted and have been the victim of retaliation, wrongful conduct, falsified documents, fabricated event and intercepted and withheld paychecks.  I have already filed and served a Notice of Claim against NYC DOE – *See Exhibit 9 - Feb. 8, 2010 Notice of Claim.*

## ADDITIONAL FACTS RELEVANT TO ORDER TO SHOW CAUSE

27. I have been sitting in a Rubber Room that has been admitted to be overcrowded and in which teachers are not given assignments, as required by Chancellor's Regulation C-770; it is neither in my community school district nor do I have a work assignment.

28. The excuse given by Defendants is basically that they simply *"cannot handle the amount [sic] of teachers who are in the Rubber Rooms"*.   *See Exhibit 10 - excerpt from Aug. 5th 2009 testimony of Defendant Judith Rivera at my 3020a hearing.*

29. The reasons why so many teachers confined to Rubbers Rooms is irrefutable.  They are:

    a. Defendants NYC DOE targeted a certain group of teachers – like me and other putative class members - and started removing us from our schools and professional assignments;

    b. As Defendants NYC DOE started to target and remove teachers from our assignments and place us in the Rubber Rooms they failed to take the appropriate steps as required by NYS Educ. L. 3020-a;

    c. As Defendant NYC DOE started to target us, they allowed Principals to file the charges against me and other teachers that led to our removal and confinement in

the Rubber Rooms;

d. As Defendant NYC DOE allowed Principals to file the charges against me and other teachers they did so in knowing or reckless disregard for the provisions of NYS Educ. L. 3020-a and Article 21 – g of our contract that required that any "charges" against us be considered, voted upon and filed by the Board – which was NOT done in my case or the case of any other or my fellow Plaintiffs or putative class members;

e. After Defendant NYC DOE allowed Principal countersigned by their immediate supervisors to file the charges against me and other teachers in knowing or reckless disregard for the provisions of NYS Educ. L. 3020-a and Article 21 – g, of the DOE-UFT agreement, Defendants themselves failed to insure that after we were charged, our due process rights to a speedy and impartial hearing would be provided as required by NYS Educ. 3020-a;  the hearing may take not more than 60 days and the entire process to decision must be less than 120 days--yet my confinement began for this set of charges (immediately on the heels of the prior set) in November 2006, my hearings began in May 2009, my hearing will not be over until at least May 2010 and the decision could be six months later for a total of four years--about the length of time many teachers face in the disciplinary process.

f. After Defendant NYC DOE allowed Principals to file the charges against me and other teachers in knowing or reckless disregard for the provisions of NYS Educ. L. 3020-a and Article 21 – g, Defendants themselves failed to comply with the law

13

and contract and failed to insure that within 35 days after the Charges were filed (albeit improperly filed by principals endorsed by their superintendents, not a Board) the 3020-a disciplinary hearings were commenced;

g. After Defendant NYC DOE allowed Principals endorsed by their Superintendants to file the charges against me and other teachers in knowing or reckless disregard for the provisions of NYS Educ. L. 3020-a and Article 21 – g, Defendants themselves failed to comply with the law and the UFT-DOE contract and failed to insure that there were a sufficient number of arbitrators[15] who could commence and complete the disciplinary proceedings within 35 days after the Charges were filed (albeit improperly filed by principals not a Board) , and completed within 60 days after the 3020-a disciplinary hearings were commenced;

h. After Defendant NYC DOE started the 3020-a disciplinary hearings, Defendants themselves were responsible for the failure of the arbitrators to be able to conduct, complete the disciplinary hearings and render a decision within the 3 month timing requirement as set forth in NYS Educ. L. 3020-a;

i. After Defendant NYC DOE started the 3020-a disciplinary hearings, THEY themselves were responsible for my and my fellow plaintiffs being forced to "sit" and "rot" in the Rubber Rooms, as they dragged out and delayed the 3020-a

---

[15] One of the allegations of our complaint is that the permanent Rotational Panel of Arbitrators violated our rights to a three – person panel and that many of the arbitrators themselves had conflicts of interests and should not have been allowed to conduct the disciplinary hearings. However for purposes of this Order to Show Cause, I shall address only the issues related to the number of Arbitrators, the restrictions placed on the Arbitrators by Defendant NYC DOE and how that affected the failure to conduct the disciplinary hearings in accordance with NYS Educ. L. 3020-a.

disciplinary hearings [16];

j. After Defendant NYC DOE filed the disciplinary charges against me were filed in April 2007, they failed to commence and complete the hearing against me within the 3 months as required by NYS Educ. L. 3020-a;

k. After the Defendant NYC DOE finally commenced the disciplinary hearing against me in May 2009, it has been and continues to be delayed – through no fault of my own; when it should have been completed 60 days later.

l. After Defendant NYC DOE commenced the disciplinary hearing against me, it was NOT completed within the 60 days required by NYS Educ. L. 3020-a;

m. The disciplinary hearing that was commenced and is being prosecuted against me is being conducted in violation of the timing requirements of NYS Educ. L. 3020-a and there is no end in sight; and

**n.** Defendant NYC DOE continues to violate the timing provisions of NYS Educ. L. 3020-a, and the next hearing dates for my disciplinary hearing are not until April and May 2010 – one year after the hearing was commenced - and there will only be four days in those months – and this practice has already violated and continues to violate my rights under NYS Educ. L. 3020-a to have a swift and

---

[16] The situation presented by our "confinement" in the Rubber Rooms pending the completion of the disciplinary hearings to be conducted under NYS Educ. L. 3020-a, is analogous to the circumstances of a person "caught" in the criminal justice system who has been accused of a "crime" and who is forced to sit in jail awaiting his or her trial and chance to clear him/herself of the charges. The 6th Amendment applies to persons accused of committing crimes. I believe that teachers/public servants, such as me, who have been / are accused in "quasi" criminal disciplinary hearings of "quasi-criminal" or other alleged improper conduct that jeopardizes our due process and property rights, should be entitled to the same protections as persons accused of having committed crimes.

15

impartial hearing and adjudication on the charges brought against me.[17]

30. As I explained, my situation and the situation of many of my fellow plaintiffs are such that emergency relief is warranted.

31. Payroll has issued paychecks to me, and reports such to the IRS but Defendant Rivera has intercepted them; being without a paycheck for five entire months while still "employed" is financially destroying me.

32. And, the situation and desperate circumstances in which we find ourselves is the direct result of Defendants improper, inequitable and unlawful own conduct.

## **CONCLUSION**

33. In view of the foregoing and the evidence to show the retaliation, discrimination and wrongful acts taken against me and others, by Defendant NYC DOE, I pray that this Honorable Court intervene to protect my/our rights and to grant the relief sought in this Order to Show Cause.

---

[17] At this rate, my disciplinary hearing and rendering of the decision will not be completed until the end of 2010 at the earliest.