# EXHIBIT 9

OFFICE OF THE COMPTROLLER CITY OF NEW YORK
NOTICE OF CLAIM

---

TO: OFFICE OF THE COMPTROLLER DIVISION OF LAW - RM.1225 South
    1 CENTRE STREET
    NEW YORK, N.Y. 10007
    TELEPHONE # (212) 669-4736

**CLAIMANT INFORMATION**

CLAIMANT'S NAME:          David L. Pakter
STREET ADDRESS:           900 Park Avenue, 27 - D
CITY:                     New York, NY  10075
SOC. SEC. # or TAX I.D. #:    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

**CLAIM INFORMATION**
CITY AGENCY INVOLVED: (i) New York City Department of Education (NYC DOE),
(ii) NYC DOE Human Resources Department, Lawrence Becker & Judith Rivera,
(iii) Office of Corporation Counsel, Lawrence R. Martinez & Philip Oliveri

**NATURE OF CLAIM:(ATTACH ADDITIONAL SHEET(S) OF PAPER, IF NECESSARY):**
Conduct Upon Which this Claim is Based Occurred / Started in or about Nov. 2009 and which were only confirmed on or about Feb. 3, 2010 upon Claimants receipt of a W-2 which confirms the wrongful acts as alleged below.

1. Unlawful Retaliation by withholding of W-2 Reported salary and paychecks for Exercise of 1st Amendment Rights
2. Violation of 1st and 14th Amendment Rights
3. Aiding & Abetting a Conspiracy to Retaliate for Exercise of 1st Amendment Rights
4. Aiding & Abetting a Conspiracy to Violate 1st & 14th Amendment Rights
5. Theft and/or Larceny in Relation to W – 2 salary & Issued Paychecks
6. Fraud in W-2s, Issued Paychecks and Time Sheets
7. Infliction of Emotional Distress
8. Claim for Other Wrongful Conduct as recognized under Amalfitano v Rosenberg

**TOTAL AMOUNT CLAIMED:** $

IF MORE THAN ONE ITEM IS INCLUDED IN TOTAL AMOUNT CLAIMED, SUPPLY BREAKDOWN OF AMOUNTS AND SPECIFY ITEMS: (ATTACH ADDITIONAL SHEET(S), IF NEEDED)

| ITEM | AMOUNT |
|---|---|
| 8 Checks Reported to IRS on W-2, recorded as paid in City Computers but never transmitted to Claimant | $ 18,342.34 |
| 2 checks issued in 2010 but never transmitted to Claimant | $ 1,667.57 |
| Unauthorized under payments of $13,339.68 beginning with Non-transmitted 12/15/09 check | $ 13,339.68 |
| Retaliation for Exercise of 1st Amendment Rights - #1 above | $500,000.00 |
| Violation of 1st & 14th Amendment Rights - #2 above | $500,000.00 |
| Aiding & Abetting Conspiracy to Retaliation - #3 above | $ 1 million |

---

```
Aiding & Abetting Conspiracy to Violate Rights - #4 above      $ 1 million
Theft and/or Larceny - # 5 above                               $ 50,000.00
Fraud in W-2s, Issued Paycheks and Timesheets - #6 above       $300,000.00
Infliction of Emotional Distress - #7 above                    $600,000.00
Wrongful Conduct under Amalfitano v Rosenberg - #8 above       $12 million
```

PLEASE ATTACH COPIES OF SUPPORTING DOCUMENTATION, PREVIOUS CORRESPONDENCE, INVOICES, ETC.

CLAIMANT'S SIGNATURE:  _____
                                    David Pakter

Subscribed and Sworn to before me this
5th day of ~~November~~ February, 2010

Joy Hochstadt
Notary Public, State of New York
No. 02HO6128726
Qualified in New York County
Commission Expires 6/13/2013

------------------------------------------------------------

TO: OFFICE OF THE COMPTROLLER DIVISION OF LAW - RM. 1225 South
    1 CENTRE STREET
    NEW YORK, N.Y. 10007
    TELEPHONE # (212) 669-4736

```
              OFFICE OF THE COMPTROLLER CITY OF NEW YORK
                            NOTICE OF CLAIM
-----------------------------------------------------------------------
TO: OFFICE OF THE COMPTROLLER DIVISION OF LAW - RM.1225 South
    1 CENTRE STREET
    NEW YORK, N.Y. 10007
    TELEPHONE # (212) 669-4736
```

CLAIMANT INFORMATION

CLAIMANT'S NAME:        David L. Pakter
STREET ADDRESS:         900 Park Avenue, 27 - D
CITY:                   New York, NY   10075
SOC. SEC. # or TAX I.D. #:    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

CLAIM INFORMATION
CITY AGENCY INVOLVED: (i) New York City Department of Education (NYC DOE),
(ii) NYC DOE Human Resources Department, Lawrence Becker & Judith Rivera,
(iii) Office of Corporation Counsel, Lawrence R. Martinez & Philip Oliveri

NATURE OF CLAIM:(ATTACH ADDITIONAL SHEET(S) OF PAPER, IF NECESSARY):
Conduct Upon Which this Claim is Based Occurred / Started in or about Nov. 2009 and which were only confirmed on or about Feb. 3, 2010 upon Claimants receipt of a W-2 which confirms the wrongful acts as alleged below.

1. Unlawful Retaliation by withholding of W-2 Reported salary and paychecks for Exercise of 1st Amendment Rights
2. Violation of 1st and 14th Amendment Rights
3. Aiding & Abetting a Conspiracy to Retaliate for Exercise of 1st Amendment Rights
4. Aiding & Abetting a Conspiracy to Violate 1st & 14th Amendment Rights
5. Theft and/or Larceny in Relation to W – 2 salary & Issued Paychecks
6. Fraud in W-2s, Issued Paychecks and Time Sheets
7. Infliction of Emotional Distress
8. Claim for Other Wrongful Conduct as recognized under Amalfitano v Rosenberg

TOTAL AMOUNT CLAIMED: $

IF MORE THAN ONE ITEM IS INCLUDED IN TOTAL AMOUNT CLAIMED, SUPPLY BREAKDOWN OF AMOUNTS AND SPECIFY ITEMS: (ATTACH ADDITIONAL SHEET(S), IF NEEDED)

| ITEM | AMOUNT |
|---|---|
| 8 Checks Reported to IRS on W-2, recorded as paid in City Computers but never transmitted to Claimant | $ 18,342.34 |
| 2 checks issued in 2010 but never transmitted to Claimant | $ 1,667.57 |
| Unauthorized under payments of $13,339.68 beginning with Non-transmitted 12/15/09 check | $ 13,339.68 |
| Retaliation for Exercise of 1st Amendment Rights - #1 above | $500,000.00 |
| Violation of 1st & 14th Amendment Rights - #2 above | $500,000.00 |
| Aiding & Abetting Conspiracy to Retaliation - #3 above | $ 1 million |

----------------

*Pakter Notice of Claim – February 2010 -*     Page 1

```
Aiding & Abetting Conspiracy to Violate Rights - #4 above    $ 1 million
Theft and/or Larceny - # 5 above                             $ 50,000.00
Fraud in W-2s, Issued Paycheks and Timesheets - #6 above     $300,000.00
Infliction of Emotional Distress - #7 above                  $600,000.00
Wrongful Conduct under Amalfitano v Rosenberg - #8 above     $12 million
```

**PLEASE ATTACH COPIES OF SUPPORTING DOCUMENTATION, PREVIOUS CORRESPONDENCE, INVOICES, ETC.**

---

**CLAIMANT'S SIGNATURE:**

*[signature]*
David Pakter

Subscribed and Sworn to before me this
5th day of November, 2010

*[signature]*
Joy Hochstadt
Notary Public, State of New York
No. 02HO6128726
Qualified in New York County
Commission Expires 6/13/2013

-----------------------------------------------------------------------

TO: OFFICE OF THE COMPTROLLER DIVISION OF LAW - RM. 1225 South
    1 CENTRE STREET
    NEW YORK, N.Y. 10007
    TELEPHONE # (212) 669-4736

----------------

*Pakter Notice of Claim – February 2010 -     Page 2*

OFFICE OF THE COMPTROLLER CITY OF NEW YORK
NOTICE OF CLAIM

---

TO: OFFICE OF THE COMPTROLLER DIVISION OF LAW – RM.1225 South
1 CENTRE STREET
NEW YORK, N.Y. 10007
TELEPHONE # (212) 669-4736

**CLAIMANT INFORMATION**

CLAIMANT'S NAME:     David L. Pakter
STREET ADDRESS:      900 Park Avenue, 27 – D
CITY:                New York, NY 10075
SOC. SEC. # or TAX I.D. #:    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

**CLAIM INFORMATION**
CITY AGENCY INVOLVED: (i) New York City Department of Education (NYC DOE),
(ii) NYC DOE Human Resources Department, Lawrence Becker & Judith Rivera,
(iii) Office of Corporation Counsel, Lawrence R. Martinez & Philip Oliveri

NATURE OF CLAIM: (ATTACH ADDITIONAL SHEET(S) OF PAPER, IF NECESSARY):
Conduct Upon Which this Claim is Based Occurred / Started in or about Nov. 2009 and which were only confirmed on or about Feb. 3, 2010 upon Claimants receipt of a W-2 which confirms the wrongful acts as alleged below.

1. Unlawful Retaliation by withholding of W-2 Reported salary and paychecks for Exercise of 1st Amendment Rights
2. Violation of 1st and 14th Amendment Rights
3. Aiding & Abetting a Conspiracy to Retaliate for Exercise of 1st Amendment Rights
4. Aiding & Abetting a Conspiracy to Violate 1st & 14th Amendment Rights
5. Theft and/or Larceny in Relation to W – 2 salary & Issued Paychecks
6. Fraud in W-2s, Issued Paychecks and Time Sheets
7. Infliction of Emotional Distress
8. Claim for Other Wrongful Conduct as recognized under Amalfitano v Rosenberg

TOTAL AMOUNT CLAIMED: $

IF MORE THAN ONE ITEM IS INCLUDED IN TOTAL AMOUNT CLAIMED, SUPPLY BREAKDOWN OF AMOUNTS AND SPECIFY ITEMS: (ATTACH ADDITIONAL SHEET(S), IF NEEDED)

| ITEM | AMOUNT |
|---|---|
| 8 Checks Reported to IRS on W-2, recorded as paid in City Computers but never transmitted to Claimant | $ 18,342.34 |
| 2 checks issued in 2010 but never transmitted to Claimant | $ 1,667.57 |
| Unauthorized under payments of $13,339.68 beginning with Non-transmitted 12/15/09 check | $ 13,339.68 |
| Retaliation for Exercise of 1st Amendment Rights - #1 above | $500,000.00 |
| Violation of 1st & 14th Amendment Rights - #2 above | $500,000.00 |
| Aiding & Abetting Conspiracy to Retaliation - #3 above | $ 1 million |

---

*Pakter Notice of Claim – February 2010 -     Page 1*

```
Aiding & Abetting Conspiracy to Violate Rights - #4 above    $ 1 million
Theft and/or Larceny - # 5 above                             $ 50,000.00
Fraud in W-2s, Issued Paycheks and Timesheets - #6 above     $300,000.00
Infliction of Emotional Distress - #7 above                  $600,000.00
Wrongful Conduct under Amalfitano v Rosenberg - #8 above     $12 million
```

**PLEASE ATTACH COPIES OF SUPPORTING DOCUMENTATION, PREVIOUS CORRESPONDENCE, INVOICES, ETC.**

---

**CLAIMANT'S SIGNATURE:**                                 *David Pakter*
                                                          David Pakter

Subscribed and Sworn to before me this
5th day of November, 2010

Joy Hochstadt
Notary Public, State of New York
No. 02HO6128726
Qualified in New York County
Commission Expires 6/13/2013

------------------------------------------------------------------------

**TO: OFFICE OF THE COMPTROLLER DIVISION OF LAW - RM. 1225 South**
    **1 CENTRE STREET**
    **NEW YORK, N.Y. 10007**
    **TELEPHONE # (212) 669-4736**

---

*Pakter Notice of Claim – February 2010 -     Page 2*

# EXHIBIT 10

Case 1:09-cv-05167-SLT -RLM   Document 18-5   Filed 02/16/10   Page 8 of 13

Case 1:09-cv-05167-SLT -RLM   Document 18-5   Filed 02/16/10   Page 9 of 13

800.523.7887                    08/05/2009, In the matter of David Pakter              Associated Reporters Int'l., Inc.

Page 2364

David Pakter - 8-5-2009

1  offered it, because I knew that it was out
2  there somewhere. So, for the purposes, you
3  say, a penalty, if nothing else, but -- so --
4  yes -- so entered District's Exhibit Number
5  Twenty-three.
6          (Department's Twenty-three is
7  admitted in evidence.)
8          MR. OLIVERI: Thank you.
9          THE HEARING OFFICER: You may
10 call your witness.
11         MR. OLIVERI: Okay. Thank
12 you. The Department will be calling Judith
13 Rivera as witness.
14         (Off-the-record discussion)
15         THE HEARING OFFICER: Okay.
16 I'm going to swear the witness. If you -- you
17 don't need to stand. Just please raise your
18 right hand. Do you swear the testimony you're
19 about to give is the truth, the whole truth,
20 and nothing but the truth?
21         MS. RIVERA: I do.
22         JUDITH RIVERA; Sworn.
23         THE HEARING OFFICER: All

Page 2365

1  David Pakter - 8-5-2009
2  right. My apologies for making you wait this
3  morning.
4          THE WITNESS: That's okay.
5          THE HEARING OFFICER: We had
6  a bunch of procedural evidentiary issues we had
7  to deal with, but we got you on.
8          THE WITNESS: Okay.
9          THE HEARING OFFICER: Thank
10 you very much. Mr. Oliveri, your witness.
11         MR. OLIVERI: Thank you.
12         DIRECT EXAMINATION
13 BY MR. OLIVERI:
14         Q. Good afternoon. Ms. Rivera,
15 could you please state your full name on the
16 record?
17         A. Judith A. Rivera.
18         Q. And where are you currently
19 employed?
20         A. At the Manhattan Integrated
21 Service Center.
22         Q. And how long have you been
23 employed there?
24         A. I've been employed there

Page 2366

1  Rivera - Direct - Oliveri
2  since 2003. But I've been with the Department
3  of Ed since 1990.
4          Q. Okay. And what is your role
5  and -- what capacity do you work?
6          A. My current position is Deputy
7  Director of Human Resources. I'm responsible
8  for overseeing staff that provide H.R. services
9  to all the schools in Manhattan.
10         Q. And what are your principal
11 duties and responsibilities as deputy director?
12         A. Again, I oversee the staff in
13 terms of the services they provide to all the
14 schools in Manhattan with regards to staffing
15 their schools, assisting with any human
16 resources needs, as well as providing H.R.
17 support to the Manhattan Integrated Service
18 Center.
19         MR. OLIVERI: Okay. Do you
20 know --
21         THE HEARING OFFICER: Phil,
22 just -- just -- pardon me. It's a
23 technicality, but was she doing the same thing
24 during this point in time?

Page 2367

1  Rivera - Direct - Oliveri
2          MR. OLIVERI: Thank you.
3          THE HEARING OFFICER: Yeah.
4  BY MR. OLIVERI: (Cont'g.)
5          Q. Ms. Rivera, were you -- were
6  you deputy director during the time period of
7  2006-07?
8          A. Yes.
9          Q. Thank you. And do you know a
10 respondent by the name -- do you know the
11 Respondent, David Pakter?
12         A. Yes.
13         Q. Okay. And how do you know
14 him?
15         A. Mr. Pakter's currently one of
16 the reassigned pedagogues.
17         Q. Okay. You don't know him
18 personally or on a personal basis?
19         A. No.
20         Q. Okay. Are -- are you aware
21 of Chancellor's Regulation Section C-770?
22         A. Yes.
23         MR. OLIVERI: Okay. And
24 could you please explain what that regulation

7 (Pages 2364 to 2367)

Case 1:09-cv-05167-SLT -RLM   Document 18-5   Filed 02/16/10   Page 10 of 13

800.523.7887        08/05/2009, In the matter of David Pakter        Associated Reporters Int'l., Inc.

Page 2408

Rivera - Cross - Callagy

 2  Q. And what was your role in
 3  that?
 4  A. Well, when Mr. Crowe was
 5  there -- I mean, we would discuss and we would
 6  review. However, because 333 7th Avenue was
 7  off limits, it was just reassigned to one of
 8  the two uptown locations.
 9  Q. And when you say, back in
10  '06, and specifically November of '06 --
11  A. Uh-huh.
12  Q. -- that 333 7th Avenue was
13  off limits, you're -- do I understand you
14  correctly that you're saying it's off limits
15  because there had been an agreement reached
16  with the U.F.T. about overcrowding?
17  A. That is correct. They --
18  there was an overcrowding condition, as U.F.T.
19  observed many times, then visited. And they
20  even had reported where we had OSHA -- which I
21  can't recall OSHA stands for -- but
22  facilities -- the inspectors, to see what the
23  overcrowding conditions -- I think at one
24  point, we may have reached numbers near a

Page 2409

Rivera - Cross - Callagy

 2  hundred. And it was a conference room, so it
 3  was overcrowded. Uh-huh.
 4  Q. Okay. Were you part of those
 5  discussions with the U.F.T. about the
 6  overcrowded conditions?
 7  A. No. I was aware. I do have
 8  dialogue with U.F.T. representatives that come.
 9  Of course, they realized that it wasn't my
10  decision to even have a reassignment center at
11  333 7th Avenue or -- or in terms of changes had
12  to be made. So discussions were taken -- took
13  place at a high level.
14  Q. So it's your understanding --
15  or is it your understanding that that
16  agreement, whatever it was about the
17  overcrowding, that the D.O.E. reached with the
18  U.F.T. pertained to 333 at that time? It's --
19  is it your understanding that even if a U.F.T.
20  member specifically requested to be reassigned
21  to 333, that the U.F.T. said that's not the
22  fact?
23  A. As long as we kept our
24  numbers underneath fifty, U.F.T., to the best

Page 2410

Rivera - Cross - Callagy

 2  of my knowledge, did not make an issue or bring
 3  to my attention for reassigned staff member
 4  being reassigned to a location uptown.
 5  Q. Didn't -- didn't you have
 6  individuals at 333 at that time in '06 --
 7  A. Uh-huh.
 8  Q. -- actually assigned to
 9  certain administrative and administerial duties
10  within the building?
11  A. There may have been a couple.
12  I can't say how many or -- but there --
13  throughout the course of the existence in 2003,
14  there have been a few that have been reassigned
15  to other offices, yes.
16  Q. And is that in part because
17  the individual requested to have some
18  assignment like that?
19  A. No. Actually it was the
20  request of certain supervisors from certain
21  divisions that have requested some additional
22  support, whether it was -- you know, answering
23  the phones and so forth.
24  Q. But you didn't -- you didn't

Page 2411

Rivera - Cross - Callagy

 2  force reassigned teachers to fulfill those
 3  duties, did you?
 4  A. Oh, absolutely not.
 5  Q. Yeah, so you -- you asked --
 6  you came to this opinion and some people said,
 7  yeah, I'll do that. Is that how it happened?
 8  A. They may have been -- at
 9  times where maybe one of two had indicated that
10  if there was any assistance needed or -- or
11  support --
12  Q. Uh-huh.
13  A. -- instead of saying, oh, we
14  were just aware of the individual and we would
15  reassign.
16  Q. Now do they count against the
17  fifty?
18  A. No. No. If they were
19  reassigned -- let's say for instance, to
20  another floor, they were not part of the fifty,
21  so physically we -- we physically noted how
22  many were physically were in the building --
23  Q. So --
24  A. -- and we didn't want to

800.523.7887    08/05/2009, In the matter of David Pakter    Associated Reporters Int'l., Inc.

Page 2412

Rivera - Cross - Callagy

1 surpass fifty.
2    Q. -- back in November of '06,
3 regardless of the timing of the
4 U.F.T./D.O.E. --
5    A. Uh-huh.
6    Q. -- you know, agreement about
7 overcrowding, you still had the capacity to
8 reassign teachers should you have had a need to
9 do so to fulfill other duties within the
10 building?
11    A. I believe so.
12    Q. Okay.
13    A. Uh-huh.
14    Q. Now Chancellor's Reg C-770
15 also states that "during the period of
16 suspension, all individuals are expected to
17 perform duties appropriate to their regular
18 assignments insofar as possible". Is that
19 consistent with your understanding of the reg?
20    A. Correct.
21    Q. Okay. What duties did the
22 teachers assigned to 125th Street have, if you
23 know?

Page 2413

Rivera - Cross - Callagy

1    A. To the best of my knowledge,
2 they sit in the reassignment area, whether
3 they're reading a book or just --
4    Q. But did they have a duty?
5    A. No, that's not their duty,
6 unless -- I mean, again, with our different
7 reassignment centers, it's kind of an awkward
8 situation. We really don't assign duties and
9 responsibility unless, again, there's a request
10 from the division to assign someone.
11    Q. Well, clearly that's --
12 that's in violation of the reg on its face, is
13 it not, that you don't assign any kind of
14 duties, do you?
15    A. Under the circumstances, it
16 is difficult to assign the number of reassigned
17 staff. We have few duties and responsibilities
18 for them to perform.
19    Q. So you're saying that you're
20 in conformity with the regulation, in your
21 judgment, because it's not possible to assign
22 duties to these reassigned teachers at 125th
23 Street?

Page 2414

Rivera - Cross - Callagy

1    A. In my judgment, yes.
2    Q. Okay. And why is it not
3 possible?
4    A. Because the numbers are
5 monumental for us to serve in that capacity or
6 reassign people to different divisions or even
7 within our offices. There are certain offices,
8 due to confidentiality matters, we would not
9 reassign reassigned staff members and so forth.
10    Q. But -- but the Chancellor's
11 Reg goes on to state the duties will depend, of
12 course says the Chancellor --
13    A. Uh-huh.
14    Q. -- "upon the circumstances
15 surrounding the suspension".
16    A. Yeah, I understand what the
17 Chancellor Regulation says, but again --
18    Q. But what you're saying is
19 that it doesn't depend upon the circumstances
20 surrounding the suspension, because anyone
21 suspended that's sent up there does not receive
22 a duty.
23    A. From the get go? No. No.

Page 2415

Rivera - Cross - Callagy

1    Q. That's in violation, then, of
2 the reg, isn't it? The reg says you have to --
3 "upon the circumstances surrounding the
4 suspension".
5    A. And the circumstances by
6 which exists is inappropriate for us to
7 reassign staff to duties and responsibilities
8 because we're unable to do so. It's not like
9 they're in a classroom to teach. We don't give
10 them lessons to -- to do. We're not in the
11 capacity to be able to assign individuals
12 duties and responsibility unless a principal
13 wanted one of their reassigned staff members to
14 fulfill some duties and responsibilities.
15 For example, finishing grading report cards --
16 I'm just using that as farfetched -- then we
17 would facilitate it having the reassigned staff
18 member fulfill those duties and
19 responsibilities.
20    Q. Is part of the impossibility
21 that you're referring to in terms of the
22 assignment of duties --
23    A. Uh-huh.

19 (Pages 2412 to 2415)

Associated Reporters Int'l., Inc.    08/05/2009, In the matter of David Pakter    800.523.7887

Case 1:09-cv-05167-SLT -RLM   Document 18-5   Filed 02/16/10   Page 12 of 13

800.523.7887                08/05/2009, In the matter of David Pakter                Associated Reporters Int'l., Inc.

Page 2416

Rivera - Cross - Callagy

1
2  Q. -- is part of that that the
3  Harlem office is physically far removed from
4  the regional site at 333?
5  A. No.
6  Q. Is part of it that you don't
7  actually have a supervisor on site at -- at --
8  up in -- at 125th Street, you actually don't
9  have a supervisor on site?
10 A. There is an on-site
11 supervisor. It's one of the supervisors that
12 works out of the committee of special education
13 who's our go-between person that communicates
14 with my office regarding matters concerning
15 reassigned staff.
16 Q. But that individual doesn't
17 actually physically abide in the reassignment
18 room at 125th Street, does he or she?
19 A. No, I believe the -- I mean,
20 not the reassignment -- the supervisor has a
21 separate office. But the same exists at 333
22 7th Avenue and my off-site location.
23 Q. And it's your position that
24 it would be impossible to assign, for instance,

Page 2417

Rivera - Cross - Callagy

1
2  curriculum development duties to teachers
3  reassigned to 125th Street?
4  A. Right. In my position, that
5  is not my responsibility to do that. Again, if
6  a principal had requested, or the rating
7  officer had requested, for one of their
8  reassigned staff members to fulfill such duties
9  and responsibilities, then we would facilitate
10 that.
11     Where -- there have been
12 situations where we've needed, for example, a
13 reassigned guidance staff -- a guidance
14 counselor to fulfill duties, and we have
15 facilitated that for the principal.
16 Q. But surely you could simply
17 have called over to the high school at Fashion
18 Industries and said, hey, as you know, David
19 Pakter's now been reassigned --
20 A. Uh-huh.
21 Q. -- please provide an
22 assignment for him so he'll have a duty to
23 perform while he's reassigned. Nothing
24 prevents you from doing that?

Page 2418

Rivera - Cross - Callagy

1
2  A. But that has not been
3  identified as my responsibly to do that.
4  Q. Okay. I understand. Is it
5  anyone's responsibility to do that, that you're
6  aware of?
7  A. To the best of my knowledge,
8  no.
9  Q. If you know, in the course of
10 your experience as a human resources person,
11 how have you interpreted, in your office,
12 "suspended employees are to be assigned within
13 their own districts or divisions"?
14 A. Within their own district, we
15 take a look at not where the school is
16 geographically located, per se, and let me --
17 let me just kind of clarify it. Community
18 school districts and middle schools treated
19 differently from high school. Community
20 schools, the elementary, middle schools are
21 specifically to a district which happens to be
22 their geographic --
23 Q. In this case, District Two,
24 you would refer to?

Page 2419

Rivera - Cross - Callagy

1
2  A. For example -- but in -- at
3  the high school level, even though it's
4  geographically in District Two, we go beyond
5  the geographic district, because we -- from
6  human resources perspective you look at the
7  seniority district. So for high schools, it's
8  District Seventy-one, which is the borough of
9  Manhattan.
10 Q. Okay. I'm wondering, in your
11 interpretation of the Chancellor's Reg that
12 suspended employees are to be assigned within
13 their own districts, I understand what you just
14 said --
15 A. Right.
16 Q. -- but why is it that -- why
17 should they be assigned within their own
18 district?
19 A. I -- in my opinion, I believe
20 it's part of the contractual language, part of
21 the U.F.T., because anything that happens with
22 pedagogues -- and I shouldn't just say
23 pedagogues, any department of -- Department of
24 Ed employee, contractually -- things occur

20 (Pages 2416 to 2419)

Case 1:09-cv-05167-SLT -RLM   Document 18-5   Filed 02/16/10   Page 13 of 13

800.523.7887                08/05/2009, In the matter of David Pakter                Associated Reporters Int'l., Inc.

Page 2520

David Pakter - 8-5-2009
1  the last witness in here. We are going to
2  close for today. Mr. Oliveri's going to make
3  every attempt to try and get us some witness or
4  witnesses for tomorrow morning, but we realize
5  it's late in the day. He only has about an
6  hour left to try and do anything. And he will
7  let us know, Mr. Callagy and myself, the status
8  of that.
9     If he is unable to get
10 anybody, I'm open to coming whatever time
11 counsel, both you guys agree. I mean, if you
12 want to come early or whatever, but if not,
13 then -- I mean, if we're not going to do
14 anything, I would suggest just give me a time
15 to show up, and I'll do lunch before we get
16 here so that we can run straight.
17        MR. OLIVERI: So could we
18 agree that if I'm able to bring in someone, I
19 will e-mail and call, and we'll meet -- you
20 know, I guess at ten.
21        THE HEARING OFFICER: Right,
22 okay.
23        MR. OLIVERI: If I can't
24

Page 2521

David Pakter - 8-5-2009
1  bring anyone else in, one?
2        MR. CALLAGY: One o'clock is
3  when --
4        THE HEARING OFFICER: You
5  don't have anything else we need to go over or
6  do anything -- anything else paper-wise, we
7  don't need to do, right?
8        MR. CALLAGY: I don't
9  think -- not a whole lot, you know, I mean --
10       THE HEARING OFFICER: Then
11 maybe we ought to show up at twelve thirty or
12 so.
13       MR. CALLAGY: Twelve thirty.
14       THE HEARING OFFICER: Twelve
15 thirty?
16       MR. OLIVERI: I'll be here.
17       THE HEARING OFFICER: Give us
18 a little --
19       MR. OLIVERI: Sure.
20       MR. CALLAGY: If -- if --
21       MR. OLIVERI: If I don't send
22 an e-mail tonight --
23       MR. CALLAGY: I'll call you.
24

Page 2522

David Pakter - 8-5-2009
1        MR. OLIVERI: -- I'll try. I
2  want to get as many as I can.
3        MR. CALLAGY: I don't get
4  home until --
5        MR. PAKTER: Wait and
6  call --.
7        THE HEARING OFFICER: Okay.
8  Thank you for your time. Sarah, thank you very
9  much for sitting there patiently while we were
10 doing this stuff.
11       (The hearing adjourned at
12 4:24 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24

Page 2523

David Pakter - 8-5-2009
1  I, Sarah Manchester, do hereby certify that the
2  foregoing was taken by me, in the cause, at the
3  time and place, and in the presence of counsel,
4  as stated in the caption hereto, at Page 2343
5  hereof; that before giving testimony said
6  witness(es) was (were) duly sworn to testify
7  the truth, the whole truth and nothing but the
8  truth; that the foregoing typewritten
9  transcription, consisting of pages number 2343
10 to 2522, inclusive, is a true record prepared
11 by me and completed by Associated Reporters
12 Int'l., Inc. from materials provided by me.
13
14 _Sarah Manchester_ (signature)
15 Sarah Manchester, Reporter
16
17 _8/19/09_ Date