

*Joy Hochstadt, P.C.*
*Attorneys at Law*
*300 Central Park West*
*New York, New York 10024*

March 22, 2010

### RESPONSE TO MR. LEIGHTON'S APPLICATION TO SEVER

**By: ECF**
The Honorable Sandra L. Townes
United Stated District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Thomas et al v. NYC Dep't of Education et al. 09-cv-5167 (SLT)(RLM)

Dear Judge Townes:

I am counsel to the putative Class in the Action cited above.

I would have liked to have responded immediately to Mr. Leighton's applications to the Court this past week but I was rather involved with the proceedings in New York State Supreme Court for another of the putative Class Representatives Mr. Paul Santucci. In the course of one week (March 12, 2010-March 19, 2010) the court held a conference, then sent the parties off to brief two issues in the case, as well as to report back on a third, and then held an evidentiary hearing on one of the issues on March 19, 2010 before Justice Alice Schlesinger.

I am particularly concerned that Mr. Leighton seeks to sever the claims of Mr. David Pakter, another putative Class Representative from the above Action. The putative Class Representatives were very carefully chosen to represent the full spectrum of the demographics and circumstances of the putative Class. Loss of any member would skew the balance of the putative class and its cross-section of Plaintiff issues considerably. It would leave an imbalance between the present three teachers still employed by the DOE and three former employees. Of the three DOE employee putative class representatives, one has been confined to a rubber room for over a year without 3020-a charges ever having been brought (Holmes), one has been exonerated (Thomas) and one is currently in the midst of protracted hearings that have gone on since May 2009 (when they are mandated by §3020-a to be held on consecutive days, but never are) (Pakter). It would further topple the racial balance of two African-Americans, two Latinos, and two teachers of European background but of divergent ethnicity, leaving only a single Caucasian putative class representative, which could have a chilling effect on non-minority interest the Action was brought as much in their behalf as for any other group.

---

It was my intention to limit the instant Action solely to claims shared by the entire class, and to bring individual actions for each of the putative class representatives (where not already adjudicated by another forum), such that the common legal issues could not be sullied by *ad hominem* defense strategies, and yet this Court would be aware of how personally devastating the DOE's unlawful conduct has been on each putative class representative and representative of other members of the putative class.

Unfortunately, Mr. Pakter's situation has become so egregious and imminently destructive to every aspect of his life that I found it necessary to bring it to the Court's immediate attention. Mr. Pakter's claims before the sister jurisdiction of the Southern District of New York, stem only from October 1993 through June 1, 2009 when his 2nd Amended Complaint was filed. His claims have become so extensive and complex that it was appropriate to bring a new action related to the instant action before this Court. Mr. Leighton's submission's from the other docket and specific documents from <u>Pakter v. DOE et al</u> 08-cv-7673 belie the status of that case and are inaccurate because they are moot. All motions pending beside preservation of evidence available prior to September 9, 2009 have been withdrawn as has the request for all other relief filed after September 9, 2009 and before the retaliation concerning the checks occurred (See Exhibits 1 and 2 letters to the The Honorable Deborah A. Batts, USDJ, SDNY from myself to Her Honor dated March 2, 2010, and from Assistant Corporation Counsel Larry R. Martinez to Her Honor dated March 3, 2010, respectively acknowledging said withdrawal). All new claims arising since September 9, 2009, have been brought before this Court, though it will be possible to sever them into a new action before this Court once the urgency of this relief, immediately needed, has been dealt with.

There is a very good reason beside sheer volume of evidence and defendants that Mr. Pakter is optimally served, in the interests of justice, by limitation of his claims in that action to those occurring before June 2009, and commencing a new action for later claims or bringing them into a new action, once commenced. In the document submitted by me to the SDNY that Mr. Leighton has filed, Docket # 32-3 in the instant matter, I did fully outline and then withdraw (see *Exhibits 1 and 2*) the facts of what has been recently tormenting Mr. Pakter. Most significant is *fn* 1 to that letter. Our assertion therein is that the DOE counsel for the §3020-a, Philip Oliveri, Esq. submitted a fabricated and false "time sheet" in the §3020-a purporting to be Mr. Pakter's "time sheet" from September 2009. That time sheet is absolutely false, not only because there was no time sheet set out for Mr. Pakter for any time in 2009 prior to December 2009 as attestable to by numerous witnesses, but especially because the school was "coded" incorrectly. While Mr. Pakter may have had charges brought against him for the 19 days he was sent to Fashion Industries H.S., (code M600) he was never "assigned" to Fashion Industries High School; his payroll has been initiated and generated from H.S. of Art and Design (code M630) exclusively for the last 31 years and that, after the fact, a single time sheet is the only one with "M600" coded rather than M630 over several years of time sheets at rubber rooms 2004-2005, 2006-2007, 2007-2008 and December 2009 to the present. The hearing officer in the §3020-a is determined to get to the bottom of the false time sheet issue stating on the record "someone is going to lose his license over this." Mr. Martinez not only submitted that same time sheet to the SDNY but made a declaration under 28 USC § 1746 attesting

to the truth of his statements in December of 2009 or both.[1] On a second occasion a different time sheet was submitted to the SDNY, purporting to be "the" September time sheet, this one in January 2010, again several months after the fact. This one differed from the first, only by having the word "absent" scrawled across it by hand diagonally in approximately 50 point size. How could a single document that would have been complete on September 30, 2009 appear in two versions, each at least two months after the fact, unless tampered with?

Because of these fabrications and false testimony, Plaintiff Pakter is developing claims pursuant to Amalfitano v Rosenberg, 572 F.3d 91, (2d Cir. 2009) against these attorneys, although their pitfall may be that they were misled by Defendant Rivera or her in-house counsel, John Petrak, Esq. or both. I, for one, now seek to avoid all contact with Larry R. Martinez, Esq. who, on the one hand submitted false testimony and fabricated, fraudulent evidence to the SDNY, while at the same time claiming that it is acceptable to withhold Plaintiff Pakter's already issued paychecks, while and clamoring for my being sanctioned for frivolity in pleading that it is not acceptable to withhols already issued paychecks. On April 15, the first of the withheld paychecks becomes "stale."

Mr. Leighton, whom I respect, is adopting the same, unsustainable rhetoric that the long issued, almost stale paychecks from October, November, and December 1, 2009 and even recently heavily docked paychecks since Plaintiff Packter's status was changed back to "suspended with pay" without any due process on December 1, 2009 may be withheld. These most recent paychecks commencing December 16, 2009 are for merely $70 net pay twice monthly, yet they have been withheld as well. Plaintiff Pakter has received no pay checks or stubs at all since October 1, 2009, yet he has received a W-2 also sent to the IRS, as if he had been given all his paychecks in 2009. Therefore, Defendant Rivera, without authority, has intercepted four full paychecks issued to Plaintiff Pakter in 2009 and seven pay checks that she arranged to be negligible, also without authority, but are equally being withheld and of which the payroll maker is unaware as it has issued Plaintiff Pakter a W-2 form as if he was paid each check. Plaintiff Pakter is a man who only wants to be vindicated at the §3020-a on the trumped-up charges, that have already been admitted in the §3020-a proceeding as having originated with the Manhattan Regional Operations Center in 2006 and not with Fashion Industries H.S. Pakter was willing to pay ~ $30,000.00 *per annum* for clearing his name and inculpating the DOE officials behind the charges (the difference between his after tax pension vs. his after tax salary), but is literally drowning because Defendant Rivera is so determined that her forced admissions in Pakter's §3020-a decision are never publicized that she has withheld all his paychecks with or without the complicity of her superiors Defendants Crowe and Becker. I was also informed that should Pakter retire now, the §3020-a would be aborted without a Decision, as the procedure is between employer and employee and ceases to exist between retiree and former employer (albeit in this case of 41 years duration).

Besides there being no overlapping claims or applications for relief, (applications for evidence preservation of evidence in existence prior to September 2009 were left pending in SDNY as was the 2nd Amended Complaint filed on June 1, 2009). Here, on the other hand only evidence

---

[1] In fact, I have complained through the proceeding that Mr. Martinez was neither a Defendant nor a person with knowledge and that plaintiff had the right to consider only the declarations from person with knowledge.

**Principal: Joy Hochstadt, PhD., JD, Dipl. Amer. Bd. Clin. Chem.,    Telephone  212 580 9930    Facsimile: 212 580 9322**
**Admitted: Federal & State Bars of NJ & NY, 2nd Circuit & U.S. Supreme Court    e-mail  joy.hochstadt.pc@gmail.com**

generated beginning September 2009, is requested to be preserved or produced and then only for the purposes of the Motion for a Preliminary Injunction in Plaintiff Pakter's behalf..

To further exemplify, how important Plaintiff Pakter is to this action for demographics and circumstances balance, Pakter is also the only one of the putative class members who is so high profile as to be written about in every newspaper story about the "rubber rooms". It would detract seriously from the representativeness of the putative class representative, if at least one putative class representative was not a named high profile long-term rubber room assignee whose name was familiar to the entire class.

In yesterday's *New York Post* (Exhibit 3), the article libels and defames Plaintiff Pakter as Plaintiff Pakter was never charged with sexual misconduct or sexual improprieties, of any sort whatsoever. This is the very dangerous type of "telephone game" of poor journalism and secondary and tertiary sources or deliberate misinformation promulgated by the Defendants. We have determined that none of the teacher information came from the film makers. I left a voice message for Yoav Gonen, the reporter, requesting the source of the libelous and defamatory statement, offered him an invitation to view Mr. Pakter's actual (and ridiculous) §3020-a charges and demanded a retraction.

So that the Court may now observe how carefully named Plaintiffs were selected, while their diversity, circumstances and personal claims were intentionally omitted from the complaint, so that only the charges common to the entire putative plaintiff class would be addressed, I describe the six named Plaintiffs herein.

Ms. Anna-Maria Thomas is an African American woman in her mid-sixties who has been teaching for more than 35 years when she was brought up on disciplinary charges that were found by the arbitrator to be totally incredible and she was completely exonerated. She has filed an individual action Thomas v DOE et al. 10-cv-0464 (SLT)(RLM) to make her claims that her constitutional rights were abridged by being confined to the "Rubber Room" for two years pre-adjudication, for not being given workplace accommodation for disabilities that were exacerbated by the two years in the Rubber Room, and by mistreatment based on age and disability upon return to her school after she was exonerated when she was treated as a Pariah simply for having been brought up on charges and confined to the rubber room despite her exoneration. Plaintiff Thomas was confined to the 25 Chapel Street facility.

Mr. Leevert Holmes is an African-American male in his early thirties who has been teaching for almost ten years. He is a graduate of Phillips Academy at Andover, MA and Wesleyan University. He has elected to work with the most challenging of students, special education middle school youngsters, for whom it is critical that the teacher make a difference. Many of the students are emotionally disturbed. Mr. Holmes has been assaulted by his students on three occasions, one of those times sending him in the hospital with a concussion. Without being taught how to bring disciplinary action against a student with disabilities, Mr. Holmes filed a complaint at the school precinct against a student who seriously injured him when he assaulted him. Rather than instruct Mr. Holmes that the appropriate procedure under IDEA [Individuals with Disabilities Education Act; 20 U.S.C.A. § 1415] would be to first convene a committee on special education to determine if the

behavior was a manifestation of the student's disability, the Principal immediately informed Mr. Holmes that she could not have such a teacher in her school and dispatched him to a "Rubber Room." Mr. Holmes has languished there for more than one year without any charges ever having been filed against him or being allowed to return to work. He has been confined to facilities in upper Manhattan, most recently in huge trailers enclosed in chain link cages at West 193rd Street and Audubon Avenue.

Dr. Josefina Cruz is a 62 year old Latina who was born in the Dominican Republic where she is an acclaimed novelist. Dr. Cruz had taught Spanish language and literature to high school students in the NYC Public School for 14 years until she was brought up on charges with the rest of her Spanish Department at Graphic Communications Arts HS for allegedly failing to administer the January 2006 oral portion of Spanish Regents Exam, when in fact, it was admitted administrative failure not to distribute the exam materials to the teachers in time. Like Mr. Santucci, Dr. Cruz was denied access to counsel for her §3020-a administrative proceedings, was fired and had a very difficult period of severe mental and physical incapacitation thereafter. She has moved for re-argument in her state proceeding to vacate the arbitral decision that terminated her. *See* Cruz v. Department of Education 2010 WL 93235 (N.Y.Sup.). Mr. Leighton also opposes that matter. The only Spanish Department member who was not terminated was the one who was not denied counsel. Dr. Cruz was confined at 333 Seventh Avenue for three years.

Mr. Brian Salazar is a Latin male born in Bolivia, in his mid thirties who is married to a physician recently graduated from Downstate Medical School and with his wife are the proud parents of an infant. Mr. Salazar taught Mathematics without incident at the high school level for about ten years. Like Ms. Thomas, Mr. Salazar was the victim of students who wished to retaliate against him for having failed his class. They too, brought malicious and untrue allegations of a sexual nature after having espied Mr. Salazar speaking to one of his students while each was waiting for their individual "take-out" orders, at a diner across the street from the school. Rather than risk a 3020-a adverse decision from an arbitrator whose termination rate is close to 100%, he was coerced to resign to protect his state teaching certification (for future use outside NYC) and whose arbitrator continues to serve because, when the UFT sought to terminate her, the DOE offered the UFT an extra seat on the Collective Bargaining Committee for so long as this arbitrator continues to preside over 3020-a proceedings. He was confined at 333 Seventh Avenue for two years.

Mr. David Pakter is a 64 year old white male of Eastern European background, who developed the first medical illustration program for high school students anywhere in the United States. It was the vehicle by which his many minority students gained admissions and scholarships to the most prestigious and competitive universities and colleges in the nation. In 1997, he was honored at City Hall by then Mayor Rudolph Giuliani for his "Excellence of Achievement" as a Teacher of the Year. Mr. Pakter has been employed by the DOE for 41 years. Since 2003 when he "blew the whistle" to both Chancellor Klein and to the Special Commissioner of Investigation, on then new Principal of Art and Design H.S. ("A&D"), Madeleine Appell, for her practices which discriminated against the school's virtually wholly minority students by narrowing the curriculum, eliminating music required for graduation (and transferring the music resources to the almost all white abutting elementary school on the Upper East Side of Manhattan) and limiting foreign

language to one year of Spanish (which the students all knew from home)[2], therefore limiting their future educational options as well as diverting funds earmarked for music at A&D, he has been relentlessly targeted. While Principal Appell was forced to resign from the DOE in September 2004 because of evidence Mr. Pakter had obtained, her parting gesture was to send Mr. Pakter to the rubber room the day before she resigned. He remains assigned to the same school in which he has taught for 31 years, though he has not been back in the building for six years. Those six years were spent in various rubber rooms, one year he was taken off payroll without any due process by merely the signature of the DOE medical department (but later restored and repaid as an "error"), and for 19 days sent to a different high school where the Principal had been directed to bring him up on disciplinary charges again, the first set having failed to result in his termination or suspension. When in 2009, he past his 40 year anniversary with the DOE, that is also when his pension payout began to exceed his salary. He subsequently learned that no time sheets were maintained for him at the rubber room to which he had been assigned. Associate General Counsel of New York State Unified Teachers ("NYSUT") the state union, Claude Hersh, Esq. and I discussed this and opined that he had been shifted to leave with pay because he was already losing ~ $30,000.00 per annum in net pay; thus some administrator with access to change central payroll records must have made the change. This discussion took place approximately one year ago. Plaintiff Pakter was able to verify this by payroll department printouts and his school's payroll officer's testimony at his §3020-a. The DOE has in turn conducted investigations into his requests for the payroll department documents, despite the fact that every other employee may and often does request copies of the same payroll records with being investigated for possible new allegations.

Plaintiff Pakter has also discovered that the Declaration that was uploaded to ECF last week was not the one he intended to be filed. Therefore, I am withdrawing that one Docket # 30 by entering notice of withdrawal both in Errata and in Notices and identifying the concurrently filed Declaration as "Replacement Declaration for Docket # 30."

Mr. Paul Santucci, 54, is a white male of South European descent, now separated from his Afro-Brazilian wife (his termination and the foreclosure of their suburban NJ home where they resided for 16 of their 21 year marriage breached the limits of her tolerances and she moved out recently) and is raising their three biracial children who live with him, the youngest nine. Santucci had a laudatory record as a High School English teacher until a year that his own and two of his children's health problems caused substantial lateness and absence which could have been entirely avoided had he not been denied both a health restoration sabbatical and a medical leave without pay, both of which he was entitled to, and both of which he had applied for, or intermittent FMLA or a combination of the two. He too, was a whistle-blower, albeit on scandalous sexual activity between an educator and her student[3] in his school which appears to be the reason he was denied the needed leave accommodations. The arbitrator at his §3020-a, who insisted the hearings continue without representation for Mr. Santucci, after being urged to do so by the DOE, then terminated Santucci

---

[2] Undoubtedly to raise standardized test scores for the school and thus, her own incentive pay. under this Chancellor.

[3] The teacher who was pregnant at the time by the student was permitted to resign quietly, is now married to the student, while Mr. Santucci spent three years in the rubber room before the 3020-a hearing began; but was not granted a few weeks adjournment of the hearing to allow the counsel issue to be resolved.

**Principal: Joy Hochstadt, PhD., JD, Dipl. Amer. Bd. Clin. Chem.,    Telephone  212 580 9930    Facsimile: 212 580 9322**
**Admitted: Federal & State Bars of NJ & NY, 2nd Circuit & U.S. Supreme Court    e-mail  joy.hochstadt.pc@gmail.com**

without any witness being cross-examined or any defense case being offered or any argument being made in Santucci's behalf.

Because of the thoughtful planning in selecting six putative class representatives who could and would fairly and honestly represent the putative class, this group should not be upset. Though any of Mr. Pakter's individual claims arising since September 2009 can and shall be presented to the Court in an individual action, the perilous situation that he is currently experiencing requires immediate relief. No one knows Mr. Leighton's and my schedules better than each other as we already oppose each other in four actions or petitions before both state and federal courts.

Because more time than I ever anticipated has elapsed between the time I would have liked to have responded to Mr. Leighton's applications to the Court and my herein response, I shall not delay further. I shall address my remarks concerning Evidence Preservation and Production in my next communication as did Mr. Leighton, and addressed to Judge Mann as well.

Respectfully submitted

*[signature: Joy Hochstadt]*

Joy Hochstadt
Counsel to the Putative Plaintiff Class

**Principal: Joy Hochstadt, PhD., JD, Dipl. Amer. Bd. Clin. Chem.,     Telephone  212 580 9930     Facsimile: 212 580 9322**
**Admitted: Federal & State Bars of NJ & NY, 2nd Circuit & U.S. Supreme Court      e-mail  joy.hochstadt.pc@gmail.com**