09 CV 5167 (SLT)(RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIE ANNE THOMAS, et al.,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

### MICHAEL A. CARDOZO
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-169
New York, N.Y.  10007-2601

*Of Counsel:*   Maxwell D. Leighton
*Telephone:*    (212) 788-0407

Matter No. 2009-044637

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ......................................................................................................... 4

      POINT I ...................................................................................................... 4

      THE COMPLAINT FAILS TO STATE A CAUSE
      OF ACTION ............................................................................................... 4

  A.    Plaintiffs' Due Process Claim ................................................................ 5

  B.    Plaintiffs' Equal Protection Claim ......................................................... 8

  C.    Plaintiffs' First Amendment Claim ...................................................... 10

      POINT II ................................................................................................... 12

      CERTAIN PLAINTIFFS' CLAIMS ARE
      BARRED BY COLLATERAL ESTOPPEL OR
      RES JUDICATA ......................................................................................... 12

      POINT III .................................................................................................. 14

      THE AGREEMENT RENDERS PLAINTIFFS'
      CLAIMS MOOT ........................................................................................ 14

CONCLUSION ..................................................................................................... 16

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                           <u>Pages</u>

<u>Adams v. New York State Educ. Dep't</u>,
    No. 08-5996, 2010 U.S. Dist. LEXIS 33794 (S.D.N.Y. Apr. 6, 2010).....................14

<u>Allen v. McCurry</u>,
    449 U.S. 90 (1980).........................................................................................12

<u>Ashcroft v. Iqbal</u>,
    129 S.Ct. 1937 (2009).....................................................................................4

<u>Battle v. Bd. of Regents for Georgia</u>,
    468 F.3d 755 (11th Cir. 2006)........................................................................12

<u>Bernheim v. Litt</u>,
    79 F.3d 318 (2d Cir. 1996)........................................................................5, 11

<u>Board of Regents v. Roth</u>,
    408 U.S. 564 (1972)..................................................................................5, 6

<u>Boland v. Police Dep't of the City Of New York</u>,
    No. 06-15312, 2007 U.S. Dist. LEXIS 88444 (S.D.N.Y. Nov. 29, 2007)...................6

<u>Brammer-Hoelter v. Twin Peaks Charter Academy</u>,
    492 F.3d 1192 (10th Cir. 2007).......................................................................11

<u>Buffalo Teachers Fed'n, Inc. v. Helsby</u>,
    676 F.2d 28 (2d Cir. 1982)...........................................................................9

<u>Caniello v. City of New York</u>,
    No. 00-3009, 2001 U.S. Dist. LEXIS 20 (S.D.N.Y. Jan. 3, 2001)..........................6

<u>Campaign for Fiscal Equity, Inc. v. New York</u>,
    187 Misc.2d 1, 719 N.Y.S.2d 475 (Sup. Ct., N.Y. Co. 2001)..........................9

<u>Cleburne v. Cleburne Living Center</u>,
    473 U.S. 432 (1985).....................................................................................9

<u>Cleveland Bd. of Ed. v. Loudermill</u>,
    470 U.S. 532 (1985)..................................................................................6, 8

<u>Cobb v Pozzi</u>,
    363 F.3d 89 (2d Cir. 2003)...........................................................................11

Cruz v. New York City Dep't of Educ.,
 Index No. 117004/08, New York State Supreme Court, New York County................14

Dep't of Agric. v. Moreno,
 413 U.S. 528 (1973)..................................................................................9

Ezekwo v. New York City Health & Hosp. Corp.,
 940 F.2d 775 (2d Cir. 1991)......................................................................6

Geisler v. Petrocelli,
 616 F.2d 636 (2d Cir. 1980).......................................................................5

Giglio v. Dunn,
 732 F.2d 1133 (2d Cir. 1984).....................................................................8

Guida v. Police Dep't,
 No. 96-0355, 1997 U.S. Dist LEXIS 7053 (S.D.N.Y. May 20, 1997)........................6

Harris v. Mills,
 572 F.3d 66 (2d Cir. 2009).........................................................................4

Heller v. Doe,
 509 U.S. 312 (1993)..................................................................................9

In re Sokol,
 113 F.3d 303 (2d Cir. 1997).......................................................................13

Kentucky Dep't of Corr. v. Thompson,
 490 U.S. 454 (1989)..................................................................................5

Los Angeles v. Davis,
 440 U.S. 625 (1979).................................................................................15

Matthews v. Eldrige,
 424 U.S. 319 (1976)..................................................................................6

Monahan v. New York City Dep't of Corr.,
 214 F.3d 275 (2d Cir. 2000).......................................................................13

Nordlinger v. Hahn,
 505 U.S. 1 (1992).....................................................................................9

O'Connor v. Pierson,
 426 F.3d 187 (2d Cir. 2005).......................................................................5

<u>Pakter v. New York City Dep't of Educ., et al.</u>,
   08 CV 7673 (DAB)(KNF)……………………………………………………13

<u>Perez v. City of New York</u>,
   No. 97-4162, 1997 U.S. Dist. LEXIS 19093 (S.D.N.Y. Dec. 2, 1997)………………...6

<u>Ramberran v. Dellacona</u>,
   No. 07-304, 2008 U.S. Dist LEXIS 25476 (E.D.N.Y. Mar. 31, 2008)……………………7

<u>Romer v. Evans</u>,
   517 U.S. 620 (1996)…………………………………………………………………9

<u>Shanker v. Helsby</u>,
   676 F.2d 31 (2d Cir. 1982)……………………………………………………...8

<u>Southern Pacific R.R. Co. v. United States</u>,
   168 U.S. 1 (1897)………………………………………………………………...12

<u>Williams v. Dallas Indep. School Dist.</u>,
   480 F.3d 689 (5th Cir. 2007)……………………………………………………12

**<u>Statutes</u>**

New York Education Law § 2590-j……………………………………………………………7

New York Education Law § 3020(4)…………………………………………………………7, 8

New York Education Law § 3020-a(5)......…………………………………………………8

## PRELIMINARY STATEMENT

This putative class action is brought pursuant to 42 U.S.C. § 1983 and the New York State Constitution, alleging violations of equal protection, due process, and free speech, by six former and current New York City Department of Education ("DOE") teachers, all of whom were placed in DOE reassignment centers pending Education Law § 3020-a hearings on various disciplinary charges preferred against them.  Plaintiffs allege that DOE's placement of teachers in the reassignment centers, awaiting disciplinary charges and hearings, violates applicable State Education Laws and, thus, violates their due process rights.  Plaintiffs further challenge the same sections of the State Education Law, because, they assert, these statutes violate a teacher's right to equal protection.  Finally, plaintiffs contend that DOE's placement of teachers in reassignment centers operates to hinder, and thus violate, their right to free speech.

Defendants move to dismiss the complaint because plaintiffs fail to state a cause of action on any claim.  First, the process provided plaintiffs under Education Law § 3020-a far exceeds the constitutional mimima mandated by the due process clauses of the federal and state constitutions.  As well, plaintiffs' placement in a reassignment center, with no reduction in pay or benefits, did not violate their due process rights.

Second, in 1969, the State Legislature enacted Education Law §§ 2590, et seq. specifically intended to govern the DOE.  Among other things, Education Law § 2590-j(7)(b) empowers a DOE school's community superintendent to initiate disciplinary charges against a tenured teacher.  Though plaintiffs object to such enactment, and the consequent amendments to other sections of the Education Law, they cannot establish any basis for concluding that the enactment of that legislation is not rationally related to a legitimate state interest.

Third, plaintiffs utterly fail to state a cause of action for any alleged violation of their First Amendment rights, as their complaint is wholly devoid of specific allegations setting forth any protected speech in which any plaintiff allegedly engaged.

Fourth, two of the proposed class plaintiffs, Josefina Cruz and David Pakter, have commenced separate court proceedings and actions challenging the bases for their § 3020-a hearings, their disciplinary charges, or the DOE's actions with respect to their employment. Thus, certain of these plaintiffs' claims are barred by collateral estoppel or res judicata.

Finally, the DOE and the United Federation of Teachers ("UFT"), plaintiffs' union representative, reached an agreement, dated April 15, 2010 ("Agreement"), that renders moot substantially most of plaintiffs' claims for relief.  Among other things, the Agreement provides that (1) teachers against whom misconduct or incompetence is alleged may be reassigned only to a DOE administrative office to do work consistent with law or to an administrative assignment within his or her own school; (2) DOE must prefer charges against a tenured teacher within 60 days, for misconduct, and within 10 days, for incompetence, of the teacher's suspension or reassignment; and (3) within 10-15 days of DOE's receipt of a teacher's request for a § 3020-a hearing, a pre-hearing conference shall be held.

Accordingly, the complaint should be dismissed.

## STATEMENT OF FACTS[1]

Plaintiffs are, or formerly were, tenured teachers employed by DOE, all of whom were reassigned to a Teacher Reassignment Center ("TRC"), pending disciplinary charges and a

---

[1] The facts set forth in the complaint are deemed true only for the purposes of the motion to dismiss.  Therefore, this statement of facts is derived from the complaint and defendants neither admit nor deny those allegations.

§ 3020-a disciplinary hearing.  See Complaint, a copy of which is annexed as Exhibit "A" to the

Declaration of Maxwell Leighton, dated April 30, 2010 ("Leighton Decl."), ¶ 10.

Plaintiffs allege that DOE's reassignment of teachers awaiting disciplinary

charges or pending their § 3020-a disciplinary hearings to TRCs, also termed "rubber rooms,"

violated plaintiffs' due process rights and constitutes unlawful discipline.  See Complaint,

¶ "20."  Plaintiffs further allege that the State Legislature's amendment of the New York State

Education Law to treat New York City differently from the rest of the state violates DOE

teachers' rights to due process and equal protection.  Id., ¶¶ "58," "59."

Plaintiffs further allege that their right to free speech has been infringed, both by

virtue of being placed in TRCs, as well as alleging that such placement constituted retaliation for

plaintiffs' exercise of their free speech rights.  See Complaint, ¶¶ "78" – "83."

Plaintiffs commenced the instant action on November 24, 2009.

In a detailed, comprehensive letter agreement, dated April 15, 2010

("Agreement"), the DOE and the UFT, plaintiffs' collective bargaining representative, agreed

that

> [t]he long delays that have arisen in the current
> process of investigating alleged acts of misconduct
> and adjudicating charges pursuant to Education Law
> § 3020-a benefit neither the DOE nor the employees
> represented by the UFT.  The DOE and the UFT are
> committed to ensuring that the agreements reached
> here will be carried out so that those delays will be
> ended and the process outlined in the law, the
> contracts between the parties, and this Agreement
> will be adhered to.

A copy of the Agreement is annexed to the Leighton Decl., as Exhibit "B."  By this Agreement,

the DOE and UFT set forth, *inter alia*, that teachers who, prior to August 31, 2010, were

assigned to TRCs or charged pursuant to Education Law § 3020-a shall, effective the first day of

- 3 -

the 2010-2011 school year, be reassigned to an Administrative Office assignment or an Administrative School assignment or suspended with pay, if permitted under the Agreement. The DOE and UFT further agreed that for all employees charged prior to August 31, 2010, their § 3020-a hearing and decision will be completed by December 31, 2010. See id. at 8.

As well, the DOE and UFT agreed that, effective September 1, 2010, with limited exceptions, DOE shall prefer disciplinary charges against a teacher within 60 days of reassignment or suspension for a misconduct case, and within 10 days of reassignment for an incompetence case. See Agreement, at 2-3. Moreover, the Agreement sets forth that, within 10-15 days of DOE's receipt of an employee's request for a § 3020-a hearing, a pre-hearing conference shall be held, and that, with extremely limited exceptions, the § 3020-a hearing must be completed within 60 days of the pre-hearing conference, and a decision rendered within 30 days of the final hearing date. See id. at 4-5.

## ARGUMENT

## POINT I

### THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION

Plaintiffs fail to state a cause of action on any of their claims. Under the standard that the United States Supreme Court recently clarified in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Moreover, the Court must only accept as true the allegations that contain factual matter, and need not accept as true the allegations that merely state legal conclusions. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) quoting Iqbal, 129 S.Ct. at 1949 ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].").

Indeed, the role of the Court, in deciding a motion to dismiss, "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). The allegations set forth in plaintiffs' complaint fall far short of these established standards and, accordingly, plaintiffs' claims should be dismissed.

**A.     Plaintiffs' Due Process Claim**

Plaintiffs allege that their reassignment to TRCs violated their due process rights. This assertion is entirely meritless. Placement in a reassignment center, with no reduction in pay or benefits, did not, in any way, violate plaintiffs' due process rights.

To state a cause of action under the due process clause, plaintiffs must show that they have "a property interest in the employment or the benefit that was removed." Bernheim v. Litt, 79 F.3d 318, 322 (2d Cir. 1996). See also Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)(citation omitted).

Plaintiffs continued to receive salary and benefits upon their transfer to and while they reported to reassignment centers. Thus, they cannot establish any violation of their due process rights. Further, it is well-established that plaintiffs do not have a constitutionally protected right to specific duties in a specific location. See O'Connor v. Pierson, 426 F.3d 187, 199 (2d Cir. 2005)("[N]o court has ever held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties."); see also

Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 783 (2d Cir. 1991); Boland v. Police Dep't of the City Of New York, No. 06-15312, 2007 U.S. Dist. LEXIS 88444, at *5 (S.D.N.Y. Nov. 29, 2007); Caniello v. City of New York, No. 00-3009, 2001 U.S. Dist. LEXIS 20, at *1 (S.D.N.Y. Jan. 3, 2001); Guida v. Police Dep't, No. 96-0355, 1997 U.S. Dist LEXIS 7053, at *3-7 (S.D.N.Y. May 20, 1997); Perez v. City of New York, No. 97-4162, 1997 U.S. Dist. LEXIS 19093, at *4 (S.D.N.Y. Dec. 2, 1997).  Indeed, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Roth, 408 U.S. at 577.  Thus, the Due Process Clause claim concerning plaintiffs' reassignment to TRCs must be dismissed, as plaintiffs have no property interest in their assignment.

Second, with respect to their disciplinary charges and hearing, the process provided plaintiffs under Education Law § 3020-a far exceeds the constitutional minima mandated by the Due Process Clauses of the federal and state constitutions.  See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985).  In Loudermill, the Supreme Court held that

> The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. **The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story.** To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

Id. at 545 (emphasis supplied).  "[S]ome kind of hearing" must be held prior to the termination of an employee who has a property right in his continued employment."  See Matthews v. Eldrige, 424 U.S. 319, 343 (1976).  The tenured public employee is entitled to oral or written

notice of the charges against him, an explanation of the employer's evidence, and an opportunity

to present his side of the story.   The pre-deprivation process, an evidentiary hearing, provided to

plaintiffs exceeded that constitutional minima.   See Ramberran v. Dellacona, No. 07-304, 2008

U.S. Dist LEXIS 25476, at *4 (E.D.N.Y. Mar. 31, 2008) ("[T]he procedures outlined by § 3020-

a of the Education Law, when followed, are more than adequate procedural safeguards to satisfy

the plaintiff's due process rights under the Fourteenth Amendment." (quotations omitted)).   Each

of the plaintiffs had an evidentiary hearing, counsel, and the right to cross-examine witnesses, to

introduce evidence, and to testify on their own behalf.   Plaintiffs' complaint does not allege that

plaintiffs were denied the essential elements of due process — notice and the opportunity to be

heard.   Nor do plaintiffs allege that as tenured teachers they were denied hearings in connection

with their disciplinary charges.   Rather, plaintiffs seek to challenge Education Law §§ 2590, et

seq., by contending that the statute, which permits disciplinary charges to be initiated by a DOE

school's community superintendent,[2] violates plaintiffs' due process rights because, plaintiffs

allege, Education Law § 3020-a requires that disciplinary charges be reviewed by and voted on

by a "formally constituted Board of Education."   See Complaint, ¶ 20(f).

       Plaintiffs cannot establish a legal entitlement to the specific procedures set forth

in Education Law § 3020-a for the initiation of disciplinary charges.   Education Law § 3020(4)

specifically authorizes the DOE to enter into a Collective Bargaining Agreement with plaintiffs'

collective bargaining representative, the UFT, to modify the disciplinary proceedings for tenured

teachers as set forth in Education Law § 3020-a.   Education Law 3020(4) limits the nature and

scope of the parties' agreement only by requiring that the modified procedures comply with the

---

[2] See Education Law § 2590-j(7)(b).

mandate in Education Law § 3020-a that tenured teachers be disciplined or removed for "just cause."

Plaintiffs solely contend that the fact that disciplinary charges are not reviewed and voted on by a formally constituted Board of Education violates their due process rights. There is no allegation nor the slightest implication that this difference, fully authorized by state law, has any effect on whether a tenured teacher receives "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546.

Finally, Education Law § 3020-a(5) provides that, following a § 3020-a hearing, a teacher can challenge an adverse determination in state court, thus providing plaintiffs with a post-deprivation remedy. See Giglio v. Dunn, 732 F.2d 1133 (2d Cir. 1984) (post-deprivation remedies satisfy due process requisites).

Accordingly, plaintiffs' due process claims are without merit and should be dismissed.

**B.      Plaintiffs' Equal Protection Claim**

Plaintiffs allege that the amendment of New York State Education Law §§ 2590-j, 3020-a, and 3020, thereby "treat[ing] New York City different from the rest of the state," denies plaintiffs their right to equal protection.

It is very well-established that the Legislature may enact laws specifically concerning New York City, its municipal agencies, boards, and bodies. Such laws may lawfully treat them differently from the rest of the state provided that a rational basis exists for such differential treatment. See Shanker v. Helsby, 676 F.2d 31, 34-35 (2d Cir. 1982) (finding the Taylor Law bears a "rational relation to the legitimate state interest in fostering harmonious labor relations between public employers and employees . . . especially in light of New York City's

unique labor history."); see also Buffalo Teachers Fed'n, Inc. v. Helsby, 676 F.2d 28, 30 (2d Cir. 1982) ("In enacting the Taylor Law, the New York legislature faced the choice of creating either a uniform statewide system or a decentralized scheme to regulate public employee relations. The legislature could reasonably have determined that local autonomy would play an important role in fostering harmonious labor relations.").

Plaintiffs have not, and cannot, establish any basis for concluding that the enactment of legislation, such as Education Law § 2590-j, governing the DOE, is not rationally related to a legitimate state interest. Indeed, the DOE has no obligation to produce evidence to sustain the rationality of a statutory classification, particularly here, where the DOE, a vast, complex structure managing hundreds of thousands of teachers, staff, administrators, and students, dwarfs every other school district in the state. See Heller v. Doe, 509 U.S. 312, 320 (1993); see also Cleburne v. Cleburne Living Ctr, 473 U.S. 432 (1985) ("legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."); see also Dep't of Agric. v. Moreno, 413 U.S. 528, 534 (1973); Romer v. Evans, 517 U.S. 620, 632-633 (1996); Nordlinger v. Hahn, 505 U.S. 1, 11-12 (1992).

In a 2001 decision concerning whether New York State adequately funded the DOE, Justice Leland DeGrasse, New York State Supreme Court, noted that

> New York City's public school system is the largest school district in the United States, comprised of approximately 1,100 schools serving a student population of 1.1 million. In the 1999-2000 school year New York City's public schools employed over 135,000 people, including approximately 78,000 teachers, 19,000 teachers' aides, and 13,000 other administrators and pedagogical employees.

See Campaign for Fiscal Equity, Inc. v. New York, 187 Misc.2d 1, 19, 719 N.Y.S.2d 475, 488 (Sup. Ct., N.Y. Co. 2001). Since then, DOE has maintained its distinction as the nation's largest

school district, with 1.1 million students, 80,000 teachers, over 1,600 schools, and an annual budget of $21 billion.[3]  Accordingly, the State's interest in the DOE, the largest school system in the country, having different procedures for its operations, including for the initiation of disciplinary charges and management of disciplinary hearings, plainly serves as a rational basis for the Legislature's enactment and amendment of legislation, specifically concerning the DOE, that differs from the procedural mechanisms applicable to other, much smaller, less complex, State school districts.

Thus, plaintiffs' equal protection claim should be dismissed.[4]

## C.  Plaintiffs' First Amendment Claim

Plaintiffs contend in entirely conclusory terms that their rights to free speech have been infringed, alternately portraying the violation occurring solely by virtue of being placed in the reassignment center, or alleging that such placement constituted retaliation for plaintiffs' exercise of their free speech rights.  No matter how the allegations are construed, plaintiffs fail to state a cause of action and their First Amendment claims should be dismissed.

To establish a prima facie case of First Amendment retaliation, plaintiffs "must demonstrate that (1) [their] speech addressed a matter of public concern, (2) [they] suffered an

---

[3]  Defendants respectfully request that the Court take judicial notice of this data, which is publically available on the DOE's website at http://schools.nyc.gov/AboutUs/default.htm.

[4]  Plaintiffs allege as well that the 10-day statute of limitations, set forth in Education Law § 3020-a, for challenging an adverse § 3020-a determination in State Court, is highly prejudicial to teachers, denies due process, and "may" be an equal protection violation.  See Complaint, ¶ "69." There is no merit to these assertions.  First, this time restriction equally applies to the DOE, should it challenge a § 3020-a determination.  Second, the time limit for commencing post-deprivation review does not implicate, as discussed, the due process protections of notice and opportunity to be heard, provided to plaintiffs in their pre-deprivation, § 3020-a hearings.  Third, that the State Legislature has imposed a shorter limitations period for such post-deprivation review, where the parties have had the prior benefit of a full evidentiary hearing, with counsel, evidence, and cross-examination, encourages finality, plainly providing a rational basis for such legislation and for any distinctions plaintiffs attempt to draw.

adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that [their] speech was a motivating factor in the determination." Cobb v Pozzi, 363 F.3d 89, 102 (2d Cir. 2003). Further, plaintiffs must "initially . . . show that [their] conduct was protected by the first amendment . . . and that defendants' conduct was motivated by or substantially caused by [their] exercise of free speech." See Bernheim, 79 F.3d at 324 (internal citations omitted). Plaintiffs plainly fail this threshold test, as their complaint is wholly devoid of any specific allegation setting forth the protected speech in which any plaintiff allegedly engaged.

Lacking any detailed example, plaintiffs suggest generally that the reassignment centers have "been used as a means to interfere with Plaintiffs (sic) 1st Amendment Rights or [to] chill their protected speech." See Complaint, ¶ "20(k)." Later, plaintiffs contend, in no less broad and unspecified terms, that "the punitive and wrongful actions of Defendants were undertaken, at times, because of the Plaintiffs' and other Class members exercise of their 1st Amendment right to oppose defendants' illegal acts of creating false reports and covering up other wrongdoing in their school, all in violation of the U.S. Constitution." Id. at ¶ "81."

Plaintiffs fail to identify the protected speech in which they allegedly engaged, alleging only the supposed assertion of their First Amendment rights in response to perceived "wrongdoing" in the school system, including the purported "illegal acts of creating false reports." Even generously construing that allegation, which fails to identify any words whatsoever, to constitute speech, it is not constitutionally protected in nature, because any such speech was made pursuant to plaintiffs' duties as teachers. See, e.g. Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1204 (10th Cir. 2007) (finding, inter alia, that the speech of the plaintiffs, who were teachers at the defendant school, which related to the

regulation of student behavior, the curriculum and pedagogy, and to the need for certain materials, were made pursuant to their official duties and, thus, could be freely regulated); Williams v. Dallas Indep. School Dist., 480 F.3d 689, 694 (5th Cir. 2007) (per curiam) (finding that the statements made by the plaintiff, the athletic director at the defendant school, in his memoranda focused on his daily operations and, thus, were made in the course of performing his employment and were not protected by the First Amendment); Battle v. Bd. of Regents for Georgia, 468 F.3d 755, 761 (11th Cir. 2006) (finding that the plaintiff's retaliation claim failed because she, in her capacity as an employee in the defendant's Office of Financial Aid and Veterans Affairs, had a clear employment duty to ensure the accuracy and completeness of student files and to report any mismanagement or fraud in the student financial aid files).  Thus, plaintiffs' First Amendment claim plainly fails and should be dismissed.

## POINT II

### CERTAIN PLAINTIFFS' CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL OR RES JUDICATA

Federal courts long have recognized that a final judgment on the merits of an action will preclude relitigation between the same parties on those issues that either "were or could have been raised in that action."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  Application of res judicata is necessary "to promote legal economy and certainty."  Id. at 286.  Indeed, the doctrine underlies the legitimacy of the judicial process.  "[Res judicata] is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination."  Southern Pacific R.R. Co. v. United States, 168 U.S. 1, 49 (1897).  For the defense of res judicata, a party must prove that first, "the previous action involved an adjudication on the merits; [second,] the previous action involved the plaintiffs or those in privity with them; and [third,] the claims asserted in the

- 12 -

subsequent action were, or could have been, raised in the prior action." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000).  To establish collateral estoppel, a party must show an identity of issues in each case and that, in the prior action, the opposing party had a full and fair opportunity to litigate such issues.  See In re Sokol, 113 F.3d 303, 306 (2d Cir. 1997).

One of the six class plaintiffs, Plaintiff David Pakter ("Pakter") commenced a federal action in the United States District Court for the Southern District of New York against the DOE on September 2, 2008.  See Memorandum and Order of the Honorable Deborah A. Batts, filed March 22, 2010, in Pakter v. New York City Dep't of Educ., et al. 08 CV 7673 (DAB)(KNF) ("Pakter I"), annexed to the Leighton Decl. as Exhibit "C."  In Pakter I, Pakter challenged the disciplinary charges brought against him, and further alleged, *inter alia*, (1) retaliation under the First Amendment and 42 U.S.C. § 1983, (2) discrimination and retaliation under the Due Process Clause, the Equal Protection Clause, and 42 U.S.C. § 1983, (3) discrimination and retaliation under the New York City and State Human Rights Laws, and (4) discrimination and retaliation under the New York State Constitution.  See id. at 9-10.  By decision filed March 22, 2010, Pakter I was dismissed with prejudice.  See id.

Pakter's claims here, as set forth in plaintiffs' complaint, either were, or could have been raised in Pakter I, and thus are barred by res judicata.  Indeed, the instant class action was filed less than six months following Pakter's filing of a second amended complaint in Pakter I.  Pakter's claims, including retaliation, were dismissed with prejudice in Pakter I.  Accordingly, his claims here are barred by res judicata.

Additionally, in December, 2008, Plaintiff Josefina Cruz ("Cruz"), commenced a state court action, challenging her termination from the DOE following her § 3020-a hearing.

See Decision and Order of the Honorable Saliann Scarpulla, filed January 7, 2010, in Cruz v. New York City Dep't of Educ., Index No. 117004/08, New York State Supreme Court, New York County ("Cruz I"), annexed to the Leighton Decl. as Exhibit "D."  In Cruz I, among other things, Cruz challenged her § 3020-a hearing, contending that it was "corrupt" and contained procedural defects.  By decision filed January 7, 2010, Cruz I was dismissed with prejudice.

In Cruz I, Cruz challenged her termination, specifically contending that her § 3020-a hearing was improperly held.  Cruz's claims in her instant federal action, as set forth in plaintiffs' complaint, including any claims of retaliation, either were, or could have been raised in Cruz I, and thus are barred by res judicata or collateral estoppel.[5]

## POINT III

### THE AGREEMENT RENDERS PLAINTIFFS' CLAIMS MOOT.

The DOE and the UFT's Agreement, dated April 15, 2010, renders moot substantially many of plaintiffs' claims for relief.  A case must be deemed moot when

> the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. We recognize that, as a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." But jurisdiction, properly acquired, may abate if the case becomes moot because . . . (2)

---

[5] Moreover, Cruz is a plaintiff in Adams v. New York State Educ. Dep't, 08 CV 5996(VM)(AJP), a federal action pending in the United States District Court for the Southern District of New York, that raises almost identical due process and First Amendment claims as set forth in the instant action.  By Decision and Order, filed April 6, 2010, the Honorable Victor Marrero adopted the Report and Recommendation of the Honorable Andrew J. Peck, dismissing plaintiffs' claims, but granted them leave to file a third amended complaint.  See Adams v. New York State Educ. Dep't, No. 08-5996, 2010 U.S. Dist. LEXIS 33794 (S.D.N.Y. Apr. 6, 2010), a copy of which is annexed to the Leighton Decl. as Exhibit "E."  Accordingly, though given leave to file another complaint, Cruz's identical claims in the instant action plainly are barred by res judicata and collateral estoppel and should be dismissed.

> interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

<u>Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979)(citations omitted).

By their Agreement, effective September 1, 2010, DOE will assign all teachers facing disciplinary charges to "(i) a DOE administrative office to do work consistent with the law . . . or (ii) an administrative assignment within his or her school with a program consisting of Professional or Administrative Activities." <u>See</u> Agreement, Exhibit "B," Leighton Decl., at 1.[6] Further, the Agreement requires that, effective September 1, 2010, with limited exceptions, DOE shall prefer disciplinary charges against a teacher within 60 days of reassignment or suspension for a misconduct case, and within 10 days of reassignment for an incompetence case. <u>See id</u>., at 2-3. Moreover, the Agreement sets forth that, within 10-15 days of DOE's receipt of an employee's request for a § 3020-a hearing, a pre-hearing conference shall be held, and that, with extremely limited exceptions, the § 3020-a hearing must be completed within 60 days of the pre-hearing conference, and a decision rendered within 30 days of the final hearing date. <u>See id</u>. at 4-5. The DOE and UFT further agreed that for all employees charged prior to August 31, 2010, their § 3020-a hearing and decision will be completed by December 31, 2010. <u>See id</u>. at 8.

Accordingly, plaintiffs' complaint, which seeks substantially similar relief, such as the removal of teachers from TRCs and assignment to "meaningful, appropriate professional work," (<u>see</u> Complaint, ¶ "59"-"61"), and that the § 3020-a disciplinary process comply with the procedural timeframes set forth in the Education Law, is rendered moot and should be dismissed.

---

[6] The Agreement provides that, in certain sexual or serious financial misconduct cases, teachers will be suspended with pay, and not reassigned.

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court issue an order granting their motion to dismiss, dismissing the complaint in its entirety with prejudice, entering judgment for defendants, and granting defendants costs, fees, and disbursements together with such other and further relief as this Court may deem just and proper.

Dated:       New York, New York
             April 30, 2010

                                    **MICHAEL A. CARDOZO**
                                    Corporation Counsel of the
                                        City of New York
                                    Attorney for Defendants
                                    100 Church Street, Room 2-169
                                    New York, New York 10007-2601
                                    (212) 788-0407
                                    mleighto@law.nyc.gov

              By:    _____
                                    Maxwell D. Leighton
                                    Assistant Corporation Counsel

**KATHLEEN M. COMFREY,**
**MAXWELL D. LEIGHTON**
        *Of Counsel*

- 16 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

MARIE ANNE THOMAS, et al.,

                                    Plaintiffs,

                  -against-

NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,

                                    Defendants.

------------------------------------------------------------------- x

**DECLARATION OF
MAXWELL D. LEIGHTON**

09 CV 5167 (SLT)(RLM)

      **MAXWELL D. LEIGHTON** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

          1.      I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for the defendants in this action.

          2.      On April 30, 2010, I served the foregoing Defendants' Memorandum of Law in Support of Their Motion to Dismiss, upon the attorney for plaintiffs by depositing a copy of the same, enclosed in a first class post paid properly addressed wrapper in a USPS post office/official depository in the Borough of Manhattan, City of New York, directed to:

                      Joy Hochstadt, Esq.
                      300 Central Park West, Suite 2E
                      New York, New York 10024

being the address within the State theretofore designated for that purpose.

Dated:      New York, New York
              April 30, 2010

                                        MAXWELL D. LEIGHTON