UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANNA-MARIA THOMAS, et al.,
                              Plaintiffs,
            -against-
NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,
                              Defendants.

-----------------------------------------------------------x

ATTORNEY'S DECLARATION

09-CV-5167 (SLT)(RLM)

Joy Hochstadt, an officer of this Court, declares pursuant to 28 U.S.C. § 1746 under penalty of perjury that I know the following statements to be true or I have substantial information that they are true and I believe them to be true.

1. Since 2005 my law practice has included teachers for the New York City Department of Education ("DOE"). From 1997 until 2008 I was employed by the DOE. From September 5, 2006 until June 26, 2008 I reported to the Teacher Reassignment Center at 333 7th Avenue, New York, New York 10001.

2. My first litigation filed against the DOE was on May 11, 2007, *pro se*. In order not to violate DR 5-102 which prohibits an attorney from representing clients in an action to which they are a necessary witness, though I declare many facts herein, I declare only facts to which others are equally cognizant and could be called to testify or be deposed, remaining silent about those facts for which, I am the sole or best witness so as not to disclose anything that would conflict with DR 5-102.

3. The information contained herein is derived from my contact with over 100 teachers, including 15 BOE-employee and former employee clients whom I represent in their disputes with the DOE since I left its employ, 5 more though the specific clients of Nicholas Penkovsky, Esq. but for whom to date we have filed joint papers with the co-plaintiffs I represent in the same action, through the numerous telephone calls, faxes and emails which my office receives each week and

through *ad hoc* consultations with teachers who prefer I advise them on an as needed basis rather than to initiate an adversary relationship with the DOE if it can be avoided.

4. I have been a member of the UFT and NYSUT for 13 years and am in receipt of all the Collective Bargaining Agreements and publications distributed to the membership over that time frame.

5. Finally, I have made a point to become familiar with the websites of the DOE, New York State Education Department ("NYSED"), the NYCRR pertaining to and promulgated by NYSED.

6. While for almost all of the §3020-a hearings, both DOE and NYSUT attorneys oppose each other, virtually all the hearings are held at the DOE facilities at 49-51 Chambers Street in the same space and facilities that houses much of Legal Services, and particularly the Teacher Trials Unit headed by Theresa Europe, Esq.

7. Thus, Ms. Europe is a constant presence at the teacher trials, she attends sessions of §3020-a proceedings, especially when procedural problems are looming. She greets the Arbitrators and chats with them. Often times there is ample opportunity for her to do so when one or the other attorneys in a case has requested a brief recess, to prepare a witness to testify or to confer with the client prior to cross-examination of a particular opposing witness.

8. From her remarks to Arbitrators, she has a congenial relationship with the arbitrators, who may have lunch together with her, or may accompany her or one of her legal staff to their offices in order to continue to discussion or to retrieve documents that may have been promised at the hearing session *inter alia*.

9. Exhibit 7 is the declaration of Twana Adams characterizing the *ex parte*, banter and interaction between Europe and an arbitrator.

10. On April 30, 2008 I called the office of Hearing Officer Martin Scheinman at the request of teacher Michael Ebewo, as a courtesy to inform Arbitrator Scheinman that Mr. Ebewo's 3020-a proceeding had been stayed by J.S.C. Walter Tolub, that I would fax him the Order in a few hours (no faxes allowed teachers), in order to save him a trip from Sands Point to Manhattan.

11. As part of the conversation with a seemingly knowledgeable woman who answered the phone I lamented that it should nor have been necessary to obtain court intervention, the arbitrators should know better than to force the teachers to undergo the hearing without counsel representation.

12. The woman said to me, "you should take that up with Teri Europe; would you like to speak to her"?

13. My surprised response was, "why, is she there"?

14. The speaker became very flustered as if she had said something she should not have and sort of stuttered that she meant she would "patch me through."

15. The coziness was very troubling to me.

16. My knowledge of the teachers who have not had charges filed against them are from personal observations of teachers who were assigned to 333 Seventh Avenue between September 2006 and June 2008, from those who have consulted with me to advise them and from a telephone conversation with Alan Rosenfeld at the time he was considering his options concerning the notoriety he was getting in the press based on untrue characterizations.

17. Since there were at least eight reassignment centers (two each in Brooklyn, Queens and Manhattan, and one each in Bronx and Richmond Counties) at the lowest, and as many as 13 during the 2006-2007 school years, according to Klaus Bornemann, UFT Special Representative who visited each to work with the teachers, provide information as to their rights, arrange outside counsel

where any teacher was threatened with criminal referral based on allegations made by the DOE, file grievance in the teachers behalf, *inter alia*.

18. Dr. Olga Batyreva is the teacher who reported her supervisor to the Special Commissioner of Investigation ("SCI") and to the Board of Regents for irregularities in the instructions on how to grade the Regents. She also complained of being rejected from the moment that she arrived at Murry Bergtraum High School on a hardship transfer.[1]

19. However, it is statistically extremely significant that all teachers who transfer or return from leaves are particularly vulnerable to suffer discrimination now that Principals have come to expect that they may select new faculty and not have anyone placed within their school that they did not select. It is often difficult to discern when a teacher is placed in a school how much of the Principal's animus is due to race, age, disability, national origin or just projected/transferred anger against the central office for placing someone in the school the Principal did not pick and would not have picked for the unlawful reasons that they do not realize are unlawful.

20. Batyreva was send to the TRC after three "U" that were personal "not business" since her students always did better on grades, tests and Regents, than any other Math teacher and that is all that should count. She desperately wanted to introduce student grades in to the 3020-a and somehow her Arbitrator Jack Tillem did not insist either when she was *pro se* or when she was reassigned an attorney.

21. That is another weakness of the failure to conduct the arbitration under the AAA. A discovery issue would be solved or it would go to Court.

---

[1] Teachers who can demonstrate that their stop to stop commute by public transportation within the city limits is greater than 90 minutes are eligible to transfer to a vacancy to a school that is less than a 90 minute commute.

4

22. Nicholas Penkovsky encountered a difficulty in representing Michael Ebewo at his 3020-a hearings before Howard Edelman. Certain documents were demanded for discovery from the DOE. Edelman ordered them to be turned over. DOE refused to turn them over. Edelman has done nothing to compel DOE to turn over the documents. Edelman should dismiss the specifications that the document at issue. But the arbitrators do not do anything adverse to the DOE; and the longer they have served on the permanent panel.

23. I have seen in the transcript of Jennifer Saunders 3020-a that her Hearing Officer Eric Lawson cut off cross-examination of her Principal as he began to testify to matters against interest.

24. In another case the teacher who should have been given the Advanced Placement Class ("AP") based on her experience and background was assigned all special ed classes and accused of not adequately maintaining discipline. It was contrary to NYCRR to have assigned such a class to some one not licensed in special ed. The teacher certainly should never have been observed in said classes. But these were the only classes in which the teacher was observed. Her counsel submitted the regulations and argued that it should as a minimum be considered a mitigating factor; it was not–Nancy Ryan, DOE counsel in the case argued it should be given no weight as it should have be grieved – it was -- but the Principal said it was too late in the term and the UFT rep said it would not win and discouraged grieving it. So Glanstein followed what the DOE wanted her to do and fired the teacher.

25. It is this type of Arbitrator siding with the DOE, that could never occur if the AAA were overseeing the hearings.

26. Likewise the hearings should alternate between being held at 49-51 Chambers Street and 52 Broadway, just as the World Series alternates between the teams' respective home turfs. I have

never seen Claude Hersh work the hearings or even appear at his adversaries premises the way I have seen Theresa Europe "work" the hearing rooms and chat up the Arbitrators.

27. Exhibit 3 (p. 4 final two paragraphs) demonstrate that the so-called "co-sponsorship" by the UFT of the change in §3020 to have the CBA supercede §3020-a was coerced because DOE made not only agreeing to this change but demanding it be without a vote of the membership, and that it is a condition precedent to the taking up of class size and grievance issues.

28. The changes that followed in the CBA was the permanent panel of arbitrators would replace *ad hoc* selection of arbitrators who would be more independent than ones who depended on the teacher arbitrations for a significant portion of their income, were housed with Theresa Europe and charmed by her on a daily basis. See Exhibits 4 and 5.

29. The rotational (only because the appointments are renewed each year) or permanent panel of a limited number of hearing officers who are routinely used on a regular basis has led to the non-compliant delays (see Exhibit 8 typical letter to each arbitrator admonishing them to the importance of the timelines which they have totally ignored when working 2-5 days per month). As a result teacher wait years for a hearing, confined in prison like detention (see Exhibit 2) with Warden-like supervisors who direct their every move, but they otherwise have nothing to do. This is in violation of Chancellor's Regulation C-770. See Exhibit 6.

30. Though reported to me from many reliable sources that Defendant Judith Rivera was fired, in order to ascertain for myself my office called her previous number and learned that she would be reassigned to some staff position and was no longer Deputy Director of Human Resources. This exemplifies the corruption in the DOE. Teachers who have done nothing wrong lose their jobs through pretextual reasons while high level administrators with serious wrongdoing to account for,

are merely given new titles and peripheral project assignments but remain at work with their reputations as well as their high salaries.

31. Exhibit 1 is the agreement cited in the April 15, 2010 agreement as also being aimed at reforming the disciplinary process. It was never complied with to any extent which concerned me about the 2010 agreement. Then I read the 2010 agreement. The entire last 13-14 pages of the memorandum of law is devoted to analysis of the 2010 agreement. It is impossible to achieve the foal it says it will achieve. Unfortunately, it is unworkable for the reasons sets forth in those pages.

32. Finally, it is important to learn whether the Arbitrators edit the transcripts prior to their being distributed to teacher or NYSUT counsel. Each and every teacher who has gone through 3020-a hearing has reported that significant substantive changes in the testimony from their most specific recollections. In each case, it is some or several attestations favorable to the teacher or against the DOE that is missing from the transcript. The regularity with which this is found and reported is a policy rather than a rare Arbitrator or a transcriber overstepping their bounds. It is the final element of an unfortunately corrupted, sham system that must return to external oversight by the AAA to regain credibility for being anything but a rogue system. It is imperative that NYC teachers once again have all the protections of 3020-a as written and that the clause of 3020 that allows the CBA to supercede 3020-a and 2590 j. 7 must be struck down as well and be replaced by an arm's length panels of informed citizens including those with appropriate expertise in K-12 education.

June 28, 2010

                                                       Joy Hochstadt

DECLARATION UNDER 28 USC § 1746

I declare, verify, certify and state that the facts and statements contained herein are true and accurate to the best of my knowledge, information and belief and are based on testimony from certain Defendant NYC DOE employees, other DOE employees and former employees, as well as documents I received from Defendant NYC DOE employees.

Dated: June 28, 2010
New York, New York

/s/
_____
JOY HOCHSTADT