ORIGINAL

UNITED STATES DISTRICT COURT
~~SOUTHERN~~ DISTRICT OF NEW YORK
*East*

_____ /

MARIE ANNE THOMAS, et al.,

                             Plaintiffs,

     -against-

NEW YORK CITY
DEPARTMENT OF EDUCTION, et al

                 Defendants

_____ /

09-cv-5167(SLT)(RLM)

RECEIVED
DEC 3 0 2010
PRO SE OFFICE

        Josefina Cruz, *Plaintiff pro se,* hereby declares and says,

**INTRODUCTION**

1. I am one of the named plaintiffs in this case and I am acting *pro se.*

2. I make this Declaration in support of my Motion for Permission to File a Sur-Reply to point out what Plaintiff *Pro Se* Cruz submits are errors or misrepresentations of law or fact related to statements made by Defendants' in their Reply Memorandum of Law in Further Support of Their Motion to Dismiss, dated July 27, 2010 (Doc. # 62) (in particular related to NYS Educ. Law §§ 2590, 3020(4) and 3020-a; the Collective Bargaining Agreement; the July 2008 and April 15, 2010 "Agreements" between Defendants and Plaintiff *Pro Se*'s Union; the disciplinary hearings to which Plaintiff *Pro Se* was subjected; "discipline imposed" prior to conclusion of hearings and forced confinement of Plaintiff *Pro Se* while disciplinary hearings were dragged out; and other violations of the rights of Plaintiff *Pro Se*) and for other relief..

3. I respectfully submit that the unsubstantiated statements made by Defendants' counsel purporting to offer facts and setting forth certain "agreements" between Defendant and my union and which "agreements" affected my due process and contractual rights, is an improper attempt to introduce facts and evidence that are simply not true in the hopes of defeating the claim before there can be a hearing / trial on the merits, especially as they

1

not to this Court (See Memo at p. 9).

## ADDITIONAL FACTS

8.  Whatever Defense counsel's issues are with my former lawyer, I respectfully submit that neither I nor any of the other named or unnamed plaintiffs should be prejudiced by what appears to be an ongoing feud between them.

9.  Furthermore, it is disingenuous at best and hypocritical at worst for Defense counsel to on the one hand attempt to exclude evidence submitted by my former counsel Dr. Hochstadt who he claims is a "witness" or who he claims is not competent to offer evidence in support of my claims and on the other hand for Defense counsel to attempt to introduce evidence and provide interpretation and explanations of the April 15, 2010 Agreement, the July 2008 Agreement, explanations of the spirit and intent of NYS Educ. Law §§ 2590, 3020 (4) and 3020-a, explanations of the Chancellor's alleged authority to confine me to a Rubber Room and the efforts Defendant DOE allegedly went to comply with the NYS Educ. Law and my contract.

10. Defense counsel is misleading this Court about the law and the facts related to my claims and to the claims of certain other plaintiffs, for whom I trust that Dr. Hochstadt or other counsel will seek to speak.

11. I can state the following facts which I believe the Court should consider by way of a Sur-Reply and with which to deny Defendants' Motion to Dismiss and grant the relief I have sought, which I can further justify at the requested hearing should the Court grant us one.

12. Contrary to Defense counsel's assertions, Subdivision 7 of Education Law §2590-j (through which the Chancellor exercised control over the disciplinary process) was challenged in court in *Hall v. Ambach* (3 Dept. 1975) 50 A.D.2d 1015, 377 N.Y.S.2d 301, and was ruled unconstitutional.

13. Since 2006, Defendant has used certain Chancellor's regulations, including ones that Defendants rely upon in their Reply Brief, and which were deemed unconstitutional, to allow community superintendents to file charges against teachers, which was specifically deemed to be a constitutional violation of *Hall v. Ambach*.

14. However, the conduct that was declared unconstitutional has continued and it is what in part led to some of my damages.

15. NYS Legislature enactment of subdivision (38-a) of the August 13, 2006 amendments to Education Law §2590-h into law also violated the 1975 Supreme Court *Hall v. Ambach* ruling. And, when Defense counsel refers to the law, he continues to refer to the "old law" not the law that applies to me and other teachers.

16. Defendants' justification for why it continues to allow the superintendent to initiate disciplinary charges against me, is to state that Article 21G of the Collective Bargaining Agreement ("CBA") which is incorporated as subdivision (7) of Education Law §2590-j, permits the disparate treatment of NYC school teachers because there is a legitimate interest in the efficient running of schools in NYC. However I submit that is a matter to be determined by this Court and a fact finder after considering all the evidence at a trial. Only then can and should the Court be in a position to determine whether or not I was discriminated against, whether or not I was denied equal protection under the law, whether or not the sweeping powers given to the Chancellor and in turn to the superintendents to initiate discipline against me, was constitutional or not.

17. The evidence will show that the practice of allowing my superintendent to initiate discipline against me deprived me of my due process rights and my

rights to the same protection afforded to all other teachers licensed in NYS. Further, I submit the evidence will show that this practice allowed the Chancellor and Superintendents to "remove" and discipline teachers, not for legitimate violations and not based on due process, but because they did not like the color of my skin, or because they did not like my ethnic background, or because they did not like the fact that as a tenured teacher I had attained a certain status and position after decades of dedicating myself to NYC public school children, or because they did not like the fact that I demanded certain accommodations because of my disability or because they did not like my

not "reassigned to administrative duties" but was detained and confined to a Rubber Room, while I was being 'investigated" by the DOE.

21. The evidence will show that the modified procedures to which the Defendant refers actually proves my claim that I was deprived of my rights when I was forced to sit in the rubber room for over two years before the disciplinary hearing started, which delay was not of my doing and was an admitted violation of the time requirements of NYS Educ. Law §3020-a.

22. The evidence will show that former Chancellor Klein's public statements defending the use and legality of rubber rooms in which he stated: *"I have complained publicly about how long this process drags out. But our first concern will always be and, as a former lawyer and somebody who clerked on the United States Supreme Court I will tell you, there is no violation of due process whatsoever."* were untruthful.

23. I submit that I should be permitted to challenge Defense counsel bold – and inaccurate - statements of fact in which he claims that I "cannot establish any basis for concluding that the enactment of that legislation (the legislation through which my due process and equal protection rights have been stripped from me as a NYC public school teacher while they remain intact for all other NYS public school teachers) is not rationally related to a legitimate state interest.".

24. I submit that the failure of the April 15, 2010 Letter of Agreement to refer to subdivision (7) (b) of Education Law §2590-j that was incorporated into the CBA as binding alternative disciplinary procedures (Article 21G) to replace the entitlements set forth in Education Law §2030-a, nor to other actions attributable to the chancellor that have both prejudiced the rights of teachers

charged under Education Law §3020-a and denied them a fair and impartial tribunal, is further evidence of my claims for violations of my due process, equal protection and contract rights.

25. I submit that as relates to NYS Education Law §2590-j (powers of the chancellor), the April 15, 2010 Letter of Agreement further confirms that my rights were violated because I was not afforded the opportunity to have the issues between me and Defendant DOE submitted to mediation, I was not offered a "mutually acceptable" resolution, without a decision on the merits of the charges made against me, that my rights were violated because Subdivision [3][b][i] was not followed (the "hearing officer shall not be eligible to serve as such ... if he or she is then serving as a mediator or fact finder in the same school district").

26. I submit that the evidence will also prove that there are at this moment two different versions of NYS Education Law §§ 3020 and 3020-a in the websites maintained by the NYS Legislature and NYSED, and Defendant simply picks and chooses which particular versions of the two laws it wants to apply depending on the circumstances or each case.

27. I submit that the evidence, including admissions made in the April 15, 2010 Letter of Agreement, will show that my confinement in rubber rooms is not authorized by statute and that it violates the rights I was supposed to be afforded when I was compelled to participate in compulsory arbitration. See *Matter of Bernstein (Norwich City School Dist. Board of Educ.*, 282 A.D.2d 70, 73 (3ʳᵈ Dep't 2001), *leave to appeal denied*, 96 N.Y.2d 937; see also *Matter of Carrol Pirkle*, 296 A.D.2d 755, 756 (3d Dep't 2002).

28. I submit that the evidence, including admissions made in the April 15, 2010 Letter of Agreement, will also show that disciplinary process that Defendant imposed upon me did

not meet the standards recommended by the Third Department. *Matter of Hegarty (Board of Educ. of City of New York)*, ___A.D.3d___, 2004 N.Y. App. Div. LEXIS 3555 (2d Dep't 2004); See also *Matter of Board of Educ. of Great Neck UFSD (Brandman)*, 286 A.D. 2d 735 (2d Dep't 201); *Matter of Fischer (Smithtown CSD)*, 262 A.D.2d 560 (1999); *Matter of Elmore v. Plainview-Old Bethpage Central School Dist. Board of Educ.*, 273 A.D.2d 307 (2d Dep't 2000), *Austin v. Board of Educ. of the City School Dist. Of the City of New York*, 280 A.D.2d 365 (1st Dep't 2001).

29. I submit that the evidence will also show that Defendants' implementation of NYS Education Law perverted the powers and authority that were intended to be given to it by the NYS Legislature and that they have used these powers to violate my rights, promote their own little fiefdom through which I was retaliated against, discriminated against and my due process and equal protection rights were violated.

30. As noted trial attorney Norman Siegel recently stated *"In our Constitutional democracy, when government officials do not adhere to the rule of law, it is important for the judiciary to uphold the rule of law"*.

## CONCLUSION

31. In view of the foregoing, I pray that the Court grant the relief requested in my Motion.

32. The foregoing statements made by me are true and accurate to the best of my knowledge information and belief, and I make these statements under penalty of perjury and in accordance with 28 USC § 1746.

Dated:  New York, NY
         December 30, 2010                                    Josefina Cruz, Plaintiff Pro Se

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____/

MARIE ANNE THOMAS, et al.,
                              Plaintiffs,
       -against-

NEW YORK CITY
DEPARTMENT OF EDUCTION, et al

                    Defendants
_____/

2010 DEC -9  PM 10: 28

09-cv-5167(SLT)(RLM)

Josefina Cruz, Plaintiff *pro se,* hereby declares and says,

## INTRODUCTION

1. I am one of the named plaintiffs in this case and I am acting pro se.

2. I make this Declaration as a supplement to my November 15, 2010 Declaration in support of the request for reconsideration of Your Honor's Memorandum & Order dated September 14, 2010 (D.E. # 63) and in support of my / plaintiff's request for limited discovery.

3. Although my Declaration was served upon Defendants, I have received no opposition nor any response to the facts as contained in my Declaration or the relief sought.

4. The only thing that could be considered as opposition or response to my Declaration and relief sought was the November 18, 2010 letter from counsel for the DOE in which he provided a copy of the November 18, 2010 Order from the Hon. Victor Marrero USDJ, in the case entitled *Adams et al v New York Department of Education et al 08-cv-5996 (VM)(AJP).*[1]

## ADDITIONAL FACTS

5. I am submitting this supplemental Declaration to provide the Court with additional evidence of the duplicitous allegations made by Defendant and its counsel in their

---

[1] The Court should note that this decision is being appealed and is not final.

1

attempt to have this complaint dismissed without discovery and based upon those allegations I respectfully pray the Court grant the discovery sought, as I believe it will show without a doubt that Defendants have knowingly or negligently violated our due process rights and have engaged in a conscious effort to defraud us and conceal the evidence of their wrongdoings.

6. As to Defendants' assertion that our due process rights were not violated and that there is no "cause of action" for violation of due process, the allegation is not only false but it borders on the making of a knowingly false statement to the Court.

7. That statement is not based on a Declaration from a Defendant or Defendant representative or any person with knowledge.

8. Instead it is from Defendants counsel Maxwell D. Leighton Esq.

9. Defendants counsel states categorically that:

> "[T]he procedures outlined by §3020-a of the Education Law, *when followed,* are more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment." Defendants' Memorandum of Law in Support of Motion to Dismiss (Doc. # 58, filed 7/27/10) (emphasis added).

10. At the time, Defendants counsel, on Defendants' behalf, made that statement, they absolutely knew that the procedures outlined by NYS Educ. Law § 3020-a were NOT being followed.

11. The proof of this lies in (i) the April 15, 2010 Agreement between the Defendant and my Union and (ii) the admission by Defendant Chancellor Joel Klein (now retired) as published in a February 15, 2010 publication in THE NEW YORK POST. *See Exhibit # 1.*

12. The April 15, 2010 Agreement and the February 15, 2010 published

2

interview by former Chancellor Klein contain specific statements
where Defendants confirm that they have NOT followed the
procedures as required by NYS Education Law § 3020-a, and as a
result they needed to make changes.

13. In addition to this problem, the evidence now shows that Defendants
were not even following the correct procedures outlined by NYS
Educ. Law §3020-a in existence at the time of our charges.

14. According to James D. Folts (History of the University of the State of New
York and the State Education Department 1784-1996), the NYS
Education Law has been amended more often than any other title in
the Consolidated Laws but have been re-codified only three times in
the past century (1892-94, 1909-10, 1947). After the many
amendments enacted since mayoral control of NYC public schools in
2002, 2004, 2006, 2009 and 2010, coercing the UFT to provide
bilateral support (unauthorized by the members of the bargaining
unit) for NYS Assembly and Senate bills, so there would be no
debate or legislative consideration, perhaps it is time for a fourth re-
codification of the Education Law to ascertain what procedures of
the statute are constitutional.

15. So what procedures of which Education Law did Defendant or its counsel
Leighton suggest were being followed to insure that our due process rights
were not violated ?

16. As relates to my claims, the facts are irrefutable.

    a.  Defendants did not comply with the provisions of NYS Educ. Law §

3

3020-a as it existed at the time I was charged !

b. Defendants did not comply with the timing provisions as required by NYS Educ. Law § 3020 – a and my hearing was convened without jurisdiction !

c. The panel of arbitrators from which my arbitrator was selected were not properly constituted and did not conform to our due process requirements of having fair, unbiased hearing officers who would conduct the hearings according to the law !

d. Defendants and the hearing officer deprived me of my due process rights by forcing me to go through a disciplinary hearing after they had or allowed me to be stripped of my counsel !

e. Defendants forced me to be confined in a "rubber room" that they knew violated my rights and was not authorized under NYS Educ. Law § 3020 – a as an acceptable discipline, pending the outcome of the disciplinary hearing !

f. Defendants have deceived, misled or even lied to this Court in an effort to conceal the facts that they know to exist – to wit: their knowingly and continuing violation of NYS Educ. Law § 3020-a !

17. And, the facts are that what was done to me (and other teachers) was part of a plan (conceived and implemented) by Defendant (former) Chancellor Klein to remove us from the classroom, strip us of our teaching positions, humiliate us and confine us in "detention centers" where we waited for years at a time just because he felt that "no parent would want us near their children". *See Exhibit*

4

*1, February 15, 2010 Editorial Written by Joel Klein in NY Post.* [2]

18. I respectfully submit and pray that the Court give me and any other petitioning plaintiffs

an opportunity to conduct limited discovery through which we can show the Court that

the statement made by Defendant, through its counsel Mr. Leighton, that the procedures

of NYS Educ. Law § 3020 –a "were followed" was in fact a false and misleading

statement that was intended to deceive the Court and to further deprive me / us of the

rights we were supposed to have under NYS Educ. Law § 3020 –a, and other NYS and

Federal Constitutional protections, as well as under our Collective Bargaining

Agreement.

## CONCLUSION

19. I respectfully pray the Court reconsider and grant permission to serve limited discovery

of (i) 20 Interrogatories, (ii) 20 Requests for Production of Documents and (iii) 20

Requests for Admissions,.

20. The foregoing statements made by me are true and accurate to the best of my knowledge

information and belief, and I make these statements under penalty of perjury and in

accordance with 28 USC § 1746 and a copy of this Declaration is being served on

Defendant DOE, my former attorney Ms. Hochstadt and all other Plaintiffs pro se.

Dated:  New York, NY
         December 9, 2010

                                           Josefina Cruz, Plaintiff Pro Se

---

[2] Based on the February 15, 2010 statements by former Chancellor Defendant Joel Klein, I respectfully submit that I have additional causes of action that can be pleaded in this case (for which I seek permission to file an Amended Complaint) or in other separate actions, perhaps even in NYS Court.

**EXHIBIT 1**



Updated: Mon., Feb. 15, 2010, 8:51 AM

# Get incompetent teachers off the payroll

By JOEL KLEIN

Last Updated: 8:51 AM, February 15, 2010
Posted: 4:12 AM, February 14, 2010

The most important factor in a child's education is the quality of his or her teachers. That's why we are working so hard to ensure only our best educators are in front of the classroom.

But it is just as important that in the relatively few cases where teachers are found to be incompetent -- or worse -- we get them out of classrooms, and off the city's payroll, as soon as possible.

Last year, the city spent approximately $30 million on the salaries of teachers who sat in reassignment centers doing nothing. We could save those millions by taking the following steps:

**Remove employees from payroll while their cases proceed.** When teachers are formally charged with misconduct or incompetence and there is probable cause to believe they are guilty, they should be taken off payroll pending the outcome of the charges. Exonerated teachers would receive back pay plus interest.

**Adhere to prompt timelines for disciplinary action.** State law and the teachers contract require hearings to take no more than 60 days to complete, but that deadline is never enforced and rarely met. We should mandate that hearings take place within 30 days after charges are filed, that they last no more than five days, and that arbitrators issue decisions within 24 hours.

**Let full-time judges decide cases.** We could greatly speed up the hearing process if teachers went before administrative-law judges. The arbitrators who currently oversee teacher cases hold hearings just five times a month, while administrative-law judges hear cases every business day.

No one starting from scratch would set up such a dysfunctional disciplinary system. The only people this system serves well are teachers no parent would willingly allow to educate their kids.

*Joel Klein is chancellor of the New York City Department of Education.*

NEW YORK POST is a registered trademark of NYP Holdings, Inc.
NYPOST.COM, NYPOSTONLINE.COM, and NEWYORKPOST.COM are trademarks of NYP Holdings, Inc.
Copyright 2010 NYP Holdings, Inc. All rights reserved. Privacy | Terms of Use

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ /

MARIE ANNE THOMAS, et al.,                           09-cv-5167(SLT)(RLM)
                              Plaintiffs.

        -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,                                   DECLARATION OF
                              Defendants             JOSEFINA CRUZ,
_____ /           *Plaintiff Pro Se*

        Josefina Cruz, *Plaintiff pro se*, hereby declares and says,

## INTRODUCTION

1. I am one of the named plaintiffs in this case and I am now acting *pro se*.

2. First I would again like to thank Your Honor for the Court's indulgence and
   considerations during the last month, as the other *pro se* plaintiffs and I try to move this
   case forward.

3. I apologize in advance for the fact that I am not as eloquent or as skilled as a lawyer. I
   am a former NYC school teacher, and in that regard I will doing my best to try to focus
   my thoughts and the points I wish to make in this Declaration so as to address the issues
   that Your Honor allowed me to address in the Order dated October 22, 2010 (DE. # 68).

4. This Declaration is submitted more as a request for reconsideration rather than an
   objection to the Court's Memorandum & Order dated September 14, 2010 (D.E. # 63). I
   believe that given the default by my former counsel, Your Honor had nothing before her
   upon which to understand the potential reasons why a Stay of Discovery is not
   appropriate in this case. It is my hope that the facts and arguments made here will help
   Your Honor realize that discovery should not be stayed.

1

5. I am submitting this Declaration detailing the points that I believe are relevant to my claims, and the reasons why I believe the Court should reconsider and grant limited discovery as relates to my  and my fellow plaintiffs' claims.

6. In fact, I believe that many of the factual issues related to my claims and for which I seek limited discovery will also assist other plaintiffs in this case, including those acting on their own and those still represented by Attorney Joy Hochstadt.

7. I am informed that one or more of my fellow plaintiffs will be submitting their own declarations and requests.  However, I was concerned that if I was to wait to attempt to assemble and submit the declarations and requests together, it might delay this submission, which I did not want to delay.

8. Although I am not an attorney, I am able to do some basic research via the internet, and prior to the filing of this Declaration, I searched for and found some precedent or general principles that I believe are relevant to this case in another case before Your Honor entitled *Tropp v Conair et al 08-cv-4446 (ENV)(RLM)*.

9. The Motion to Stay discovery in the Tropp case was submitted at about the same time as the Motion to Stay was presented here.  In the Tropp case, I note that in support of their Motion to Stay, the Defendants in the Tropp case said that discovery should be stayed pending the disposition of their Motion to Dismiss a complaint that they considered without merit and which they said did not state a valid cause of action.

10. I believe the rationale in the Tropp case, as related purely to the issue of whether or not to stay discovery pending the Motion to Dismiss, is relevant here.   Defendant DOE also says that discovery should be stayed pending the Court's decision on its Motion to Dismiss.

2

11. Unfortunately, my former attorney Ms. Hochstadt did not respond to the Defendants'
Letter Motion to Stay, and Your Honor granted the motion to stay.  However, I believe
that Your Honor's thoughts as expressed in the June 15, 2010 Memorandum and Order in
The Tropp case apply to my and other plaintiffs claims here.

12. In Tropp Your Honor explained:

> . . . . "the power to stay proceedings is incidental to the power
> inherent in every court to control the disposition of the causes on its
> docket with economy of time and effort for itself, for counsel, and for
> litigants." 10/30/09 Order at 3 (quoting Landis v. N. Am. Co., 299 U.S.
> 248, 254 (1936)). This power has been codified in Rule 26(c) of the
> Federal Rules of Civil Procedure, pursuant to which "a court has
> discretion to stay discovery 'for good cause shown.'" Spencer Trask
> Software & Info. Servs, LLC v. RPost Int'l Ltd., 206 F.R.D. 367, 368
> (S.D.N.Y. 2002).
>
> Significantly, the party seeking the stay bears the burden of showing
> good cause. See Fantastic Graphics, Inc. v. Hutchinson, No. 09-CV-2514
> (LDW)(ETB), 2010 WL 475309, at *3 (E.D.N.Y. Feb. 8, 2010); Freund v.
> Weinstein, No. CV-2008-1469 FB MDG, 2009 WL 2045530, at *1
> (E.D.N.Y. July 8, 2009); Weitzner v. Sciton, Inc., No. CV 2006-
> 2533(SLT)(MDG), 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006). The
> pendency of a dispositive motion is not, without more, grounds for an
> automatic stay. See, e.g., Weitzner, 2006 WL 3827422, at *1; Hollins v.
> U.S. Tennis Ass'n, 469 F.Supp.2d 67, 78(E.D.N.Y. 2006).
>
> In addition to taking into account the nature and complexity of the
> particular case, "[c]ourts consider the following factors in determining
> whether a stay is appropriate: (1) whether the defendant has made a
> strong showing that the plaintiff's claim is unmeritorious; (2) the breadth
> of discovery and the burden of responding to it; and (3) the risk of unfair
> prejudice to the party opposing the stay." Rivera v. Incorporated Village

3

*of Farmingdale, No. CV 06-2613(DRH)(ARL), 2007 WL 3047089, at \*1
(E.D.N.Y. Oct. 17, 2007) (citation omitted). Although these factors inform
a court's exercise of discretion, "a case-by-case analysis is required,
since such an inquiry is necessarily fact-specific and depends on the
particular circumstances and posture of each case." Hachette Distrib.,
Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991).
        Having considered the circumstances of this case, as well as the
aforesaid factors, this Court concludes that movants have not met their
burden of establishing good cause for a stay of discovery.*

13. I believe that had my former attorney responded to the Defendants' Letter Motion to Stay
    in the first place or filed opposition papers as Your Honor permitted and then granted
    additional time for the response, we could have explained how in the circumstances of
    this case, a stay of discovery is not appropriate.

14. I further believe that had my former attorney served a focused set of interrogatories and
    requests for production of documents, limited to the causes of action and the defenses
    proferred, the Court would have seen that a stay of discovery is not appropriate as relates
    to the facts of this case.

15. And, I pray that, after the Court considers this explanation, that it will allow me and other
    plaintiffs to serve Interrogatories, Requests for Production of Documents and Requests
    for Admissions that are limited to few issues below, which issues and discovery I believe
    would be important to the Court's consideration of the merits of my claims and the issues
    presented in Defendants' Motion to Dismiss.

16. The discovery I would propose has to do with a few core issues, which are:

a. The June 2008 Agreement that was entered into between Defendants and my Union and which agreement because it was not kept and not implemented – at least as relates to me – caused me damages;

b. The April 2010 Agreement upon which Defendant relies heavily in suggesting that the complaint should be dismissed as "moot" in light of this Agreement. However, as I will show, this Agreement on its face proves that Defendants use of the Rubber Rooms and practice of detaining me and other teachers for years on end in Rubber Rooms was in violation of NYS Education law, and my contract rights;

c. How Defendant's conduct as related to me from 2006 to 2009, was discriminatory, retaliatory and violated my due process and contract rights; and

d. How I should have had and should still be afforded the benefit and protections as set forth in the June 2008 Agreement and the April 2010 Agreement and because I did not have those benefits and protections, my due process and contract rights were violated.

17. I believe I can show this with no more than 20 Interrogatories, no more than 20 Requests for Production of Documents and no more than 20 Requests for Admissions – all of which will be limited to the issues in par. 16 (a) – (d) above. And, for the reasons explained below, I pray the Court the Court reconsider its September 14, 2010 Order and in the interests of justice, permit me to serve this discovery on or before November 30, 2010 so that the Court can have this prior to ruling on Defendants' Motion to Dismiss.

**GENERAL FACTS & REASONS WHY CERTAIN**
**LIMITED DISCOVERY SHOULD BE GRANTED**

18. In their Motion for a Stay, Defendants have suggested that their Motion to Dismiss will almost certainly granted because either my co-plaintiffs and I have not properly pleaded a claim for which relief could be granted, because all of our claims are precluded because of other actions that were pending in other courts or because the April 15, 2010 Agreement between Defendant and my Union made our claims "moot".

19. While our claims may not have been so eloquently pleaded, they included claims for violation of our due process and contract rights, which resulted from the use of the Rubber Rooms and our confinement in the Rubber Rooms for long delays while the disciplinary hearings were supposed to be conducted in accordance within the time and in the manner prescribed by NYS Education Law Art. 3020-a.  If the allegations of the complaint were not perfect, I apologize and pray that the Court give me the opportunity to correct any pleading mistakes attributable to my former lawyer.

20. I submit that the April 15, 2010 Agreement between Defendant and my Union – which was supposed to be made for my benefit and the benefit of all NYC public school teachers – not only supports our claims but opens or should open a door on discovery that will assist the Court in understanding what the Defendants did to me and the other plaintiffs, how they violated the law, how they violated the contract and how they caused us damages for which relief should be granted.

21. I submit that the April 15, 2010 Agreement is evidence that the Defendants knew they were violating our due process rights, knew that they were violating our contract rights, knew that they were violating the provisions of NYS Education Law related to disciplinary hearings and knew that the use of the Rubber Rooms and my and my fellow plaintiffs extended confinement in the Rubber Rooms was unlawful.

a and the collective bargaining agreement to which I am a beneficiary – were NOT adhered to.

25. From my understanding, in simple and straight-forward language, it means that Defendant DOE violated the timing provisions of NYS Education Law 3020-a when it failed to convene my disciplinary hearing in a timely fashion, violated my due process rights by keeping me confined for extended periods of time – up to 2 & ½ years – in a Rubber Room, violated the collective bargaining agreement, violated my contract rights and caused me damages.

26. What are and where are all these "agreements" that are referred to in the 1ˢᵗ paragraph of the April 15, 2010 letter?  They should be produced as they are relevant to my claims and will help the Court understand how our rights were violated and how we have suffered through years of Rubber Room confinement and "*the long delays that have arisen in the current process of investigating alleged acts of misconduct and adjudicating charges pursuant to Education Law § 3020-a* " . . .  that have caused damages to me benefit neither the DOE nor the employees represented by the UFT.

27. What are and where are all the agreements that Defendant DOE says it is "*committed to ensuring . . . so that those delays will be ended and the process outlined in the law, the contracts between the parties and this Agreement will be adhered to.*

28. What are and where are the documents that Defendant DOE has had and has withheld from me related to the period from 2006 to 2008 – during which I was unlawfully confinement in a Rubber Room and during which I endured long delays and violation of my rights under NYS Education Law § 3020-a.  These documents will show that Defendant DOE knew in 2006, 2007, 2008 and 2009 what it knew in April 2010 – to wit:

the confinement in the Rubber Rooms and the delays in the disciplinary hearing process was not in compliance with "*the process outlined in the law*" , *not in compliance with* "*the contracts between the (DOE and my Union)*" and during the time when the Defendant DOE was doing all this to me, it knew that it was doing so at a time and in a manner my due process rights under NYS Education Law § 3020-a and my rights under my contract were not being "*adhered to*" .

29. In other words, (i) Defendant DOE violated my rights and knew they violated my rights, (ii) Defendant DOE violated the timing provisions and other procedural requirements related to the conduct and jurisdiction of disciplinary hearings under NYS Education Law §3020-a and knew they violated the law, and (iii) Defendant DOE violated the protections afforded to me and other teachers by the collective bargaining agreement and knew they violated those protections of my contract.

30. I pray that Your Honor see through this charade and grant me and us limited discovery so that we can provide this evidence to the Court before a ruling on the Motion to Dismiss.

## SPECIFIC FACTS & REASONS WHY CERTAIN LIMITED DISCOVERY SHOULD BE GRANTED

31. The reason I agreed to be part of this lawsuit is because I believe the lawsuit a way of showing how the Rubber Rooms were created and used to harass and discriminate against teachers like me.

32. I never made this claim or any claim related to this claim before in this or any other Court.

33. No other Court has considered this claim.

34. The reason I agreed to be a plaintiff is because I believed that I am example of those teachers who were put into Rubber Rooms at a time when they should not have been in

9

Rubber Rooms. I believe that I am an example of teachers who were kept in Rubber Rooms when they should not have been kept in Rubber Rooms. I believe that I am also an example of teachers who were confined in Rubber Rooms that had serious environmental contaminants that caused me and other people to become sick

35. The facts of my case as they are relevant here are that I was reassigned to Defendant DOE's Rubber Room at 333 Seventh Avenue on June 26, 2006.

36. I was kept in that Rubber Room until December 8, 2008, for 2½ years.

37. In June 2008, Defendant DOE and the UFT entered into an agreement to supposedly fix problems that were being caused by the "long delays" in the disciplinary process and the extended confinement in the Rubber Rooms. This is the agreement that is referred to in the April 15, 2010 Agreement. If Defendant DOE had done what it contracted to do in 2008, I would not have been terminated, and I would still be teaching.

38. In the April 15, 2010 agreement, both Defendant DOE and the UFT acknowledge that Rubber Rooms are and have been used in a way to punish teachers improperly.

39. This is the way they punished me, Josefina Cruz.

40. I should not have been in the Rubber Room in the first place. I was an outstanding teacher with an unblemished record. The only thing I did wrong was to "blow the whistle" on problems that I discovered related to the administration of the annual regents examination.

41. I believe I am a good example of plaintiff teachers who are punished by removal, confinement in Rubber Rooms and are then subjected to "long delays" while waiting for the disciplinary hearings under NYS Education Law § 3020-a.

42. When I spoke out or when my fellow teachers spoke out we are harassed even more.

43. When teachers like me complained that the disciplinary hearings as guaranteed by NYS Education Law §3020-a were not conducted in a timely manner, we were subjected to even more delays and longer confinements.

44. We were forced to stay in the rubber rooms for longer periods of time as the disciplinary hearings dragged out.

45. We were stripped of our lawyers in the disciplinary process because we spoke out.

46. When teachers like me dared to raise what we considered to be due process and other problems with the arbitrators in the disciplinary hearings, including problems such as arbitrator bias, first our hearings were delayed and then they were rushed through and terminated, all contrary to NYS Education Law § 3020-a.

47. When teachers like me dared to challenge Defendant DOE's conduct and the "long delays" in the disciplinary hearing process as not being in compliance with the timing provision of Education Law §3020-a we were told the provisions were just guidelines, not the law and we were then confined even longer in the Rubber Rooms.

48. I am a good example of teachers who have been discriminated and retaliated against and who have been subjected to double standards, to wit: when the DOE had to do something, the time requirements were just "guidelines" and were flexible, but when we teachers had to do something, timing provisions were absolute and inflexible.

49. The duplicitous conduct of Defendant DOE is now proven by the April 15, 2010 letter in which they admit that they did NOT comply with the law, they did NOT comply with the contract and as a result teachers like me suffered.

50. I further believe that I, Josefina Cruz, am the perfect example of a person against whom the Rubber Room was used to deprive me of my due process and equal protection and

11

contract rights. I should have never been in Rubber Room and the April 15, 2010 Letter

Agreement proves that. I was forced to be in a Rubber Room for 840 days longer than I

should have been there due to the "long delay" in my disciplinary hearing.

51. I believe that I am the perfect example of a teacher who should have gotten the benefit

from the June 2008 Agreement but did not.

52. I believe that I am a perfect example of a teacher who should have received the protection

of NYS Education Law § 3020-a but did not.

53. I believe that I am a perfect example of a teacher who, if he/she or they had been given

the benefit of the April 15, 2010 Agreement, I / we would never have been in a Rubber

Rooms in the first place.

54. I believe that if the Court is willing to reconsider and allow me the limited discovery I

have requested, that I can show all this and explain how my claims and the claims of my

fellow plaintiffs do state a valid cause of action and should not be dismissed.

## CONCLUSION

55. I respectfully pray the Court reconsider and grant permission to serve limited discovery

of (i) 20 Interrogatories, (ii) 20 Requests for Production of Documents and (iii) 20

Requests for Admissions, related to four issues outlined in par. 16 (a) – (d) above.

56. The foregoing statements made by me are true and accurate to the best of my knowledge

information and belief, and I make these statements under penalty of perjury and in

accordance with 28 USC § 1746 and a copy of this Declaration is being served on

Defendant DOE, my former attorney Ms. Hochstadt and all other Plaintiffs *pro se*.

Dated: New York, NY
      November 15, 2010

_____
              Josefina Cruz, Plaintiff *Pro Se*

**APRIL 15, 2010 AGREEMENT**

# LETTER OF AGREEMENT

The following is the "letter of agreement" from NYC Department of Education Chancellor Klein to UFT President Michael Mulgrew between the NYC Board of Education and the United Federation of Teachers concerning the processing of disciplinary charges filed against an educator pursuant to §3020-a of the Education Law.

--------------------

April 15, 2010

Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, New York 10004

Dear Mr. Mulgrew:

This letter will confirm the mutual understandings and agreements between the Board of Education of the City School District of the City of New York ("DOE") and the United Federation of Teachers ("UFT"). Nothing in this Agreement shall constitute a waiver or modification of any provision of any collective bargaining agreement, letter (including but not limited to the June 27, 2008 letter from the Chancellor to the President of the UFT) or other agreement between the DOE and the UFT except as specifically set forth herein. Nothing in this agreement shall be construed to convert non-mandatory subjects of bargaining into mandatory subjects of bargaining. As used herein, the term "CBA" shall refer to the collective bargaining agreement covering teachers and corresponding provisions of other UFT-DOE collective bargaining agreements.

The long delays that have arisen in the current process of investigating alleged acts of misconduct and adjudicating charges pursuant to Education Law §3020-a benefit neither the DOE nor the employees represented by the UFT. The DOE and the UFT are committed to ensuring that the agreements reached here will be carried out so that those delays will be ended and the process outlined in the law, the contracts between the parties, and this Agreement will be adhered to.

For purposes of this Agreement, all timelines shall be measured in calendar days, but shall not include the summer break, all recess periods and holidays.

# Reassignment

Misconduct Cases (i.e., any case deemed by the DOE to deal exclusively or primarily with an employee's behavior, not his or her pedagogy): Pending investigation of possible misconduct and completion of the §3020-a hearing, the DOE may reassign an employee only to (i) a DOE administrative office to do work consistent with law (an "Administrative Office Assignment") or (ii) an administrative assignment within his or her school with a program consisting of Professional or Administrative Activities (as listed in CBA Articles 7(A)(6)(a), 7(B)(8)(a), 7(C)(g)(1), or 7(K)(3d)) other than items #1 (small group instruction), #2 (one to one tutoring), #3 (advise student activities such as clubs, teams or publications) and #7 (conflict resolution for students), which shall be scheduled consistent with CBA Article 7(B)(2)(c) regardless of the division in which the employee works ("Administrative School Assignment").

30

Where the Chancellor or his designee determines that it is in the best interests of the school system that an employee accused of sexual misconduct as defined in CBA Article 21(G)(6) or serious financial misconduct involving more than $1,000 not be allowed to work in an Administrative Office Assignment or an Administrative School Assignment pending the outcome of the investigation, the DOE may suspend the employee with pay rather than reassign him/her. The determination of the Chancellor or his designee to suspend an employee with pay shall be in writing. Prior to a suspension from all duties with pay, the Chancellor or his designee shall consult with the UFT President or his designee.

The DOE shall prefer charges pursuant to Education Law §3020-a[1] within 60 days of an employee being reassigned or suspended, except in cases where the reassignment or suspension was caused by (i) an allegation of sexual misconduct as defined in CBA Article 21(G)(6) that is being investigated by the Special Commissioner of Investigation for the New York City School District ("SCI"), (ii) an allegation of serious financial misconduct involving more than $1,000 that is being investigated by SCI, (iii) criminal charges pending against the employee, (iv) an allegation of serious assault that is being investigated by SCI, (v) an allegation of tampering with a witness or evidence, where the allegation of tampering is being investigated by SCI. In cases where the 60 day period does not apply, when SCI issues a report or, in the case of criminal charges, the employee notifies the DOE of the disposition of the criminal case pursuant to Chancellor's Regulation C-105, the DOE shall have 15 days to bring §3020-a charges against the employee or return the employee to his or her prior assignment. Nothing herein shall waive any limitations period for the bringing of charges pursuant to Education Law §3020-a. The Chancellor or his designee and the President of the UFT or his designee shall meet monthly, or less frequently if the UFT and DOE agree, to review the status of these cases. At the end of the first year of this Agreement, and in subsequent years if requested by the UFT, the DOE and the UFT will meet to review the issue of investigations and reassignments extending beyond 60 days and, if there has been a significant increase in the number of such investigations and reassignments, to negotiate ways to address this issue.

Except in those cases where the DOE is not required to prefer charges within 60 days, should the DOE not prefer §3020-a charges within 60 days, the employee shall be returned to his/her prior assignment. If an employee is returned to his/her prior assignment, adverse action shall not be taken against the employee solely because of the reassignment. If §3020-a charges are preferred subsequent to the expiration of the 60 day period, the employee may then again be reassigned to an Administrative Office Assignment or an Administrative School Assignment or, where the Chancellor or his designee determines that it is in the best interests of the school system that an employee accused of sexual misconduct as defined in CBA Article 21(G)(6) or serious financial misconduct involving more than $1,000 not be allowed to work in an Administrative Office Assignment or an Administrative School Assignment pending the outcome of the investigation, suspend the employee with pay rather than reassign him/her pending determination of the §3020-a charges. The determination of the Chancellor or his designee to suspend an employee with pay shall be in writing. Prior to a suspension from all duties with pay, the Chancellor or his designee shall consult with the UFT President or his designee. An employee's assignment pending investigation and/or a hearing shall not be raised at the hearing or deemed relevant in any way to the determination of the charges, any penalty issued or the adjudication of any issue in the hearing.

*Incompetence Cases* (i.e., any case deemed by the DOE to deal exclusively or primarily with an employee's pedagogy) –

Pending the bringing of Education Law §3020-a charges for alleged incompetence and completion of the §3020-a hearing, the DOE may reassign an employee only to an (i) Administrative Office Assignment or (ii) an Administrative School Assignment. The DOE shall prefer charges pursuant to Education Law §3020-a within

---

[1] Probationary employees will be reassigned in the same manner as tenured employees under this Agreement, i.e., to an Administrative Office Assignment, Administrative School Assignment, or suspension with pay (if permitted by this Agreement). This Agreement shall not be construed to create tenure or Education Law §3020-a rights for an employee.

10 days of an employee being reassigned. Should the DOE not prefer §3020-a charges within 10 days, the employee shall be returned to his/her prior assignment. If an employee is returned to his/her prior assignment, adverse action shall not be taken against the employee solely because of the reassignment. If §3020-a charges are preferred subsequent to the expiration of the 10 day period, the employee may then again be reassigned to an Administrative Office Assignment or an Administrative School Assignment pending determination of the §3020-a charges.

*Tolling:* If the DOE gives a reassigned employee 48 hours notice of an interview which may lead to disciplinary action and the reassigned employee either fails to appear on the scheduled day or fails to notify the DOE that s/he is invoking any right he/she may have to not answer questions, the DOE shall reschedule the interview within a reasonable period of time and the time between the originally scheduled interview and the rescheduled interview shall not count towards the applicable 60-day or 10-day limits on the length of time an employee may be reassigned or suspended with pay. Where a principal schedules an interview which may lead to disciplinary action of an employee that has been given an Administrative School Assignment and 48 hours notice is not required by the CBA, Chancellor's regulations, or law, the following shall apply:

If the reassigned employee either fails to appear on the scheduled day or fails to notify the principal that s/he is invoking any right he/she may have to not answer questions, the principal shall reschedule the interview within a reasonable period of time and the time between the first scheduled interview and the rescheduled interview shall not count towards the applicable 60-day or 10-day limits on the length of time an employee may be reassigned. Nothing herein shall constitute a waiver or alteration of any right the DOE may have to compel an employee to attend an interview which may lead to disciplinary action or any right an employee may have to not answer questions.

**Service of Charges**

In order to make the process as efficient as possible, service of notice of the nature of the charges and the actual charges shall be consolidated and served together upon an employee along with specifications and, in incompetence cases, a bill of particulars. Nothing in this Agreement shall alter a Respondent's entitlement, if any, to a bill of particulars in misconduct cases.

**Probable Cause Determinations**

In addition to the enumerated acts set forth in CBA Article 21(G)(5), serious misconduct shall also include actions that would constitute a class A-I or A-II felony or any felony defined as a violent felony offense in NY Penal Law §70.02. An indictment on a class A-I or A-II felony, an indictment on any felony defined as a violent felony offense in NY Penal Law §70.02, or a felony indictment on any other conduct that constitutes serious misconduct pursuant to CBA Article 21(G)(5) shall create a rebuttable presumption of probable cause.

If a finding of probable cause was based on an indictment pursuant to CBA Article 21(G)(5), the employee shall remain off payroll pending the disposition of the criminal case. The DOE shall have 15 days after the employee notifies the DOE of the disposition of the criminal case pursuant to Chancellor's Regulation C-105 to bring Education Law §3020-a charges based on the same conduct as was at issue in the criminal case. If the DOE prefers §3020-a charges on the same conduct as was at issue in the criminal case within the 15 days, and the employee was convicted in the criminal case of any offense that constitutes serious misconduct, he/she shall remain off payroll until a decision in the §3020-a case and such §3020-a case shall be completed within the timeframes for hearings set forth in this Agreement. If the DOE prefers §3020-a charges on the same conduct as was at issue in the criminal case within the 15 days, and the employee was acquitted of all offenses that constitute serious misconduct, the DOE shall reassign the employee to an Administrative Office Assignment or an Administrative School Assignment, suspend the employee with pay (if permitted pursuant to this Agreement) or request a second probable cause hearing to continue the suspension without pay until the final outcome of the §3020-a hearing and such §3020-a case shall be completed within the timeframes for hearings

32

set forth in this Agreement. If the DOE does not bring Education Law §3020-a charges within those 15 days, the employee shall be restored to the payroll effective as of the date the disposition of the criminal case and returned to his/her prior position.

If a finding of probable cause was based on criminal charges pursuant to CBA Article 21(G)(6), the DOE shall have 15 days after the employee notifies the DOE of the disposition of the criminal charge pursuant to Chancellor's Regulation C-105 to bring Education Law §3020-a charges based on the same conduct as was at issue in the criminal charge. If the DOE brings such a §3020-a charge, the employee shall remain off payroll until a decision in the §3020-a case and such §3020-a case shall be completed within the timeframes for hearings set forth in this Agreement. If the DOE does not bring §3020-a charges based on the same conduct as was at issue in the criminal charge within 15 days of the employee notifying the DOE of the disposition of the criminal charge pursuant to Chancellor's Regulation C-105, the employee shall be restored to the payroll effective as of the date the disposition of the criminal charge.

Nothing in this Agreement shall alter the provisions of CBA Article 21(G)(5) and (6) with respect to entitlement to back pay. The DOE agrees to meet on a bimonthly basis with the UFT to assess the status of investigations extending beyond 60 days where the employee has been suspended without pay.

**Timeframe for Hearings**

Within 10 - 15 days of DOE's receipt of the request for a hearing from an employee charged under Education Law §3020-a, a pre-hearing conference shall be held. Both Education Law §3020-a and the collective bargaining agreements require hearings, including closing statements, to be completed within sixty (60) days of the pre-hearing conference and a decision to be rendered within thirty (30) days of the final hearing date. The UFT and DOE agree this timeframe must be adhered to by all parties to the hearings and strictly enforced by hearing officers. Hearing officers shall establish a trial schedule at the pre-hearing conference to ensure that hearings are completed within the required statutory and contractual timeframes and ensure an equitable distribution of days between the DOE and the charged employee. Education Law §3020-a permits "limited extensions" beyond the 60 days where it is determined that "extraordinary circumstances" warrant. "Extraordinary circumstances" shall be construed narrowly by hearing officers so that the granting of "limited extensions" allowing hearings to last beyond sixty (60) days is the exception and not the rule. Pursuant to CBA Article 21, a hearing officer may be removed prior to the end of his or her one-year term only for good and sufficient cause, which may include failure to comply with this Agreement, upon mutual agreement of the UFT and DOE.

If the hearing officer determines that a necessary witness is a former student who is unavailable because he/she is residing outside of New York City or a current student who is unavailable because he/she has left New York City for an extended period of time, this shall constitute an "extraordinary circumstance." In such a case, the hearing officer shall schedule the hearing to begin or continue as soon as possible given the availability of the witness as demonstrated to the hearing officer.

Arbitrators serving on the competence panel must agree to provide seven (7) consecutive hearing dates as defined in CBA Article 21(G)(2)(a)) per month for the months of September through June and two (2) hearing dates for the months of July and August.

# Discovery and Testimony

In order to comply with timelines for hearings, the UFT and DOE agree that hearings must be held in as efficient a manner as possible. Disputes relating to document production, witness lists and other procedural

33

issues often consume hearing time and should be dealt with to the maximum extent possible in the pre-hearing conference. To that end, the UFT and DOE have already agreed in the June 27, 2008 letter from the Chancellor to President of the UFT to certain discovery procedures.

The hearing process itself can be conducted in a more efficient manner that allows for issues to be fully and fairly litigated. To accomplish this, the parties to the hearings shall adhere to the following guidelines:

1. It is the intent of the UFT and DOE that, to the extent practicable, hearing days shall be fully utilized, that hearing days not end before 5pm and the parties to the hearing have multiple witnesses ready to testify to avoid the loss of part of the day.

2. Where a hearing day is not fully used, the unused time will be counted towards the time allocated to the party that caused the delay.

3. Attorneys shall not meet with others between direct and cross examination for longer than 20 minutes, except in unusual circumstances.

4. Hearing Officers shall ensure that cross-examination is not used by either party as a dilatory tactic in order to reduce one of the parties' allotted time to present its case.

5. Evidence shall be limited to relevant matters.

6. Rebuttal shall be used only to deny some affirmative fact that the opposing party has tried to prove. During rebuttal, a party to the hearing may not offer proof to corroborate evidence that has already been presented by that party or proof tending merely to support that party's case after the opposing party has rested.

If relevant and requested at the pre-hearing conference, either party may introduce (i) relevant background evidence about a witness by affidavit from the witness; (ii) an affidavit from a doctor's office attesting to an employee's visit or non-visit on a particular date; (iii) an affidavit attesting to the date of an employee's arrest, the charge (if any) against the arrested employee, and the disposition of that charge. Such a witness may be cross-examined regarding any matter discussed in an affidavit.

If relevant, a (i) business record, (ii) attendance list from a faculty meeting, orientation and/or training session, or (iii) any human resource document submitted by a respondent (e.g., absence or sick note) may be admitted with an affidavit from a custodian of the record, without the need for live testimony from a witness to authenticate the document.

A party to the hearing or the hearing officer may request an unedited copy of the relevant transcript if a certified transcript is not available when needed. The unavailability of a certified transcript shall no t excuse adherence to the time limitations for completion of a hearing and issuance of a decision.

## Non-Termination Cases

The expedited hearing process as described in CBA Article 21(G)(3) shall be utilized as set forth therein, with the following modification: If the DOE decides not to seek a penalty of more than a suspension of 4 weeks or an equivalent fine, the case shall be heard under the expedited procedures provided in CBA Article 21(G)(3), without the need for the employee to accept an offer of expedited arbitration.

A separate track of "non-termination" cases will be established with a separate panel of additional hearing officers that exclusively hears expedited cases.

34

**Panel of Hearing Officers**

The number of hearing officers shall be as follows:

Incompetence Cases shall be heard by a panel of 14 hearing officers.

Misconduct Cases shall be heard by a panel of 25 hearing officers.

Expedited Cases shall be heard by a panel of hearing officers, the size of which will be set by the UFT and DOE as described below.

Representatives of the UFT and DOE shall meet monthly, or less frequently if the UFT and DOE agree, for the first year of this Agreement and at least twice a year thereafter (i) to agree on the number of hearing officers hearing expedited cases, (ii) to discuss the appropriateness of the number of hearing officers, including the possibility of agreeing to increase or decrease the number of hearing officers on either the incompetence or misconduct panels on either a temporary or permanent basis, and (iii) to discuss the appropriateness of the number of probable cause arbitrators, including the possibility of agreeing to increase or decrease the number of probable cause arbitrators. If the DOE believes there is a need for more hearing officers to comply with the timelines set forth in this Agreement, it shall request that the UFT agree to increase the number of hearing officers and the UFT shall not unreasonably deny an increase.

# Decisions

Both Education Law §3020-a and the collective bargaining agreements require decisions within 30 days of the completion of the hearing. Meeting with the Panel of Hearing Officers The Chancellor and the President of the UFT will personally, jointly meet with the panel of hearing officers annually to impress upon the hearing officers that both parties to this Agreement are serious about meeting the timelines in the law, the collective bargaining agreements, and this Agreement. The Chancellor and the President will urge the hearing officers to strictly control the hearings and require all parties to the hearing to conform to the timelines provided herein. They will assure the hearing officers that no hearing officer will be removed by either party to this Agreement for enforcing these rules.

**Mediation of Education Law §3020-a charges**

This section, "Mediation of Education Law §3020-a charges," shall apply to all employees with pending Education Law §3020-a charges on or before September 1, 2010 or being investigated on or before September 7, 2010 and the investigation results in §3020-a charges. The parties to the §3020-a hearings shall begin mediating such cases upon the signing of this Agreement.

The UFT and DOE shall agree on hearing officers on the rotational panel that shall serve as mediators one day per month (in addition to their required hearing days that month). The UFT and DOE may also jointly select mediators not currently on the panel of hearing officers.

Each case subject to mediation shall be assigned, on a rotational basis, to a mediator, other than the hearing officer assigned to decide the case.

The employee (and the employee's representative, if any) and a representative of the DOE with authority to negotiate settlement agreements (subject to final supervisory approval) shall meet with the mediator. The mediator shall work informally to assist the charged employee and the DOE in reaching, if possible, a

35

voluntary, negotiated resolution of the Education Law §3020-a charges. The mediator shall not decide the merits of the Education Law §3020-a charges or impose a decision. Instead, the mediator shall help the charged employee and the DOE to, if possible, agree on a mutually acceptable resolution.

No mediator shall be compelled to or voluntarily disclose (including in any subsequent proceedings under §3020-a of the Education Law) any information learned during the mediation.

# Backlog

Effective the first day of the 2010-2011 school year, all employees who, prior to August 31, 2010, have been (i) removed from their positions and assigned to a temporary reassignment center or (ii) charged pursuant to Education Law §3020-a shall be reassigned to an Administrative Office Assignment or an Administrative School Assignment or suspended with pay (if permitted by this Agreement).

For all employees charged prior to August 31,2010, the requirement that the pre-hearing conference be scheduled within 10-15 days of the charge shall not apply, but the §3020-a hearing and decision shall be completed by December 31, 2010.

For all employees who were assigned to a TRC prior to August 31, 2010 and were not charged prior to August 31,2070, the 10 or 60 day period to charge an employee or return him/her to his/her prior assignment, shall run from September 1, 2010.

Effective September 1, 2010, the parties will implement the new timelines set forth in this Agreement, which shall apply to all cases charged after September 1, 2010.

Sincerely,

_____
Joel L Klein
Chancellor
New York City Department of Education


Agreed and Accepted By:

_____
Michael Mulgrew
President
United Federation of Teachers

36