UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

MARIE ANNE THOMAS, LEVERETT HOLMES,
JOSEFINA CRUZ, BRIAN SALAZAR, DAVID
PAKTER, and PAUL SANTUCCI, on behalf of
all persons similarly situated pedagogues or tenured
educational personnel unfairly brought up on 3020-a
Disciplinary Charges since the 2002 abolishment of
the NYC Board of Education and subjected to unlawful
confinement in Teacher Reassignment Centers a/k/a
Rubber Rooms,

                                        Plaintiffs,

                    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
f/k/a BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK;
JOEL I. KLEIN, in his official capacity as Chancellor
of the CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK and individually; LAWRENCE BECKER,
in his official capacity as Chief Executive Officer
DIVISION OF HUMAN RESOURCES and individually;
PHILIP CROWE, in his official capacity as HUMAN
RESOURCES DIRECTOR, and individually; JUDITH
RIVERA, in her official capacity as DEPUTY HUMAN
RESOURCES DIRECTOR and individually,

                                        Defendants.

------------------------------------------------------------------x

**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

☆ MAR 2 9 2011 ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

09-CV-5167 (SLT) (RLM)

**TOWNES, United States District Judge:**

Plaintiffs Marie Anne Thomas,[1] Leverett Holmes, Josefina Cruz, Brian Salazar, David

Pakter and Paul Santucci (collectively, "Plaintiffs") – all of whom were or are tenured New York

City public school teachers who have been subjected to the disciplinary procedures prescribed by

---

[1]According to a letter sent to Magistrate Judge Mann on October 21, 2010, Ms. Thomas's
first name is Anna-Maria, not Marie Anne. *See* Letter to Hon. Roanne L. Mann, USMJ, from
Anna-Maria Thomas, Paul Santucci and Josefina Cruz, dated Oct. 21, 2010, at 2. However, since
Ms. Thomas has made no attempt to amend the pleading, this Court will continue to refer to her
by the name used in Plaintiffs' complaint.

section 3020-a of the New York Education Law – bring this putative class action against the New York City Department of Education (the "DOE"), its Chancellor, and three of its high-level employees, alleging various federal constitutional violations. Defendants now move to dismiss this complaint pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging, *inter alia*, that the complaint fails to state a cause of action, that the entire action is moot, and that the claims of plaintiffs David Pakter and Josefina Cruz are barred by *res judicata* and/or collateral estoppel. For the reasons set forth below, defendants' motion is granted in part and denied in part and Plaintiffs are directed to amend their complaint within thirty days of the date of this Memorandum and Order.

## ***BACKGROUND***

The following facts are drawn from a 29-page complaint dated November 23, 2009, filed by Joy Hochstadt, Esq. – the attorney who originally represented all six named Plaintiffs. These allegations principally relate to changes in disciplinary procedures which allegedly began in 2002, when the New York City public schools were reorganized. Although Plaintiffs' description of that reorganization may not be entirely consistent with the express provisions of the 2002 statutory amendments which effectuated this reorganization, Plaintiffs' allegations are assumed to be true for purposes of this motion.

Plaintiffs allege that under this reorganization, "the Mayor of New York City took over the administration" of the schools from "the independent school board." Complaint at ¶ 27. The Board of Education was "dissolved," and some, but not all, of its functions were transferred to a 13-member "Panel on Educational Policy" appointed by the mayor. *Id.* at ¶¶ 32-33. The mayor, who is not named as a defendant in this action, promptly used his power to "install a 'Chancellor'

2

who had no educational experience but whose principal job was to get rid of the system of tenure, fire tenured pedagogues or make their lives such that work was unbearable." *Id.* at ¶ 28.

Plaintiffs imply that the statutory changes which effectuated the reorganization removed certain "checks and balances" and procedural safeguards which had protected teachers from the initiation of disciplinary proceedings. *Id.* at ¶ 34. Section 3020-a provides, in pertinent part, that:

> Upon receipt of the charges, the clerk or secretary of the school district or employing board shall immediately notify said board thereof. Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section.

However, Plaintiffs contend that, either because Education Law § 2590-g, as amended, did not "address the issue of review and scrutiny of whether there is Probable Cause to proceed with the prosecution of Disciplinary Charges," *id.* at ¶ 34, or because there is no school board to perform this function, which had not been assigned to the Panel on Educational Policy, *id.* at ¶ 36, there is no longer any independent review or oversight by anyone other than the teacher's Principal and a "Local Superintendent." *Id.* at ¶37.

Plaintiffs, who imply that the Local Superintendents typically "endorse" the Principals' requests to initiate disciplinary proceedings, assert that this new process violates their rights to due process and equal protection. First, Plaintiffs characterize the change in this process as a "taking away of . . . due process review of Disciplinary Charges mandated by 3020-a." *Id.* at ¶ 39. Second, Plaintiffs claim that the change in this process has resulted in "a three to fourfold increase of 3020-a charges brought against NYC teachers compared to a lack of increase in the

3

rate of similar charges being brought against tenured educators elsewhere in the State," and that "[t]hese differential rates . . . confirm the *de facto* denial of equal protection of the 3020-a law." *Id.* at ¶¶ 39-40.

Plaintiffs also assert that amendments in various provisions of New York's Education Law changed the disciplinary process in ways that deprived them of rights enjoyed by tenured educators in all other parts of the State. *Id.* at ¶ 58. Plaintiffs' complaint contains a non-exhaustive list of ten ways in which the New York City disciplinary process differs from that employed elsewhere. *Id.* at ¶ 59(a)-(j). For ease of discussion, these ten ways can be grouped into three categories.

First, Plaintiffs complain about the ways New York City teachers are treated in the period after disciplinary charges are brought but before the disciplinary proceedings are concluded. Plaintiffs allege that New York City teachers are always reassigned to Teacher Reassignment Centers ("TRCs") – sometimes referred to as "rubber rooms" – while teachers elsewhere await their proceedings either "in place" or at home, depending on whether their alleged misconduct is deemed dangerous to the students. *Id.* at ¶ 59(e). Plaintiffs claim that these TRCs are "tantamount to constructive termination and intentionally operated in a manner designed to induce constructive termination before the 3020-a hearing has . . . begun," *id.* at ¶ 59(f), and describe the overcrowding, poor ventilation, oppressive supervision, and enforced boredom that allegedly make conditions in these centers "horrific." *Id.* at ¶¶ 60, 65, 67-68. However, nothing in the complaint suggests that any of the Plaintiffs have resigned because of conditions in the TRCs.

4

In addition, Plaintiffs complain that those tenured New York City teachers accused of "impropriety of a physical or sexual nature" can be removed from the payroll for three months, even where criminal charges have not been filed, while teachers in other parts of New York State are suspended without pay pending the 3020-a hearing only if they are convicted of a drug felony or the physical or sexual abuse of a minor. *Id.* at ¶¶ 46, 59(g). Plaintiffs concede that tenured New York City teachers who are accused of "misconduct that could be construed as an inappropriate relationship or inappropriate touching of a student" are removed from the payroll only upon an arbitrator's finding of probable cause, but characterize the hearing in which these probable cause determinations are made as "essentially an *ex parte* inquisition," in which the teacher, although present, cannot testify or present any witnesses. *Id.* at ¶ 45. However, Plaintiffs do not allege that they themselves were charged with this sort of misconduct or removed from the payroll without being afforded the opportunity to be heard.

Second, Plaintiffs complain about the manner in which the hearings themselves are conducted. Plaintiff allege that they, unlike tenured teachers elsewhere in New York State, do not have the right to "select procedures under either a Collective Bargaining Agreement ('CBA') or the statutory langauge of 3020-a," but "have no option other than that offered by the CBA." *Id.* at ¶ 59(a). Plaintiffs further allege that they are not only denied the statutory right to a three-member panel of arbitrators, *id.* at ¶ 59(c), but "have no say in selection of an arbitrator for their proceeding." *Id.* at ¶ 59(b). Rather, they are assigned an arbitrator from a permanent panel whose members are paid in a manner that "induce[s] arbitrator dependency" and causes the arbitrator to "favor the employer they perceive as the more powerful in influencing their own job retention in this role." *Id.* at ¶ 59 (b) and (d) (bracketed material added).

5

Third, Plaintiffs complain that only those tenured New York City teachers who are completely exonerated of all charges are returned to regular duty. *Id.* at ¶ 59(i). Plaintiffs allege that tenured educators elsewhere in the State "are returned to regular duty after a suspension or a fine or a letter of reprimand is imposed," but that tenured New York City teachers who have "been fined, even nominally, or reprimanded" are relegated to the Absent Teacher Reserve, where they perform day-to-day substitute assignments. *Id.* at ¶¶ 44, 59(h) and (j). Although teachers who are assigned as substitute teachers receive the same pay that they would have received as regular teachers, *id.* at ¶ 44, they are allegedly "looked down upon as 'pharisees.'" *Id.* at ¶ 59(j).

Plaintiffs further allege that teachers have a shorter time in which to initiate a legal challenge to the arbitrator's determination than do other individuals. Plaintiffs note that § 3020-a (5) gives them only ten days from receipt of the arbitrator's decision in which to move to vacate or modify that decision pursuant to Article 75 of New York's Civil Procedure Law and Rules ("CPLR"). Plaintiffs allege that "all other Special Proceedings brought under CPLR Art. 75 have a 90-day statute of limitations," and that this "may . . . be an equal protection violation." *Id.* at ¶ 69.

### *Plaintiffs' Causes of Action*

Plaintiffs' complaint contains six causes of action, three of which allege federal claims and are principally at issue herein. The first cause of action, which purports to be brought "[p]ursuant to Amendment XIV of the United States Constitution," relates solely to Plaintiffs' reassignment to the TRCs. Plaintiffs accuse the defendants of "deliberately creating hostile work environments" in an attempt to, among other things, "dissuade tenured educators from asserting

6

whatever rights remain available to NYC teachers under 3020-a" and "force Plaintiffs and all Class members to retire earlier than they would otherwise wish to." *Id.* at ¶ 76. Plaintiffs imply that these actions violate their Fourteenth Amendment rights to due process and, because "[n]o teacher outside of New York City . . . is confined to a rubber room," their rights to equal protection under the law. *Id.* at ¶¶ 71, 74.

Plaintiffs' second cause of action, which is purportedly brought "[p]ursuant to Amendment I of the United States Constitution," appears to allege that all of the defendants have retaliated against all of the Plaintiffs for exercising their rights to free speech. Although the complaint contains no factual allegations suggesting that any of the Plaintiffs engaged in protected speech, the second cause of action alleges that unspecified "punitive and wrongful actions of Defendants were undertaken, at times, because of the Plaintiffs' . . . exercise of their 1st Amendment right to oppose defendants' illegal acts of creating false reports and covering up other wrongdoing in their school." *Id.* at ¶ 81. Plaintiffs further allege that the "unfair preferring of false and frivolous charges" was not only facilitated by the elimination of the procedural protections which required the Board of Education to find probable cause before charges were brought against tenured teachers, but tacitly encouraged by a system in which "Principals, now without tenure themselves, . . . stand to earn enticing incentive pay for reporting unrealistic data while possibly losing their jobs for failing to do so." *Id.* at ¶ 80.

Plaintiffs' third cause of action is purportedly brought pursuant to 42 U.S.C. § 1983 but, with one exception, does not specify (1) the defendants against whom it is brought or (2) what acts or omissions allegedly violated Plaintiffs' federal constitutional rights. This cause of action does allege that defendant Rivera engaged in "[p]ost-hoc rule making" in violation of the

7

privileges and immunities clause of the Fourteenth Amendment by "instruct[ing] her subordinate Donna Dennis to announce on or about January 15, 2008, that conferences with assigned counsel for the purpose of preparing for the 3020-a hearing would be thereafter docked if held during the workday." *Id.* at ¶ 88. However, Rivera's actions are not mentioned in the "Factual Allegations" portion of the complaint and, although the complaint alleges that Rivera docked the pay of an unspecified "reassigned tenured educator" retroactively, *id.*, there is nothing to suggest that any of the Plaintiffs had their pay docked. Similarly, this cause of action baldly alleges violations of due process and equal protection and "[d]enial of per session employment," *id.* at ¶ 87, without alleging who denied Plaintiffs' rights or how they did so.

### Defendants' Motion to Dismiss

Defendants now move to dismiss Plaintiffs' complaint on two grounds. First, defendants argue that the complaint fails to state a cause of action because the facts alleged do not make out a violation of Plaintiffs' due process or equal protection rights or a First Amendment retaliation claim. Second, defendants argue that this action was rendered moot by an April 15, 2010, agreement between the DOE and the United Federation of Teachers ("UFT").

In making the second argument, defendants rely on an eight-page letter agreement between defendant Klein and the President of the UFT (the "Letter Agreement"), which is attached as Exhibit B to the Declaration of Assistant Corporation Counsel Maxwell D. Leighton – the lawyer who represents defendants in this action. That Letter Agreement provides, *inter alia*, that teachers accused of misconduct or incompetence will be assigned either to "a DOE administrative office to do work consistent with law" or "an administrative assignment within his or her school," rather than to a Teacher Reassignment Center. Declaration of Maxwell D.

Leighton ("Leighton Declaration"), Ex. B, at 1, 3. The Letter Agreement also establishes a series of deadlines for disciplinary cases, requiring, for example, that disciplinary charges be brought within 60 days of reassignment for misconduct or 10 days of reassignment for incompetence; that a pre-hearing conference be conducted within 10 to 15 days of the DOE's receipt of the teachers' request for a hearing; and, absent "extraordinary circumstances," that the hearing be completed within 60 days of the pre-hearing conference and that a decision be rendered within 30 days of the final hearing date. *Id.* at 2-5.

In addition to advancing these two grounds for dismissing Plaintiffs' complaint, defendants argue that the claims of two of the named plaintiffs – David Pakter and Josephina Cruz – are barred by either collateral estoppel or *res judicata*. With respect to Mr. Pakter, defendants have submitted a memorandum and order from United States District Judge Deborah A. Batts, which dismissed Mr. Pakter's federal action against the DOE, Klein, Crowe, Rivera, and a dozen other DOE employees. *See* Leighton Declaration, Ex. C. In this prior action, Mr. Pakter, represented by Ms. Hochstadt, alleged causes of action for, among other things, "(1) retaliation under the First Amendment of the United States Constitution and 42 U.S.C. § 1983; (2) discrimination and retaliation under the Due Process Clause, the Equal Protection Clause, and 42 U.S.C. § 1983; (3) discrimination, retaliation and hostile work environment under the Age Discrimination in Employment Act . . . [and] (4) discrimination and retaliation under Title VII of the Civil Rights Act of 1964 . . . ." *Id.*, Ex. C, at 9-10.

With respect to Ms. Cruz, defendants have submitted two written decisions. The first – a decision and order from Justice Scarpulla of the Supreme Court of the State of New York, New York County, dated January 5, 2009 – dismissed a special proceeding that Ms. Cruz had brought

pursuant to CPLR Article 75 to challenge an arbitrator's decision finding Ms. Cruz guilty of ten of the fourteen charges brought against her by the DOE. *See* Leighton Declaration, Ex. D. The second – an April 6, 2010, decision and order by Judge Marrero in *Adams v. New York State Education Dep't*, S.D.N.Y. Docket No. 08 Civ. 5996 – adopted Magistrate Judge Peck's recommendation that a complaint brought by Ms. Cruz and others be dismissed. *Id.*, Ex. E. Judge Marrero's opinion indicates that this complaint alleged, *inter alia*, "(1) violations of Plaintiffs' First Amendment rights to freedom of speech by Defendants' retaliating against them for speaking out against City school system programs and policies designed to terminate employment of teachers performing below acceptable standards . . . [and] (2) deprivations of due process of law by instituting disciplinary hearings against Plaintiffs that allegedly were not fair and impartial, and by employing, to conduct these proceedings, hearing officers not properly trained or supervised." *Id.* at 1 (emphasis omitted).

### *Post-Briefing Developments*

In the seven months since defendants' motion to dismiss was fully submitted in late July 2010, there have been several developments which are relevant to the discussion below. First, in a memorandum and order dated September 14, 2010, Magistrate Judge Mann granted defendants' motion to stay discovery in this case pending resolution of the motion to dismiss. In her memorandum and order, Magistrate Judge Mann specifically noted that any objections to the stay had to be filed with this Court on or before October 1, 2010. *See* Docket # 63 at 8.

On October 1, 2010, Magistrate Judge Mann received a letter from plaintiff Cruz, expressing dissatisfaction with Plaintiffs' counsel and requesting, on her own behalf and "on behalf of certain of the other named plaintiffs and other class members, . . . a 1-month extension

10

. . . to substitute in new counsel for Ms. Hochstadt and/or to file opposition to the September 14, 2010 Order as *pro se* litigants." Undated Letter to Hon. Roanne L. Mann USMJ from Josefina Cruz (Docket # 64) at 2. In response to this letter, Magistrate Judge Mann endorsed an order (1) directing any plaintiff desiring to retain new counsel to have their attorney file a substitution of counsel by October 25, 2010, and (2) giving incoming counsel until October 27, 2010, in which "to move to reopen the time to object to, or move for reconsideration of, . . . [the] Order . . . staying discovery." *Id.* at 1. While Ms. Hochstadt responded at length to Ms. Cruz's letter, *see* Letter to Judges Townes and Mann from Joy Hochstadt dated Oct. 1, 2010 (Docket #65), she never expressly requested an extension of time in which to object to the order staying discovery. *See* Order of Magistrate Judge Mann dated Oct. 4, 2010 (Docket #66) (noting this fact and ruling that, even if Ms. Hochstadt's letter of October 1, 2010, could be construed as requesting an extension of time, that motion was denied).

On October 21, 2010, Magistrate Judge Mann received a letter signed by plaintiffs Thomas, Santucci and Cruz, indicating that they were searching for substitute counsel and requesting a further extension of the time to object to, or move for reconsideration of, the order staying discovery. *See* Letter to Hon. Roanne L. Mann USMJ from Anna-Maria Thomas, Paul Santucci and Josefina Cruz, dated Oct. 21, 2010 (Docket # 68). Magistrate Judge Mann extended the time to November 15, 2010, and on October 29, 2010, issued an order directing that Ms. Cruz, Ms. Thomas, and Mr. Santucci . . . be considered *pro se* unless and until another attorney enters an appearance on their behalf." Order of Magistrate Judge Mann dated Oct. 29, 2010 (Docket #69) at 1-2.

11

By letter dated November 18, 2010, defendants' counsel alerted this Court to a final decision in *Adams*, the federal action brought by Ms. Hochstadt on behalf of plaintiff Cruz and another woman in the United States District Court for the Southern District of New York. In this second decision, dated November 18, 2010, Judge Marrero adopted Magistrate Judge Peck's recommendation that the fourth amended complaint filed by Ms. Cruz be dismissed. In his cover letter accompanying this decision, defendants' counsel represented that Magistrate Judge Peck's report and recommendation "addressed and resolved nearly identical due process, First Amendment, and equal protection claims against the New York City Department of Education as those set forth in the instant action." Letter to the Honorable Sandra L. Townes from Asst. Corp. Counsel Maxwell D. Leighton, dated Nov. 18, 2010, at 1-2.

On December 13, 2010, Ms. Hochstadt filed a notice of appearance, indicating that she had been "re-retained" by Mr. Santucci. No attorney has yet appeared for Ms. Cruz and/or Ms. Thomas. According to the docket sheet in this case, Ms. Thomas has not filed any submissions in her own behalf. Ms. Cruz, however, has authored and filed five submissions: (1) a declaration dated November 15, 2010, seeking reconsideration of Magistrate Judge Mann's order staying discovery; (2) a supplemental declaration dated December 9, 2010, in further support of the motion for reconsideration; (3) a declaration dated December 30, 2010, in support of a motion for permission to file a sur-reply, (4) a letter and "Reply Declaration," both dated February 15, 2011, relating to defendants' opposition to her November 15, 2010, request for reconsideration,

and (5) objections to Magistrate Judge Mann's March 3, 2011, order denying the motion for reconsideration.[2]

In addition to filing a notice of appearance on behalf Mr. Santucci, Ms. Hochstadt has filed four submissions since mid-December 2010, the first three of which essentially seek discovery. First, Ms. Hochstadt has filed two letters, dated December 13 and 16, 2010, in which she asserts that the DOE is not complying with the terms of its April 15, 2010, Letter Agreement with the UFT, and requests information concerning the DOE's compliance. Ms. Hochstadt has also filed a 21-page "Declaration in Support of Pro Se Motion for Discovery," presumably in support of Ms. Cruz's motion for discovery.

Ms. Hochstadt's fourth submission is a six-page letter dated March 12, 2011, which purports to be a "Request to submit [a] supplementary brief opposing [defendants'] motion to dismiss." In reality, this letter principally contains new factual allegations which, Ms. Hochstadt claims, relate to Plaintiffs' equal protection claim. Although it unclear how the factual allegations contained in this letter further the equal protection claims, it is clear that supplementary briefing would not assist in deciding this motion. Accordingly, Ms. Hochstadt's request to submit supplementary briefing is denied.

_____

[2]Although Ms. Cruz wrote this Court a letter dated January 22, 2011, in which she represented that the first three of these declarations had not yet been docketed, these three declarations appear to have been docketed together under the entry, "Declaration in Support of Pltff's Motion for Permission to File a Sur-reply." *See* Docket # 80.

## DISCUSSION

### The Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). However, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass*

14

*v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus.*, 949 F.2d at 47-48).

### *Due Process*

Defendants' first argument seeks to dismiss the due process claims contained in Plaintiffs' first and third causes of action. With respect to Plaintiffs' first cause of action, defendants argue that Plaintiffs' Fourteenth Amendment property interests were not violated when they were sent to TRCs because Plaintiffs' salary and benefits were unaffected by this reassignment. With respect to the third cause of action, defendants argue that the process provided to Plaintiffs under Education Law § 3020-a far exceeded what was constitutionally mandated.

The first of these two arguments was recently addressed in *Adams v. N.Y. State Educ. Dep't*, S.D.N.Y. Docket No. 08 Civ. 5996 (VM), a case in which Josefina Cruz, a plaintiff in this action, was also a plaintiff and was represented by Ms. Hochstadt. In that case, Magistrate Judge Peck issued a lengthy report and recommendation which stated, in pertinent part:

> In order to formulate a claim under the Fourteenth Amendment's Due Process Clause, a plaintiff must demonstrate that he or she possesses a constitutionally protected liberty or property interest, and that state action has deprived him or her of that interest. *See* U.S. Const. amend. XIV, § 1; *see also, e.g., Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citation omitted),

15

*abrogated on other grounds by, Sandin v. Conner,* 515 U.S. 472, 484 n. 5, 115 S.Ct. 2293, 2300 n. 5, 132 L.Ed.2d 418 (1995).

\* \* \*

An employee who continues to be paid cannot "sustain a claim for deprivation of property without due process" even if relieved from job duties. *Ramberran v. Dellacona,* No. 07-CV-304, 2008 WL 905217 at \*1-2, \*4 (E.D.N.Y. Mar. 31, 2008) (DOE did not deprive teacher of a constitutionally protected property interest when it removed him from his teaching position and reassigned him to administrative duties at the Regional Operation Center. "An employee who continues to be paid by his employer cannot sustain a claim for deprivation of property without due process."); *see also, e.g., O'Connor v. Pierson,* 426 F.3d 187, 199 (2d Cir. 2005) ("[N]o court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties.... [D]ecisions from two circuits have rejected due process claims that were based on an employee's asserted property interest in doing his job (as opposed to receiving a salary).") (citing cases); *Gugliotti v. Miron,* No. 08-CV-442, 2010 WL 3025223 at \*6-9 (D.Conn. July 30, 2010) (Plaintiff did not have a constitutionally protected property interest "in performing his job duties, without an accompanying pecuniary loss."); *Valenti v. Torrington Bd. of Educ.,* 601 F. Supp. 2d 427, 440 (D.Conn. 2009) (Suspension of a teacher with pay does not deprive the teacher of a constitutionally protect property interest.); *Deal v. Seneca Cnty .,* No. 07-CV-6497, 2008 WL 2020004 at \*3-4 (W.D.N.Y. May 8, 2008) ("The law in this Circuit provides that nothing less than suspension without pay constitutes a protected property interest."); *Pearlman v. Cooperstown Cent. Sch. Dist.,* No. 01-CV-504, 2003 WL 23723827 at \*3, 4 (N.D.N.Y. June 11, 2003) (School board did not deprive plaintiff of a protected property interest when it suspended him with pay for two years, during which time he had little or nothing to do.); *Lynch v. McNamara,* 342 F. Supp. 2d 59, 65-66 (D.Conn.2004) ("[R]eassignments and transfers generally do not implicate a protected property interest for the purposes of due process, unless accompanied by a loss in pay.") (citing cases); *Montefusco v. Nassau Cnty.,* 39 F. Supp. 2d 231, 239 (E.D.N.Y. 1999) (Suspension of a teacher with pay does not deprive the teacher of a constitutionally protect property interest.). Here, the DOE continued to pay plaintiffs while in the TRCs. Thus, the DOE did not deprive plaintiffs of a property interest by sending them to the TRCs . . . .

*Adams,* 2010 WL 4742168, at \*28 (S.D.N.Y. Nov. 18, 2010).

The plaintiffs in *Adams* objected to this portion of Magistrate Judge Peck's report and recommendation, pointing to a footnote in *O'Connor* in which the Second Circuit, citing to *Parrett v. City of Connersville*, 737 F.2d 690, 694 (7th Cir.1984)), "noted that a teacher suspended with pay but who resigns may have grounds to bring a procedural due process claim . . . if he can state a claim of constructive discharge." *Adams*, 2010 WL 4742168, at *8 (citing *O'Connor*, 426 F.3d at 200 n. 5). However, Judge Marrero rejected this objection, noting that none of the plaintiffs in *Adams* "expressly assert[ed] constructive discharge either as a distinct claim or as a theory of liability." *Id.* Judge Marrero further stated that he was "not persuaded that the circumstances alleged [in the *Adams* complaint] . . . would come remotely close to . . . satisfy[ing] the rigorous test of sufficient deliberate, abusive or otherwise intolerable working conditions that must exist to justify an involuntary resignation, thus warranting an application of the constructive discharge doctrine." *Id.* (citing *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.1996); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir.1993)).

This Court, like Judge Marrero, concurs with Magistrate Judge Peck's thorough and well-reasoned analysis. The complaint in this case implies that teachers placed in the TRCs continued to receive the same pay and benefits. Moreover, in this case, as in *Adams*, none of the Plaintiffs has "expressly assert[ed] constructive discharge either as a distinct claim or as a theory of liability." *See Adams*, 2010 WL 4742168, at *8. While Plaintiffs' complaint alleges that the TRCs were "intentionally operated in a manner designed to induce constructive termination," Complaint at ¶ 59(f), nothing in the complaint suggests that any of the Plaintiffs resigned because of conditions in the TRCs. Accordingly, since Plaintiffs have failed to allege facts suggesting

that their reassignment to the TRCs violated their property rights, their first cause of action fails

to state a claim for the violation of their Fourteenth Amendment rights to procedural due process.

Magistrate Judge Peck's report and recommendation in *Adams* also addressed the second

of the two due process arguments advanced by defendant in this case. In *Adams*, Ms. Cruz and

Twana Adams, both represented by Ms. Hochstadt, complained about many of the same

disciplinary procedures with which Plaintiffs take issue in this case. Magistrate Judge Peck

noted:

> Plaintiffs Adams and Cruz ... claim that defendants violated their
> due process rights by: (a) "depriving [them] of the right to jointly
> choose a [ ] Hearing Officer" with the DOE (4th Am. Compl.
> ¶¶ 83-84); (b) failing to require the Board of Education to vote on
> the charges against them (4th Am. Compl. ¶ 83); (c) "abolish[ing]
> plaintiffs' right to choose a Three Hearing Officer Panel" to decide
> "pedagogical incompetence" cases (4th Am. Compl. ¶ 85); and (d)
> "employing 23 or fewer Hearing Officers" (4th Am. Compl. ¶ 89.)

*Adams*, 2010 WL 4742168, at *30.

In adjudicating this claim, Magistrate Judge Peck began by noting that "[d]ue process

requires, as a general matter, an opportunity to be heard at a meaningful time and in a meaningful

manner." *Id.* at *30 (internal quotations and citations omitted). Then, citing to *Cleveland Bd. of

Educ. v. Loudermill*, 470 U.S. 532, 546 (1985), which held that due process requires only that a

tenured public employee receive "oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the story,"

Magistrate Judge Peck ruled that the deprivations alleged by the *Adams* plaintiffs "[did] not

affect whether a tenured teacher receives 'oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the story,' as due process requires." *Adams*, 2010 WL 4742168, at *30.

Magistrate Judge Peck's report and recommendation was adopted by Judge Marrero and, again, this Court finds Magistrate Judge Peck's reasoning persuasive. However, *Adams* is not dispositive of this case because the complaint in this case alleges deprivations beyond the four listed in Magistrate Judge Peck's report and recommendation. *See* p. 18, *ante*. To be sure, some of these alleged deprivations, such as those involving procedures authorized by Education Law § 3020-a, clearly do not rise to the level of due process violations. "The procedures outlined by § 3020-a of the Education Law, when followed, are 'more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment.'" *See Ramberran v. Dellacona*, No. 07-CV-304 (CBA), 2008 WL 905217 at *4 (E.D.N.Y. Mar. 31, 2008) (quoting *Montefusco v. Nassau Cty.*, 39 F. Supp. 2d 231, 239-40 (E.D.N.Y. 1999)). However, the allegation that tenured New York City teachers who are accused of "misconduct that could be construed as an inappropriate relationship or inappropriate touching of a student" are removed from the payroll without being given the opportunity to testify or present witnesses in their own behalf. Complaint at ¶ 45, at least suggests a viable due process claim.

None of Plaintiffs' six causes of action, however, specifically mentions, or even alludes, to this claim. Plaintiffs' complaint does not allege (1) that any of the Plaintiffs were actually accused of "misconduct that could be construed as an inappropriate relationship or inappropriate touching of a student" or (2) which, if any, of the defendants was personally involved in this alleged due process violation. Accordingly, this Court agrees with defendants that the complaint in this case fails to adequately allege a due process violation.

19

### *First Amendment Retaliation*

This Court also finds merit in defendant's second ground for dismissal – namely, that plaintiffs have failed to state a claim for First Amendment retaliation because they have not specifically alleged that Plaintiffs engaged in any speech, much less speech on a matter of public concern. A plaintiff alleging First Amendment retaliation must first establish that his or her speech was protected by the First Amendment. *See Williams v. Town of Greenburgh*, 35 F.3d 71, 76 (2d Cir. 2008). "The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The speech at issue must involve matters of public concern because of "'the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" *Williams*, 35 F.3d at 76 (quoting *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.1991)).

In order to establish First Amendment retaliation, a public employee in this Circuit "must demonstrate that '(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination.'" *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2003) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir.2003)). However, Plaintiffs' complaint does not specifically allege that any of the Plaintiffs engaged in speech addressing a matter of public concern. Indeed, the section of the complaint entitled, "Factual Allegations," contains no mention of any speech whatsoever. The only allegation in the complaint concerning speech appears in Plaintiffs' second

20

cause of action, where Plaintiffs allege that "the punitive and wrongful actions of Defendants were undertaken, at times, because of the Plaintiffs' and other class members['] exercise of their 1st Amendment right to oppose defendants' illegal acts of creating false reports and covering up other wrongdoing in their school . . . ." Complaint at ¶ 81.

Defendants argue not only that these allegations are insufficient to state a claim, but that statements opposing "illegal acts of creating false reports and covering up other wrongdoing" in Plaintiffs' schools were "made pursuant to plaintiffs' duties as teachers" and are "not constitutionally protected in nature." Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defendants' Memo") at 11. The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." *Garcetti v. Ceballos*, 547 U.S. at 421. Speech made "pursuant to" a public employee's duties is defined as "speech that owes its existence to a public employee's professional responsibilities." *Id.*

Nonetheless, "[t]he First Amendment protects some expressions related to the speaker's job." *Id.* As the Supreme Court has noted:

> "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."

*Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 572 (1968)). Accordingly, the fact that the speech concerns the subject matter of the speaker's employment "is not dispositive" of whether or not it is protected. *Id.*

21

Because the parties in *Garcetti* did not dispute that the plaintiff's speech in that case was "pursuant to his employment duties," the *Garcetti* Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at 424. The Supreme Court expressly rejected the notion that the scope of an employee's duties could be divined from the employee's written job description, observing that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." *Id.* at 424-25. However, the *Garcetti* Court offered little guidance other than to note that the "proper inquiry" with respect to whether an employee spoke pursuant to his or her official duties was "a practical one." *Id.* at 424.

In the five years since *Garcetti* was decided, the Second Circuit has provided some additional guidance in determining when speech is "pursuant to" official duties. The Second Circuit has clarified that, while "'speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern,' . . . it does not follow that a person *motivated by* a personal grievance cannot be speaking on a matter of public concern." *Sousa v. Roque*, 578 F.3d 164, 174 (2d Cir. 2009) (quoting *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999)) (emphasis in *Sousa*). In addition, the Second Circuit has stated that, "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub v. Board of Ed.*, 593 F.3d 196, 203 (2d Cir. 2010).

The determination of whether an employee's speech was pursuant to the employee's official duties involves a conduct- and fact-specific evaluation of the speech involved. For

22

example, in *Weintraub*, the Second Circuit held that a teacher's union grievance relating to a supervisor's failure to discipline a student "was pursuant to his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties . . . . " *Id.*, 593 F.3d at 203. In contrast, in *Cioffi v. Averill Park Central School Dist. Bd. of Educ.*, 444 F.3d 158 (2d Cir. 2006), the Second Circuit held that a school athletic director's comments about a high school hazing incident that may have involved sexual misconduct and the school board's investigation of that incident were protected speech under the First Amendment, noting that "[a]ny community would be acutely interested in such an incident that constitutes nothing less than a criminal attack on a minor." *Id.* at 164.

In this case, the allegations in the complaint concerning Plaintiffs' speech are much too vague to permit this Court to determine whether Plaintiffs' speech, if any, related to a matter of public concern or was pursuant to the Plaintiffs' official duties. The complaint alleges only that defendants "punitive and wrongful actions . . . were undertaken, at times, because of the Plaintiffs' and other Class members['] exercise of their 1st Amendment right to oppose defendants' illegal acts of creating false reports and covering up other wrongdoing in their school." Complaint at ¶ 81. The complaint does not describe the statements allegedly made by any of the Plaintiffs, much less specify to whom the statements were made or under what circumstances.

Plaintiffs' Memorandum of Law in response to defendants' motion to dismiss ("Plaintiffs' Memo"), however, describes the speech which allegedly resulted in retaliation, and seeks permission "to supplement the complaint with the names of exemplar plaintiffs and class

23

members" and "the protected speech . . . they engaged in." *Id.* at 11. Under the heading "Myth

#5," Plaintiffs' Memo describes the speech of five of the six Plaintiffs as follows:

> Plaintiff # 1 reported the threatening behavior of another teacher
> toward her to the police . . .; Plaintiff # 2 reported a student who
> repeatedly assaulted him to the police; . . . Plaintiff # 4 filed
> grievances concerning class size and failure to grant workplace
> accommodations, Plaintiff # 5 accepted the Principal's invitation to
> address a parent and friend fund-raising group and told them of the
> 25 years of change he had witnessed in the school that included the
> dilution of the syllabii [*sic*] narrowing of the curriculum . . .
> removal of music . . . etc. . . . [H]e also reported a dubious contract
> for windows to be replaced for the second time in five years, and
> diversion of the $78,000.00 annual budget earmarked for music to
> other purposes to the Special Commissioner of Investigations;
> Plaintiff # 6 reported the scandalous sexual escapades going on in
> his school to a journalist rather than the school administration
> because the school administration was itself involved . . . .

Plaintiffs' Memo at 6. Plaintiffs' Memo also describes the speech of five unidentified putative

class members.

Although Plaintiffs' Memo implies that all of this speech related to "important matters of

public interest not involving their own work assignment or duties," *id.* at 11, this Court does not

agree. The speech attributed to Plaintiffs # 1 and # 2 – essentially, police reports concerning

crimes against them – related to a purely private matter, as did Plaintiff # 4's grievance

concerning workplace accommodations. Those portions of Plaintiff # 4's grievance concerning

class size may have related to matters of public concern but, like the grievance in *Weintraub*, was

made pursuant to official duties in that it voiced "concerns about [the teacher's] ability to

properly execute his duties . . . ." *Weintraub*, 593 F.3d at 203. The speech attributed to Plaintiff

# 5 – allegedly made during a school fund-raiser at which the Principal had requested that he or

she speak – was unquestionably pursuant to official duties. In contrast, Plaintiff # 5's report of

possible construction fraud and Plaintiff #6's speech concerning "sexual escapades" may relate to issues public concern and may not have been made pursuant to official duties. *See Cioffi*, 444 F.3d 158.

Accordingly, Plaintiffs' second cause of action, alleging First Amendment retaliation, is dismissed for failure to state a claim. This Court grants Plaintiffs' request for permission to amend the complaint only with respect to Plaintiffs # 5 and # 6. If these Plaintiffs wish to state a claim for First Amendment retaliation, they must include specific allegations concerning the speech by Plaintiffs which allegedly gave rise to the retaliation.

### *Equal Protection*

Defendants' third argument – seeking to dismiss plaintiffs' equal protection claims – is predicated on the belief that Plaintiffs are alleging only that "the amendment of New York State Education Law §§ 2590-j, 3020-a and 3020 . . . denies plaintiffs their right to equal protection" by "'treat[ing] New York City different from the rest of the state.'" Defendants' Memo at 8 (quoting Complaint at ¶ 58). Defendants assert that it is "very well established" that the New York State legislature may enact laws treating New York City, its agencies, boards and bodies differently from the rest of the State "provided that a rational basis exists for such differential treatment," and contend that the DOE's tremendous size "plainly serves as a rational basis for the Legislature's enactment and amendment of legislation, specifically concerning the DOE, that differs from the procedural mechanisms applicable to other, much smaller, less complex State school districts." *Id*. at 9-10.

During the period in which the instant motion to dismiss was pending before this Court, this argument was essentially adopted by Magistrate Judge Peck in his previously mentioned

report and recommendation in *Adams v. N.Y. State Educ. Dep't. Adams*, 2010 WL 4742168, at *9-*49. In *Adams*, two plaintiffs – both of whom were represented by Ms. Hochstadt and one of whom, Josefina Cruz, is a defendant herein – claimed "that their equal protection rights were violated because New York City teachers are treated differently than other teachers in New York State." *Id.* at *32.

The allegations of disparate treatment advanced by these two plaintiffs in *Adams* were, in at least some respects, almost identical to the allegations contained in the complaint in this case. The plaintiffs in *Adams* accused the defendants in that action, which included the DOE and Chancellor Klein, of "(a) depriving them of 'the right to jointly choose a [] Hearing Officer' with the DOE (4th Am. Compl. ¶¶ 83-86); (b) limiting the pool of hearing officers to "23 or fewer" (4th Am. Compl. ¶¶ 87-88; Hochstadt Br. at 31); (c) failing to require the DOE to vote on charges (4th Am. Compl. ¶ 77; Hochstadt Br. at 33-34); and (d) abolishing the three person arbitration panel for 'pedagogical incompetence' charges (4th Am. Compl. ¶ 85)." *Adams*, 2010 WL 4742168, at *32. In this action, Plaintiffs allege that they "have no say in selection of an arbitrator for their proceeding," Complaint at ¶ 59(b); are assigned an arbitrator from a permanent panel whose members are paid in a manner that "induce[s] arbitrator dependency" and causes the arbitrator to "favor the employer they perceive as the more powerful in influencing their own job retention in this role," *id.* at ¶ 59 (b) and (d); are denied the "due process review of Disciplinary Charges mandated by 3020-a," *id.* at ¶ 38; and denied the statutory right to a three-member panel of arbitrators, *id.* at ¶ 59(c). In addition, the *Adams* plaintiffs argued "that New York Education Law § 3020-a(5)'s ten day statute of limitations for filing an Article 75 . . . proceeding challenging the § 3020-a hearing officer's decision violates their equal protection

26

rights because all other arbitrations under Article 75 . . . have a 90 day statute of limitations to file an appeal." *Adams*, 2010 WL 4742168, at *34 (internal quotations and brackets omitted). Plaintiffs make that same argument in this case. *Id.* at ¶ 69.

Magistrate Judge Peck began his analysis by quoting at length from that portion of *Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010), which establishes the legal standard for determining whether a statute violates the Fourteenth Amendment's Equal Protection Clause:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. This language has been interpreted to mean that "all persons similarly circumstanced shall be treated alike. But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (internal quotation marks, alteration, and citation omitted). Furthermore, we must grant substantial latitude to the legislatures "to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Id.* Thus, the Supreme Court has held that – unless the legislature utilizes a classification that is inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right – we exercise only a limited review power over the acts of legislatures.... Under this limited review power, we will uphold forms of state action under the Equal Protection Clause so long as the classification at issue bears some rational relationship to a legitimate state interest. [*Id.*] ... On the other hand, where a suspect class or a fundamental right is at issue in the classification, we apply a more searching form of scrutiny....
>
> Thus, the threshold question for any analysis under the Equal Protection Clause is whether the highly deferential rational basis review applies, or instead whether the legislation involves a suspect class or a fundamental right resulting in the application of a stricter form of scrutiny....

27

> When legislation is reviewed for a rational basis, "courts are quite
> reluctant to overturn governmental action on the ground that it
> denies equal protection of the laws." *Gregory v. Ashcroft*, 501 U.S.
> 452, 470-71, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (internal
> quotation marks omitted). The Supreme Court has stated that
> courts should "not overturn such a [law] unless the varying
> treatment of different groups or persons is so unrelated to the
> achievement of any combination of legitimate purposes that we can
> only conclude that the legislature's actions were irrational." *Vance
> v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

*Adams*, 2010 WL 4742168, at *32-33 (quoting *Hayden*, 594 F.3d at 169-70) (bracketed material

in first paragraph added).

Magistrate Judge Peck next noted that "[w]here rational basis scrutiny applies, the

Government has no obligation to produce evidence, or empirical data to sustain the rationality of

a statutory classification, but rather, can base its statutes on 'rational speculation.'" *Id.* at *33

(internal quotations omitted); *see Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001). "[A]ny

reasonably conceivable state of facts will suffice to satisfy rational basis scrutiny." *Id.*, 252 F.3d

at 582 (internal citations and quotations omitted). "The burden falls to the party attacking the

statute as unconstitutional to negate every conceivable basis which might support it." *Id.*

Magistrate Judge Peck observed that this burden was weighty, stating:

> If the question of a rational basis is "at least debatable," the statute
> survives the rational basis test. *Heller v. Doe*, 509 U.S. at 326, 113
> S.Ct. at 2646. As long as the rational basis test is met, the statute
> will be upheld "even if the law seems unwise or works to the
> disadvantage of a particular group, or if the rationale for it seems
> tenuous." *Romer v. Evans*, 517 U.S. 620, 632, 116 S.Ct. 1620,
> 1627, 134 L.Ed.2d 855 (1996).

*Adams*, 2010 WL 4742168, at *33.

Turning to the specifics of the case before him, Magistrate Judge Peck found that the *Adams* plaintiffs did not, and could not possibly, identify a "suspect class" that the New York Education Law disadvantaged or a "fundamental right" which the law infringed. *Id.* Accordingly, Magistrate Judge Peck applied "the highly deferential rational basis standard." *Id.* After implicitly finding that the Government's argument concerning the enormous size of the DOE relative to every other State school district was sufficient to meet the Government's burden, the magistrate judge examined whether the *Adams* plaintiffs had met their burden of "negat[ing] every conceivable basis" for the law and concluded that they had not. *Id.* Magistrate Judge Peck recommended, therefore, that the plaintiffs' equal protection arguments be dismissed. The recommendation was subsequently adopted by Judge Marrero. *Adams*, 2010 WL 4742168, at *8.

In this action, as in *Adams*, Plaintiffs have not argued that the rational basis standard should not apply to this case. Moreover, Plaintiffs have made no effort to negate defendants' purported basis for legislating different treatment of New York City teachers. Rather, Plaintiffs appear to take the position that the enormous size of the DOE does not constitute a "rational basis" for the disparate treatment of the New York City teachers. *See* Plaintiffs' Reply to Defense Motion to Dismiss ("Plaintiffs' Memo") at 3 n. 2 ("The Defense . . . demonstrates arrogance when it says that it does not have to defend or justify its policies in order to demonstrate 'rational basis'. . . .").

This Court agrees with Magistrate Judge Peck's thorough and well-reasoned analysis. There is nothing to suggest that the legislation at issue in this case "utilizes a classification . . . disadvantages a suspect class . . . or . . . infringes upon the exercise of a fundamental right." *See Hayden*, 594 F.3d at 169, so this Court should employ "the highly deferential rational basis

standard." *See Adams*, 2010 WL 4742168, at \*33. The relative size of the DOE provides a rational basis for the legislation at issue. *Id.* Plaintiffs have not negated this basis. Accordingly, this Court agrees with defendants that any equal protection claims relating to legislative amendments to the New York Education Law should be dismissed.

This Court hastens to note, however, that neither of the two causes of action which allege violations of Plaintiffs' federal due process rights appear to relate to these legislative amendments. Plaintiffs' first cause of action relates solely to the TRCs, which are not legislatively mandated. Moreover, even assuming that they were, the only defendants named in this action – the DOE, its Chancellor and three of its employees – are not responsible for legislative actions.[3]

Similarly, plaintiffs' third cause of action is brought pursuant to 42 U.S.C. § 1983. This section itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994). In order to maintain a § 1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Moreover, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" *Wright v. Smith*, 21 F.3d

---

[3]These defendants are also presumably not responsible for teachers outside of New York City. Accordingly, while Plaintiffs allege that "[n]o teacher outside of New York City awaiting the disposition of disciplinary charges is confined to a rubber room," Complaint at ¶ 74, it is not apparent how Plaintiffs intend to state an equal protection claim against these defendants.

496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Plaintiff cannot base a defendant's liability on *respondeat superior* or on "linkage in the . . . chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

To say the third cause of action is unclear is a generous overstatement. Although it alleges specific constitutional violations, including an equal protection violation, it does not name specific defendants, much less indicate what these defendants did or failed to do that resulted in the constitutional violations. Moreover, as noted above, none of the defendants named in this action can be held personally liable for actions of the State legislature. Accordingly, even assuming *arguendo* that Plaintiff intended to include equal protection claims relating to legislative amendments to the New York Education Law, such claims could not be raised against the named defendants pursuant to 42 U.S.C. § 1983.

### *Mootness*

In addition to arguing that Plaintiffs' complaint fails to state a claim on which relief can be granted, defendants argue that a Letter Agreement between the DOE and the UFT, dated April 15, 2010, "renders moot substantially many of plaintiffs' claims for relief." Defendants' Memo at 14. Defendants submit a copy of this Letter Agreement, *see* Leighton Declaration, Ex. B, and summarize some of the key provisions: *e.g.*, promises (1) to assign all teachers facing disciplinary charges to administrative tasks rather than to TRCs, (2) to bring disciplinary charges no more than 60 days after reassignment or suspension, (3) to initiate disciplinary proceedings within 10 to 15 days of DOE's receipt of a request for a § 3020-a hearing, (4) to complete the hearing within 60 days and (5) to render a decision within 30 days of the final hearing date. Defendants assert that Plaintiffs' complaint "seeks substantially similar relief, such as the

removal of teachers from the TRCs and assignment to 'meaningful, appropriate professional work' . . . and that the § 3020-a disciplinary process comply with the procedural timeframes set forth in the Education Law . . . ." Defendants' Memo at 15. Although they do not allege that this is all of the relief requested in Plaintiffs' complaint, defendants nonetheless argue that the complaint "is rendered moot" by the Letter Agreement and "should be dismissed." *Id.*

This argument has both procedural and substantive flaws. First, as noted above, *see* p. 14, *ante*, materials outside the four corners of the complaint are generally not considered on a motion to dismiss. To be sure, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass*, 987 F.2d at 150. However, the April 15, 2010, Letter Agreement – which postdates the complaint in this action by approximately six months – does not fit in any of these categories.

While this Court could convert defendants' motion into one for summary judgment and afford Plaintiffs a reasonable opportunity to present relevant evidence, *see* Fed. R. Civ. P. 12(d), it would not be fruitful to do so at this juncture. Some portions of Plaintiffs' complaint are so unclear as to make it impossible to determine whether the Letter Agreement renders the entire action moot, as defendants contend, or only moots certain claims. For example, not only are the bases for Plaintiffs' equal protection claims unclear, but Plaintiffs' third cause of action fails to specify which of the five defendants allegedly violated which Plaintiffs' Constitutional rights, which rights were violated, and how each defendant violated those rights. Moreover, this cause of action alludes to violations, such as "[P]ost-hoc rule making" and "[d]enial of per session

32

employment," Complaint at ¶¶ 87-88, which are not even mentioned in the "Factual Allegations" section of the complaint.

Since these and other portions of the complaint are already in need of amendment, this Court will permit Plaintiffs to amend their pleadings before adjudicating the mootness issue. This will afford Plaintiffs the opportunity to review the Letter Agreement in detail and eliminate any claims and requests for relief which have been rendered moot. In addition, Plaintiffs can assess whether they still have standing to seek injunctive relief and whether they wish to attempt to maintain a class action. However, this should not be interpreted as an opportunity to relitigate the due process and First Amendment retaliation claims which have been dismissed by this Memorandum and Order. Only those Plaintiffs, if any, who resigned while in the TRCs or who were accused of "impropriety of a physical or sexual nature" and removed from the payroll without having the opportunity to testify or present witnesses may re-allege due process claims. Only those Plaintiffs identified in Plaintiffs' Memo as Plaintiffs # 5 and # 6 may re-allege First Amendment retaliation. To the extent that other Plaintiffs wish to include these claims in their Amended Complaint for purposes of preserving them for appeal, these Plaintiffs must clearly indicate that these claims are re-alleged merely to preserve appellate rights and should be dismissed pursuant to this Memorandum and Order.

### *Res Judicata and Collateral Estoppel*

In light of this decision to permit Plaintiffs to amend their pleadings, this Court will not address at this juncture defendants' final argument: that the claims by plaintiffs Cruz and Pakter are barred by *res judicata* and collateral estoppel. Defendants may, however, renew this argument and any other argument raised upon this motion to dismiss after Plaintiffs have

amended their pleadings. In addition, defendants may seek permission to move to dismiss the amended pleadings on any other grounds in accordance with Section III.A of this Court's Individual Motion Practices and Rules.

Nonetheless, in anticipation that defendants will renew their *res judicata* and collateral estoppel arguments, this Court will offer additional guidance in the interests of informing the Plaintiffs' decision as to whether their individual actions are viable and in the hopes of obtaining useful briefing. *Res judicata* – also known as "claim preclusion" – and collateral estoppel – also known as "issue preclusion" – are judicially created doctrines that "protect parties from having to relitigate identical claims or issues and . . . promote judicial economy." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998)). Although both *res judicata* and collateral estoppel are affirmative defenses, these defenses "may be brought, under appropriate circumstances, . . . via a motion to dismiss . . . ." *Sassower v. Abrams*, 833 F.Supp. 253, 264 n. 18 (S.D.N.Y.1993).

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738). "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-482 (1982). Rather, "§ 1738 requires a federal court to

look first to state preclusion law in determining the preclusive effects of a state court judgment." *Marrese*, 470 U.S. at 381.

The doctrine of *res judicata*, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). In arguing that the doctrine of *res judicata* precludes plaintiff Cruz from pursuing this action, defendants primarily argue about the preclusive effect of a State court action: *Cruz v. New York City Dep't of Educ.*, New York County Supreme Court Index No. 117004/08. However, in discussing what a party must prove to establish *res judicata*, defendants incorrectly rely on the federal preclusion standard set forth in *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000). To the extent that defendants, despite recent developments in *Adams*, still want to rely on this State court action, they must analyze its preclusive effect under New York State law.

If defendants elect to focus on the preclusive effect of *Adams* in arguing *res judicata*, the parties should focus on the transactions or occurrences underlying the lawsuits. "[T]he fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Id.* "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir.2002) (internal quotation marks omitted).

35

*Res judicata* "is separate from the related doctrine of collateral estoppel, or issue

preclusion, which 'bars a party from relitigating in a second proceeding an issue of fact or law

that was litigated and actually decided in a prior proceeding if that party had a full and fair

opportunity to litigate the issue in the prior proceeding. . . .'" *Monahan*, 214 F.3d at 284, n.5

(quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992)). "Collateral estoppel is

permissible as to a given issue if '(1) the identical issue was raised in a previous proceeding; (2)

the issue was actually litigated and decided in the previous proceeding; (3) the party had a full

and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to

support a valid and final judgment on the merits.'" *Bear, Stearns & Co., Inc., Bear, Stearns*

*Securities Corp., v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (quoting

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation

marks omitted)). As with *res judicata*, "[t]he party asserting collateral estoppel bears the burden

of demonstrating that it is entitled to this relief." *Id.* at 93 (quoting *May Ship Repair Contracting*

*Corp. v. Barge Columbia New York*, 160 F.Supp.2d 594, 599 (S.D.N.Y. 2001)). Accordingly, to

the extent that defendants still wish to raise collateral estoppel, defendants must establish each of

the four factors identified above.

### CONCLUSION

For the reasons set forth above, this Court concludes that Plaintiffs' first cause of action

fails to state a due process claim and that Plaintiffs' second cause of action fails to state a cause

of action as to any of the Plaintiffs. While this Court agrees with defendants that any equal

protection claims relating to legislative amendments to the New York Education Law should be

dismissed, this Court cannot ascertain the basis of Plaintiffs' equal protection claims. Accordingly, it is hereby

**ORDERED** that Plaintiffs shall file amended pleadings within thirty days of the date of this Memorandum and Order. Plaintiffs shall explain the basis for their equal protection claims and, to the extent they wish to allege a cause of action pursuant to 42 U.S.C. § 1983, must specifically allege which defendants violated Plaintiffs' Constitutional rights, what each defendant did to violate those rights, and which Plaintiffs' rights were violated.[4] Only those Plaintiffs, if any, who resigned while in the TRCs or who were accused of "impropriety of a physical or sexual nature" and removed from the payroll without having the opportunity to testify or present witnesses may re-allege due process claims. Only those Plaintiffs identified in Plaintiffs' Memo as Plaintiffs # 5 and # 6 may re-allege First Amendment retaliation. To the extent that other Plaintiffs wish to include these claims in their amended complaint for purposes of preserving them for appeal, these Plaintiffs must clearly indicate that these claims are re-alleged merely to preserve appellate rights and should be dismissed pursuant to this Memorandum and Order. It is further

**ORDERED** that in amending their pleadings, Plaintiffs shall review the April 15, 2010, Letter Agreement between the DOE and the UFT and eliminate any claims and requests for relief which that Letter Agreement has rendered moot. In addition, Plaintiffs shall assess whether they still have standing to seek injunctive relief and whether they still wish to attempt to maintain a

---

[4]Plaintiffs may wish to incorporate the factual allegations contained in Ms. Hochstadt's "Request to submit supplementary brief opposing Motion to Dismiss," dated March 12, 2011. However, as this Court noted in denying that request, *see* p. 13, *ante*, this Court is unclear how those allegations make out an equal protection violation.

class action.[5] All amended pleadings shall be entitled, "Amended Complaint," and shall bear

docket number 09-CV-5167 (SLT) (RLM). If the *pro se* Plaintiffs need any procedural advice

regarding how to amend their pleadings, they may contact the Pro Se Office at this courthouse or

call that office at (718) 613-2165. However, any Plaintiff who fails to file an amended complaint

within the time allowed may be dismissed from this action without further notice. It is also

**ORDERED** that within thirty days of receipt of Plaintiffs' amended pleadings,

defendants shall either move to dismiss those pleadings on any or all of the grounds set forth in

the original motion or seek permission pursuant to Section III.A of this Court's Individual

Motion Practices and Rules to move to dismiss on other or additional grounds. Finally, it is

**ORDERED** that discovery shall continue to be stayed at least until defendants' motions

to dismiss, if any, are resolved. Plaintiff Josefina Cruz's objections to Magistrate Judge Mann's

ruling of March 3, 2011, is denied.

**SO ORDERED.**


/SANDRA L. TOWNES
United States District Judge


Dated: March 28, 2011
        Brooklyn, New York


---

[5]Because it is well-settled that a lay person cannot represent another individual, *see*
*Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d
Cir. 1998), those Plaintiffs who elect to represent themselves cannot be party to a class action.