

*Joy Hochstadt, P.C.*
*Attorneys at Law*
*300 Central Park West*
*New York, New York 10024*

April 26, 2011

The Honorable Sandra L Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 111201

        Re:       Thomas et al v. NYC Dep't. of Education, et al.,
                   Civil Action No. 09 cv 5167 (SLT)(RAM);
                   Request for extension and for change of caption, substitution of parties and addition of new parties.

Dear Judge Townes:

       I am the Counsel to the putative plaintiff class in the above action.

       I hereby request an extension until Monday May 23, 2011 to file my amended complaint and to file with the clerk's office request for change of caption, removing the two parties who do not elect to represent the putative class and substituting other parties who are representative of the allegations that Your Honor has given guidance to the putative class that could be considered if pled with specificity.

       There are also new allegations which have arisen or become prevalent since the original complaint was filed that will be pled with specificity adding plaintiffs with whose facts I am most familiar and who wish to represent fairly and justly the entire class.

       While injunctive action on "rubber rooms" *per se* is no longer as critical in that there are few sites where pedagogues are warehoused in either large numbers or for inordinate periods of time, there is other injunctive relief that is essential and will be pled with specificity in the amended complaint.

       The most serious of these include the unconstitutional delegation of a right to principals by the chancellor that was lost to unconstitutionality in 1975 *viz.* delegating to principals the right to bring charges against any tenured pedagogue in their building they seek to dismiss, said principals are then being supported by the Teacher Performance Unit ("TPU") (see attached) to develop charges against the targeted pedagogue (often charges that might equally be leveled against half the pedagogues in the building–but are only developed against personally targeted pedagogues); calling this process the "finding of probable cause" by the principal when crafted into specifications by TPU

---

attorneys, being rewarded for having done so, by the return of the pedagogue's salary to that principal's school budget, the preparation for trial of that Principal's testimony by the Administrative Trials Unit ("ATU"), thus, investing in that Principal the role of both complaining witness and finder of probable cause. The need for ATU attorneys prosecuting the cases not to be the person to whom the Arbitrator submits time-sheets/fee-requests and arranges for payment, as well as for these Attorneys to stop brow-beating arbitrators to get their way on rulings (and if that is not sufficient they bring in their supervisors to be more authoritative), ergo the need for hearings to be held as far away from TPU and ATU offices as they are from NYSUT counsel's office. At present they are held in the midst of ATU/TPU offices.

The rationale that the ATU gave for justifying principals bringing charges when challenged was that Ed L. 2590 invested in community school boards the right to bring charges and conduct 3020-a proceedings. Further, Ed. L. 2590 invests in the chancellor the powers that are granted to the community school boards. Additionally, Ed. L. 2590 allows delegation of powers by the chancellor to subordinate officers. This, however, overlooks that in 1975 (possibly over the polarization of the Brownsville-Ocean Hill school board at a time when Community School Superintendents appeared a more even handed resource), the provision of Ed. L. 2590 j. 7. that invested in community school boards the power conduct the entire 3020-a process was struck down by the New York Court of Appeals as unconstitutionally broad or vague.

Present counsel went back to the microfiche to find the old Ed. L. 2590 j. 7 to ascertain its provisions. Thereafter, the specific power to bring charges was embodied in a new Ed L. 2590 j 7 which provides for the Community School Superintendents to bring Ed L. 3020-a charges. Ergo this power of the school board to bring charges for NYC was taken away from Community School Boards, though it is the law and the rule in the rest of the state.

When certain School Superintendents in 2007 [those for districts 75 (all solely special ed schools with no general ed students in the district) and district 79 ( alternative high schools designed for at risk students)] refused to rubber stamp principal's requests to bring charges where they saw no probable cause, the Chancellor delegated the power directly to the Principals **in those two districts**, but the memorandum is being offered by the ATU whenever principals in any district bring the charges and it is challenged. Simply the Chancellor does not gain that power from Community School Boards to delegate because that power was specifically removed from Community School Boards in 1975.

I attempted to consult Mr. Leighton to consent to the extension–an auto reply indicates he is on paternity leave, until May 6, 2011. He has always before consented to my requests for extensions on the four cases on which we oppose(d) each other. Certainly, he shall need additional time to respond even if the complaint arrived tomorrow, and with the backlog to catch up with when he returns he shall undoubtedly require a full month to respond if not more. I therefore, request in his behalf that he be given until June 22, 2011 to respond t grant my request for an extension. I also congratulate him on his new child, and consent to a reasonable further extension of 1-2 weeks should he require it.

**Principal: Joy Hochstadt, PhD., JD, Dipl. Amer. Bd. Clin. Chem.,    Telephone  212 580 9930    Facsimile: 212 580 9322**
**Admitted: Federal & State Bars of NJ & NY, 2ⁿᵈ Circuit & U.S. Supreme Court     e-mail  joy.hochstadt.pc@gmail.com**

    There is also the need for immediate injunctive relief to return to AAA selection of arbitrators; to limit the number of cases (or compensation limit) which a single arbitrator may receive from a school district (The City School District of the City of New York being a single school district) as specified and provided for in 3020-a, and the need for all requests for recusal of an arbitrator to go to the AAA committee on recusals and not be self-decided by the arbitrators-themselves who would lose substantial income if the request was granted.

    While all of these practices are widespread, they were not the plaintiffs focus when the original complaint was filed, they must be researched, appropriate plaintiff-representatives selected, and the precedents about full pay while suspended and constructive termination investigated in light of the following considerations:

1. Were other fully paid suspended employees required to report and do nothing?
2. Was the length of time the suspension with pay lasted at all comparable to the tree or more years many pedagogues waited for their trial.
3. Where and under what conditions were the suspended employees assigned?
4. What other opportunities did the suspended employees have for alternative employment with the same pay or only a modest reduction in pay? Once on the ineligible list there are no opportunities at more than a fraction of the pay–as most reassigned/charged teachers were at the top end of the pay scale, suburban districts are seeking entry salary teachers, and the time and cost of commuting to distant suburbs for half the pay even if hired (or hired to independent schools at lower pay or parochial schools at still lower pay) made those with financial obligations face such a horrendous choice, that they endured the unendurable because there was no choice and have had serious psychological sequellae to the years of confinement to the demeaning, pejorative, cramped, conditions.
5. Were the other suspended with pay employee's also suspended from careers that they originally chose for the "work" rather than the "pay" (i.e. were paid less than other entry employees at the time they chose it), for extended period of time.

    In their behalf, I must seek to distinguish the facts and the details of the law applied to their cases, not because those conditions still exist, but because of the severity of their circumstances may be so different from the facts of the other cases that new law, granting them damages for their past injuries may be in order.

                               Respectfully submitted

                               Joy Hochstadt

**Principal: Joy Hochstadt, PhD., JD, Dipl. Amer. Bd. Clin. Chem.,     Telephone  212 580 9930     Facsimile: 212 580 9322**
**Admitted: Federal & State Bars of NJ & NY, 2nd Circuit & U.S. Supreme Court     e-mail  joy.hochstadt.pc@gmail.com**