UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

MARIE ANNE THOMAS, LEVERETT HOLMES,
JOSEFINA CRUZ, BRIAN SALAZAR,
DAVID PAKTER and  PAUL SANTUCCI
      Individually and on behalf of other
      persons similarly situated pedagogues

                                    Plaintiffs,

    - against -

NEW YORK CITY DEPARTMENT OF EDUCATION
      f/k/a Board of Education of the City
      School District of the City of New York;
JOEL I. KLEIN,
      Individually and in his official capacity as Chancellor
      of the City School District of the City of New York;
LAWRENCE BECKER,
      Individually and in his official capacity as Chief
      Executive Officer of the Division of Human Resources;
PHILIP CROWE,
      Individually and in his official capacity as
      Human Resources Director;
JUDITH RIVERA,
      Individually and in her official capacity as
        Deputy Human Resources Director;

                         Defendants.

_____

**AMENDED
COMPLAINT**

**JURY TRIAL
IS DEMANDED**

## NATURE OF THE ACTION

This action [1] is brought because Defendants violated Plaintiffs' rights to freedom of

speech, rights to equal protection, civil rights, rights to freedom from discrimination, rights as

_____

[1]      There have been other actions through which Plaintiff Cruz and other teacher groups or individual teachers, including some of the named plaintiffs, sought to challenge certain conduct by Defendants and others based upon allegations of violation of due process, unlawful retaliation, hostile work environment and other alleged wrongful or unconstitutional acts. However, no complaint has ever been made and there has never been a full adjudication of the issues and claims made or based on the specific allegations and facts as set forth in this complaint.

members of protected groups, rights as disabled persons, property and contract rights, rights to due process. From 2005 to present, Defendants have violated Plaintiffs' rights as guaranteed under the First and Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 & 1983, as well as the Article I., Sections 8 and 11 of the New York State Constitution. Defendants actions were the result of an ongoing scheme to deprive Plaintiffs of these rights and through which Defendants caused Plaintiffs to be charged and forced to go through disciplinary procedures that had been declared unconstitutional, retaliated against for speaking out on issues of public importance, removed from their classrooms and positions, confined in hostile environments, detained for years on end, stripped of their dignity and forced to suffer physical and emotional abuse, and ultimately prosecuted for offenses under rules and regulations that were no valid or in force and pursuant to rules that were constantly being changed without approval or notice to the them. In the end, the teachers were stripped of their property, had their salaries checks randomly reduced or seized entirely and their pension benefits were altered, all without justification and due process.

## JURISDICTION

1. The Court has jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(a) (3) and (4) for the violation of Plaintiffs' federal statutory rights under 42 U.S.C. § 1983 for violation of their U.S. constitutional rights.

2. The Court's has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state claims herein.

## VENUE

3. The principal place of business and offices for NYC Department of Education f/k/a Board of Education of the City School District of the City of New York ("NYC DOE") is 65 Court Street, Brooklyn, New York, and therefore, venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## PLAINTIFFS

4. Plaintiff Josefina Cruz ("Cruz") is and was a tenured NYC Public School teacher who is and was a member of certain protected groups, who resides in the City of New York.

5. Plaintiff Cruz and the other plaintiffs are members of a group of persons who are similarly situated and whose claims are generally similar to one another.

6. Plaintiff Cruz is and was each tenured public school teachers currently or formerly employed by Defendants, capriciously brought up on disciplinary charges after BOE was abolished that were pre-textual, orchestrated, and in some cases perjured and fabricated.

7. Plaintiff Cruz and the others were retaliated against and were improperly and unlawfully removed from their positions, from their schools and confined in Teacher Reassignment Centers ("TRC") for years on end awaiting commencement of the disciplinary process governed by New York State Educational Law §3020-a ("3020-a").

8. Plaintiffs are/were employed [2] by Defendant NYC DOE and were subjected to unconstitutional and wrongful acts by Defendants from 2006 to present.

---

[2]     Those Plaintiffs who were terminated or forced to retire continue to be damaged and to suffer damages from Defendants unconstitutional and unlawful conduct, due to the loss of the property rights, diminished salary and/or pension benefits.

## DEFENDANTS

9.  The NYC DOE is empowered to be the governing body of the District and existing under the laws of the State of New York, and is subject to the provisions of New York State Law, the New York State Constitution and the United States Constitution.

10. At all times relevant to this action, or until Defendants, unlawfully terminated Plaintiff Cruz and other individual Plaintiffs, the NYC DOE had been Plaintiffs' employer within the meaning of employment and contract law.

11. At all times relevant hereto, Defendant Joel I. Klein ("Klein") was the Chancellor of the District at 52 Chambers Street, New York, New York 10007 from 2002 until December 31, 2010 and, as such, is responsible for its operation.

12. At all times relevant hereto, Defendant Lawrence Becker ("Becker"), serves as Chief Executive Officer, Division of Human Resources, and is the highest level individual below the Chancellor responsible for personnel policies. His offices are located at 65 Court Street, Brooklyn, NY, 11201. He has held this position for all relevant times.

13. At all times relevant hereto, Defendant Philip Crowe ("Crowe") is Defendant NYC DOE's Human Resources Director ("HRD") responsible for developing and implementing personnel policies, under the direction of Defendant Becker. Defendant Crowe has offices at 65 Court St., Brooklyn, NY and 333 7th Avenue, NY, NY, 10001.

14. At all times relevant hereto, Defendant Judith Rivera ("Rivera") was the Deputy HRD from 2002 until 2009. Defendant Rivera maintained an office at 333 7th Avenue NY, NY 10001 and is responsible for the "oversight" of "reassigned personnel".

## PLAINTIFF CRUZ's and GROUP CASE ALLEGATIONS

15. Plaintiff Cruz understands that as a pro se plaintiff she cannot bring this as class action under Fed. R. Civ. P. Rules 23. [3] Therefore, Plaintiff Cruz brings this as a group action on behalf of other similarly situated NYC tenured educators who were:

a. Retaliated against by Defendants for their speaking out on matters of public interest;

b. Brought up on NY Education Law §3020-a disciplinary charges;

c. Subjected to disciplinary procedures that should not have been imposed against them based on the nature and date of the charges;

d. Subjected to improper disciplinary procedures that were changed, without notice and approval and an opportunity to be heard;

e. Subjected to hostile work environments;

f. Removed from their class rooms, stripped of their assignments and caused to be confined in facilities that are not similar to the environment and without the support or facilities that is required to be given to them;

g. Pre-Judged and defamed by being declared as unfit to work before the proper and fair adjudication of charges;

h. Deprived of assignments, monies and pension benefits to which they are / were or should have been entitled under their contract; and

i. Were improperly stripped of post retirement or termination benefits, or were charged excessive fees or charges against back salary.

---

[3]   Plaintiff Cruz is in the process of retaining counsel competent to handle the case either for her individually or as group claims.

16. Plaintiff Cruz is among a group that comprises of over 1000 tenured, or once tenured, educators, is so numerous that joinder of all members would be impractical.

17. Questions of law and of fact exist as to all members of the Group are common to and similarly affect the individual Plaintiffs and as to Plaintiff Cruz Among the common questions of law and fact are:

    a.  Was the Defendants' creation and use of Teacher Reassignment Centers a/k/a Rubber Rooms an intentional, knowing or reckless act to deprive and/or violate Plaintiffs' due process, civil and constitutional rights?

    b.  Was the Defendants' creation and use of the Rubber Rooms an attempt to induce constructive termination?

    c.  Did Defendant NYC DOE's transfer and confinement of Plaintiff Cruz and other teacher in Rubber Rooms constitute pre-judging and/or imposition of discipline before proper charges have been filed and adjudicated and in deprivation and/or violation of Plaintiffs' due process, civil and constitutional rights?

    d.  Did Defendant NYC DOE's manner and operation of the Rubber Rooms constitute a "hostile work environment" to which Plaintiff Cruz and other teachers have been wrongfully, improperly and/or negligently subjected ?

    e.  Did Defendant NYC DOE's Rubber Rooms constitute unlawful and/or improper imposition of discipline against Plaintiff Cruz and other teachers before it has been determined that Plaintiff Cruz and other teachers should have been disciplined and/or before Plaintiff Cruz and other teachers were found to have allegedly engaged in any improper conduct or allegedly failed to competently discharge her contractual duties?

f.  Were Defendant NYC DOE's Rubber Rooms used to interfere with Plaintiff Cruz's and other teachers' 1st Amendment Rights or chill her protected speech?

g.  Did Defendants retaliate against Plaintiff Cruz and others teachers for their speaking out on matters of public interest?

h.  Were Plaintiff Cruz and other teachers subjected to disciplinary procedures that should not have been imposed against them based on the nature and date of charges preferred;

i.  Were Plaintiff Cruz and other teachers subjected to improper disciplinary procedures that were changed, without notice and approval and an opportunity to be heard?

j.  Were Plaintiff Cruz and other teachers subjected to hostile work environments?

k.  Were Plaintiff Cruz and other teachers removed from classrooms, stripped of assignments, confined in facilities that were not similar to the environment and without the support or facilities that were required to be given to them?

l.  Was Plaintiff Cruz and were other teachers pre-judged and defamed by being declared as unfit to work before the proper and fair adjudication of charges?

m.  Were Plaintiff Cruz and other teachers deprived of assignments, monies and pension benefits to which they were entitled under their contract?

n.  Were Plaintiff Cruz and other teachers improperly stripped of post retirement or termination benefits, or charged excessive fees or charges against back salary?

18. Plaintiff Cruz's claims are similar to the claims the other group members.

19. Plaintiff Cruz can fairly and adequately represent and protect the interests of the group if the action proceeds as a group claim.

20. Plaintiff Cruz has no disputes with other potential members of the group.

21. Prosecution of separate actions by individual group members could result in inconsistent adjudications, which could establish incompatible standards for conduct of Defendants.

22. Adjudication of Plaintiff Cruz's claims might as, a practical matter, be dispositive of interests or be helpful toward the future disposition of similar claims.

23. Plaintiff Cruz believes a group action might be superior to other available methods for the fair and efficient adjudication of claims of teachers who have similar claims to her.

## FACTUAL ALLEGATIONS

24. In 1969, the Legislature passed Education Law §2590-J, et seq. specifically intended to govern the DOE. 09-cv-5697-LT-RLM, D.E. 58. Subdivision (7) (b) provided that community superintendents could initiate charges against teachers (it does not explicitly state that community superintendents could *file* charges against teachers, but paragraphs [c] and [d] imply that community superintendents could file such charges).

25. By the mid-seventies, the Collective Bargaining Agreement ("CBA") Subdivision (7) (b) was challenged and declared unconstitutional.

26. In 1994, modifications were made to New York State Education Law §3020-a governing discipline of tenured teachers.

27. These modifications provided for a contractual alternative procedure that altered the procedures for selection of hearing officers to conduct the § 3020-a hearings. And, only disputes arising from tenured teacher discipline had originally been resolved through arbitration, requiring that a Collective Bargaining Agreement ("CBA") authorize the board to enter into such agreement.

8

28. The 1994 amendments provided that the hearings had to follow the procedures outlined in §3020-a (3)(c), specifically with regards to timing requirements that are absolute and objective, procedural and jurisdictional in nature, and hearing officers were to be paid a maximum of $200 per diem to eliminate even the appearance of financial influence.

29. Until 2006, New York had one of the most restrictive state laws for initiating disciplinary proceedings against teachers (incompetent or not),

30. Defendant NYC DOE pushed for and passed Education Law §3020-a without public hearings.

31. In 2002, Defendants entered into a new Memorandum of Agreement ("2002 MOA") (similar to the April 2010 Agreement on which Defendant now relies) related to Teacher Discipline.

32. After the above dissolution of the NYC BOE, Defendant NYC DOE did not have jurisdiction or legal authority to charge teachers between July 2002 and August 13, 2006, like they charged Plaintiff Cruz

33. From October 2005 forward, Defendant NYC DOE continued to implement disciplinary procedures (including Subdivision (7) (b) of Education Law §2590-j) that had been ruled unconstitutional in 1975.

34. From 2005 forward, Defendant NYC DOE failed to comply with the certain expedited procedures for grievances filed by teachers such as Plaintiff Cruz.

35. During the November 2005 contract negotiations, Defendant NYC DOE implemented terms for disciplining of teachers like Plaintiff Cruz and others, included provisions that Plaintiff Cruz and others were to be deprived of certain disciplinary procedures without an opportunity to be heard or vote on the

9

proposed changes and they were to be deprived of the expedited grievance procedures. [4]

36. In so doing, from 2005 forward, Defendant NYC DOE knowingly, negligently and with malice, sought to and did deprive Plaintiff Cruz and other teachers of their rights by implementing disciplinary rules and procedures that were ruled unconstitutional in 1975 in cases that Defendant NYC DOE knew explained that discipline (such as discipline of Plaintiff Cruz and other teachers) could not be the subject of collective bargaining under the Taylor Law.

37. From 2005 forward, Defendant NYC DOE sought to and did implement additional procedures that violated the subdivision (1) of Education Law §3020, by among other things, failing or refusing to provide Plaintiff Cruz and other teachers with notice or an opportunity to be heard, and without written election related to the proposed changes to the disciplinary procedures.

38. From August 2006 forward, DOE Chancellor assumed (albeit improperly) that he had authority to exercise the right to charge teachers under Education Law §3020-a and then delegated this right to community superintendents.

39. That 2006 exercise of authority and the charging of teachers, like Plaintiff Cruz, violated the 1975 NYS Supreme Court decision already mentioned, because only the Legislature can enact laws that grant this jurisdiction.

---

[4] The exact terms demanded and implemented by Defendant NYC DOE in the CBA were: "The above terms shall be followed in conjunction with the already established terms of the current law under the New York State Education Law, Section 3020-a. The parties agree to *support legislation jointly to amend Section 3020 of the Education Law* to provide that the procedures incorporated in the parties collective bargaining agreement, shall constitute binding alternative disciplinary procedures _without written election_ by UFT-represented employees covered by 3020-a . . . and . . . "The expedited procedures negotiated by the parties for class size and reorganization grievances *shall not be implemented* until the above amendment to Section 3020 of the Education Law is enacted." Emphasis added.

40. The Panel for Educational Policy (PEP) that replaced the NYC Board of Education in 2002 received no authority or influence on disciplining tenured teachers.

41. Since 2002, the DOE has used techniques and procedures through which teachers like Plaintiff Cruz were removed to Rubber Rooms and disciplined, as part of an ongoing pattern of anti-tenure amendments to Education Law §3020 (subdivision [4][a][iii]).

42. Since 2002, Defendant NYC DOE modified teacher discipline procedures set forth in Education Law §3020-a* and used procedures taken from subdivision (7) of Education Law §2590-J (which had been ruled unconstitutional in 1975) to make said modified procedures "binding alternative disciplinary procedures without written election by UFT-represented employees covered by 3020-a."

43. From 2002 forward, Plaintiff Cruz and other teachers were not given public notice or an opportunity to object or vote on these proposed changes that affected their lives, jobs, property and "freedoms".

44. Defendant NYC DOE knew the disciplinary procedures they implemented in 2005 & 2006, were not permitted by the CBA which provided *"any provision of this Agreement requiring legislative action to permit its implementation by amendment of law or by providing the additional funds therefore, shall not become effective until the appropriate legislative body has given approval."* The 2005 CBA was altered *a posteriori* with Defendants' knowledge that the alterations violated Plaintiff Cruz's and other teachers' rights related to discipline.

45. Defendant NYC DOE knew that both the 2005 CBA and the amendment to Education Law §3020 (subdivision [4][a][iii]) only became effective on August 13, 2006.

46. From 2002 to 2006, if Defendants sought to discipline plaintiffs and other teachers, the disciplinary procedures and hearing process was to be carried out in accordance with NYS Educ. Law § 3020-a.

47. From 2002 to 2006, tenured teacher against whom Defendants sought to file charges based on alleged disciplinary violations, were given the choice of arbitrators as opposed to a fixed panel of arbitrators.

48. From 2002 to 2006, NYS Educ. Law § 3020-a gave plaintiffs and other tenured teachers the right to arbitration before an arbitrator who was selected by them and Defendants in accordance with the rules of the American Arbitration Association.

49. The CBA that was in effect at the time plaintiffs and other teachers were charged did not provide for a fixed panel of arbitrators.

50. In 2003, plaintiffs' CBA expired.

51. From 2003 to 2006, plaintiffs union and Defendants negotiated the extension of and potential new terms for the CBA.

52. In 2005, plaintiffs were notified of and were to vote on the new terms for the CBA.

53. Plaintiff Cruz and other teachers were never notified that Defendants sought to modify the procedures through which tenured teachers were to be disciplined.

54. Prior to their voting on the proposed new terms for the CBA, Plaintiff Cruz and other teachers did not know that Defendants intended to change the terms and rules pursuant which Plaintiff Cruz and other tenured teachers were to be disciplined, by adding Sections 21 g (2), (3), (4), (5), (8), (9) & (10). Plaintiff Cruz and other teachers did not know that Defendants would alter the terms that they were asked approve.

55. Plaintiff Cruz and other teachers did not vote for and did not approve the changes to the terms and rules pursuant to which they and other tenured teachers were to be disciplined,

by adding Sections 21 g (2), (3), (4), (5), (8), (9) & (10), without Plaintiff Cruz and other teachers knowledge or approval,

56. In early 2005 and 2006, Plaintiff Cruz and other teachers spoke out about issues of public importance, including but not limited to NYC public school officials violating NYS regulations regarding the administration of Regent's Exams in an effort to artificially inflate NYC public school scores, the manner in which NYC tenured teachers were being singled out for termination, rebutting and grieving unfair, inaccurate and retaliatory rating practices for observation of lessons, annual professional performance, and accusations of verbal and corporal punishment, as well as the manner in which NYC public school students were being deprived of equal access to quality education and disenfranchised, the manner in which disabled teachers or teachers from protected groups were being discriminated against, the manner in which public funds for education were being wasted, the abuses and horrific conditions in the NYC public school systems, the cronyism or nepotism or favoritism or corruption of or by superintendents or principals or assistant principals and other conduct and practices that affected the quality and education of and in NYC public schools.

57. As a result of the speaking out on the matters of public importance or their status as tenured teachers, Plaintiff Cruz and other teachers were singled out and targeted.

58. From 2006 forward, Plaintiff Cruz and other teachers were falsely charged or accused as being incompetent, or insubordinate, or having engaged in improper sexual or corporal acts, or otherwise unfit for service as teachers.

59. From 2006 forward, Plaintiff Cruz and other teachers and others were removed from the classrooms and their teaching positions and confined in temporary reassignment centers a/k/a Rubber Rooms.

60. From 2006 forward, Plaintiff Cruz and other teachers were kept in the Rubber Rooms until such time as they were fed up with the system and quit, or were forced to retire or could be terminated or fined in the disciplinary hearings that were conducted using procedures that were not approved or in existence at the time of or applicable to the periods when they were charged.

61. From 2006 forward, Plaintiff Cruz and other teachers were subjected to discipline that was negotiated in collective bargaining in violation of the Taylor Law as was known and applied in New York City.

62. In early 2006, Plaintiff Cruz and other teachers were charged and accused of alleged violations for which Defendants sought to impose discipline against her.

63. At the time in 2006 when charges were proffered against Plaintiff Cruz and other teachers, Defendants singled out Plaintiff Cruz and other teachers to receive punishment that was disproportionate to the alleged offenses while they sought to protect and favor assistant principals who had engaged in serious acts of sexual and physical misconduct.

64. In early 2006, the rules and procedures governing discipline or Plaintiff Cruz and other teachers provided for her to be entitled to choose an arbitrator from a list provided by the American Arbitration Association.

65. As of August 2006, the New York City Board of Education had long been abolished and teachers' employer became the Defendant New York City Department of Education ("NYC DOE").

66. As of August 2006, Defendant NYC DOE created the Panel for Education Policy ("PEP") which was improperly empowered with procedures that violated and/or were contradictory to NYS Educ. Law 3020-a and which in part was charged with and responsible for implementing discipline of tenured teachers.

14

67. In 2006, Defendant the NYC DOE was under the control of NYC Mayor.

68. In 2006, Defendant NYC DOE sought to and did in fact amend the NYS Education Law relative to the discipline of NYC tenured teachers.

69. The 2006 amendments to NYS Educ. Law §3020-a eliminated the entitlements that Plaintiff Cruz and others enjoyed.

70. In 2006, the CBA was modified to allow disciplinary hearings to be conducted by members of an arbitration panel compensated beyond the payments authorized by the tenure hearing statute.

71. The modification to the CBA and the changes to NYS Educ. Law § 3020-a as related to disciplinary procedures to be followed related to NYC tenured teachers only became effective on August 13, 2006.

72. Prior to the filing of the charges and allegations against Plaintiff Cruz and others, the NYS Legislature had never granted the PEP the power to lodge or determine §3020-a charges against NYC teachers.

73. Notwithstanding this fact, PEP started to charge and sought to impose discipline against teachers, including Plaintiff Cruz and others.

74. Article 21G (1)-(10) of the CBA modified the procedures through which Plaintiff Cruz and other teachers were to be disciplined by Defendants.

75. Article 21G (2), (3), (4), (5), (8), (9) & (10) of the CBA was not part of the CBA disclosed to Plaintiff and others and which were published for Plaintiff's consideration.

76. The procedures set forth in Article 21G (1)-(10) of the CBA were not part of the notification given to Plaintiff Cruz and others when they voted on the new CBA in 2005.

77. When Plaintiff Cruz and others approved the new CBA on or around October 28, 2005, Article 21G (2), (3), (4), (5), (8), (9) & (10) of the CBA was not part of the CBA.

78. Article 21G (2), (3), (4), (5), (8), (9) & (10) of the CBA was part of a modification to the CBA that was made or about November 28, 2005 without notice to Plaintiff Cruz or other teachers. [5]

79. The disciplinary procedures through which Plaintiff Cruz and other teachers could be disciplined was changed, and memorialized in minutes of a meeting that took place on November 28, 2005, between Plaintiff Cruz's union and Defendant NYC DOE, without notice, vote and/or an opportunity to be heard.

80. The changes to the procedures through which Plaintiff Cruz and other teachers could be disciplined as set forth in the minutes of a meeting that took place on November 28, 1005 but did not become effective until late August 2006.

81. And on that day, Defendants added the paragraphs Article 21G (2), (3), (4), (5), (8), (9) & (10) of the CBA, without Plaintiff Cruz knowledge or consent.

82. At the time Plaintiff Cruz was charged in June 2006 and others were charged she was and they were entitled, under NYS Educ. Law §3020-a to have a say in the selection of the hearing officer who conducts his/her/their disciplinary hearing.

83. Contrary to their rights under NYS Educ. Law. § 3020a, Defendant NYC DOE imposed an employee partisan panelist list of arbitrators.

84. From 2006 to present, the rules and procedures through which Plaintiff Cruz and other teachers were charged, removed from their classrooms, confined in Rubber Rooms and

---

[5] After Plaintiff and others mailed their ballots to AAA, on or about November 28, 2005, the CBA was altered to include subdivisions (2), (3), (4), (5), (8), (9) and (10) of Article 21G negotiated on that date as "Appendix C". When published, Article 21G changed the way NYC teachers are disciplined, providing that "[t]enured teachers facing disciplinary charges [...] will be subject to Section 3020-a of the Education Law as modified by paragraphs 1-10 below". CBA, at 113. The entitlements to which Plaintiff Cruz and other NYC teachers were entitled as set forth in NYS Education Law §3020-a were eliminated, without written notice or election.

disciplined were repeatedly changed without full disclosure, legislative consideration, votes or public notice.

85. By way of example, amendments to NYS Education Laws related to NYC tenured teacher discipline were enacted on August 8, 2009 and April 23, 2010; bills were introduced in the Legislature as follows: A08338 (Assembly) on May 15, 2009 and S07224 (Senate) *on March 24, 2010.

86. Since late August 2006, Plaintiff Cruz and other teachers in NYC are and have been subjected to discipline differently than teachers elsewhere in the state.

87. Since late June, July and/or August 2006, Plaintiff Cruz and others have received reassignment papers announcing that (PEP) would determine §3020-a cases and fix the penalty, if any was to be imposed.

88. From July 2002 to the present, Defendants concealed the fact that the NYS Legislature had not granted PEP or Defendants the authority or jurisdiction to charge NYC teachers pursuant to §3020-a.

89. From August 2006 to present, Plaintiff Cruz and other NYC teachers were not informed of the continual changes to the procedures through which they would be charged and disciplined.

90. From August 2006 to present, when charged, Defendant NYC DOE and its employees misled Plaintiff Cruz and others NYC teachers about their rights and notified them of the wrong or false procedures that would govern their disciplinary hearings. [6]

---

[6]    At the time Plaintiff Cruz was and others were charged, NYC DOE employee, then superintendent Elaine Gorman, made reckless and false statements designed to mislead and confuse Plaintiff Cruz and others about her / their rights.

91. From August 2006 to present, Plaintiff Cruz and other NYC tenured teachers, were not disciplined in accordance with the procedures set forth in NYS Educ. Law § 3020-a or with alternative procedures contained in the collective bargaining agreement in force at the time of the charges and alleged violations were proffered. In particular, Defendants' violated and/or misapplied the applicable provisions of subdivisions (4)(A)(iii) of NYS Educ. Law 3020, and standards set by other Courts related to discipline of public employees, by eliminating certain rights and entitlements that were to be afforded Plaintiff Cruz and others.

92. From August 2006 to present, Plaintiff Cruz and other NYC tenured teachers spoke out against, complained about and sought to challenge Defendants use of the Rubber Rooms and the disciplinary procedures to which they were subjected.

93. From August 2006 to present, in response to the challenges made by Plaintiff Cruz and other NYC tenured teachers about Defendants use of the Rubber Rooms and the disciplinary procedures to which they were subjected, Defendants retaliated against Plaintiff Cruz.

94. From August 2006 to present, Plaintiff Cruz and other NYC tenured teachers were subjected to confinement, punishment and discipline that was not authorized by provisions set forth in NYS Educ. Law § 3020a for all NY tenured teachers, that were in force and to be applied at the time, that were not authorized by the CBA governing the subject period and which violated Plaintiff Cruz' due process, property, civil and contractual rights.

95. From August 2006 to present, Defendants made knowing misrepresentations about the rights to which Plaintiff Cruz and other NYC tenured teachers were

entitled, the use of Rubber Rooms, the punishment to which they were subjected and the appropriate discipline to be imposed pursuant to the particular provisions of NYS Educ. Law § 3020a in effect at the time they were charged, or as authorized by the CBA governing the period when they were charged.

96. In April 2010, Defendants admitted that many of the allegations made by Plaintiff Cruz and others, including those related to the conditions in and use of the Rubber Rooms, and the problems with the disciplinary hearings to which they were subjected. Among other things, Defendants admitted [7] to their violations of NYS Educ. Law § 3020-a, including but not limited to violations of timing requirements, failure of the arbitrators to comply with authority given to them and other problems.

97. From August 2006 to present, the arbitrators conducting the disciplinary hearings to which Plaintiff Cruz and other NYC teachers were subjected, are paid per diem compensation beyond that authorized by tenure hearing statute. As a result, Plaintiff Cruz and other NYC teachers were subjected to lengthy and drawn out hearings – often lasting for years at a time – through which the arbitrators made hundreds of thousands of dollars as a direct result of their delaying the hearings and through which Plaintiff Cruz and other NYC teachers were subjected to lengthy and unreasonable confinement in Rubber Rooms and forced to retire, quit or in the end be terminated.

98. From August 2006 to present, Plaintiff Cruz and other NYC tenured teachers were subjected to disciplinary hearings before arbitrators were not independent of Defendant NYC DOE.

---

[7]     The admissions were set forth in an April 15, 2010 Letter Agreement between former Chancellor Klein and NYC DOE.

99. At the time charges were preferred against Plaintiff Cruz, she was to be afforded the protections of the provisions that were in effect prior to the 2006 Amendments to the CBA and the 2006 Amendments to NYS Educ. Law § 3020 .

100.    Defendants knew that NYS Educ. Law 3020 (4) (a)(ii) applied to Plaintiff Cruz and that her charges and discipline to be applied as related to her charges was governed by the Old CBA and NOT the modified CBA or the amendments to NYS Educ. Law § 3020 that went into effect in Aug. 2006.

101.    In pertinent part, NYS Educ. Law 3020 (4) states:

> *§ 3020. Discipline of teachers*
>
> *1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment that was effective on or before September first, nineteen hundred ninety-four and has been unaltered by renegotiation, or in accordance with alternative disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment that becomes effective on or after September first, nineteen hundred ninety-four; provided, however, that any such alternate disciplinary procedures contained in a collective bargaining agreement that becomes effective on or after September first, nineteen hundred ninety-four, must provide for the written election by the employee of either the procedures specified in such section three thousand twenty-a or the alternative disciplinary procedures contained in the collective bargaining agreement and must result in a disposition of the disciplinary charge within the amount of time allowed therefore under such section three thousand twenty-a; and provided further that any alternate disciplinary procedures contained in a collective bargaining agreement that becomes effective on or after July first, two thousand ten shall provide for an expedited hearing process before a single hearing officer in accordance with subparagraph (i-a) of paragraph c of subdivision three of section three thousand twenty-a of this article in cases in which charges of incompetence are brought based solely upon an allegation of a pattern of ineffective teaching or performance as defined in section three thousand twelve-c of this article and shall provide that such a pattern*

*of ineffective teaching or performance shall constitute very significant evidence of incompetence which may form the basis for just cause removal.*

*4. a. Notwithstanding any inconsistent provision of law, the procedures set forth in section three thousand twenty-a of this article and subdivision seven of section twenty-five hundred ninety-j of this chapter may be modified by agreements negotiated between the city school district of the city of New York and any employee organization representing employees or titles that are or were covered by any memorandum of agreement executed by such city school district and the united federation of teachers on or after June tenth, two thousand two. Where such procedures are so modified: (i) compliance with such modified procedures shall satisfy any provision of this chapter that requires compliance with section three thousand twenty-a of this article; **(ii) any employee against whom charges have been preferred prior to the effective date of such modification shall continue to be subject to the provisions of such section as in effect on the date such charges were preferred;** (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision, except that no person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause; and (iv) in accordance with paragraph (e) of subdivision one of section two hundred nine-a of the civil service law, such modified procedures contained in an agreement negotiated pursuant to this subdivision shall continue as terms of such agreement after its expiration until a new agreement is negotiated; and provided further that any alternate disciplinary procedures contained in a collective bargaining agreement that becomes effective on or after July first, two thousand ten shall provide for an expedited hearing process before a single hearing officer*

102.    Defendants knowingly violated Plaintiff Cruz's rights by subjecting her to disciplinary procedures that they knew or should have know violated NYS Educ. Law § 3020 (4)(a)(ii).

103.    From the time Defendants preferred charges against Plaintiff Cruz in 2006 until the present, Defendants and their representatives have concealed the truth and sought to mislead the Court and others about the disciplinary procedures and the rights that should have been given to but which in fact were withheld from Plaintiff Cruz.

104.    From the time Defendants preferred charges against Plaintiff Cruz in 2006 until

21

the present, Defendants and their representatives have induced others to submit false or misleading statements and evidence related to what are the appropriate disciplinary procedures and rights that should have been given to Plaintiff Cruz, pursuant to NYS Educ. Law § 3020 (4)(a)(ii).

105.     As a direct result of the repeated and constant changes to the disciplinary procedures and the years of confinement in the Rubber Rooms, Plaintiff Cruz and others suffered monetary, physical and emotional damages, resulting from, among other things (i) years of confinement in hostile work environments, (ii) improper and unauthorized removal from their classrooms, (iii) silencing or stifling or chilling of their rights to freedom of speech, (iv) being stripped or deprived of salary benefits, (v) loss of their teaching licenses, (vi) permanent blemishes on their careers and reputations, and (vii) loss of pension benefits.

106.     In addition, as part of the ongoing retaliation, during the confinement in the Rubber Rooms, Plaintiff Cruz and others were precluded from receiving coverage wages (similar to substitute teachers salaries), without an opportunity to be heard.

107.     In addition, as part of the ongoing retaliation, during the confinement in the Rubber Rooms, Plaintiff Cruz and others were placed on an "Ineligible List" through which they were defamed, libeled or slandered in their profession and prevented from getting alternate employment and to escape from the Rubber Room, with their licenses, their dignity, their honor, their property and their property rights intact.

108.     In addition, as part of the ongoing retaliation, even after termination or retirement, Defendants singled out Plaintiff Cruz and others and made retroactive assessments to improperly deduct monies from their monthly pension benefits or to strip them of insurance or to implement unilateral deductions or to make other improper assessments

through which Plaintiff Cruz was stripped of her monies and property, without notice or an opportunity to be heard.

109.     After a January 15, 2008 announcement, the Human Resources supervisor in charge of the rubber room, Judith Rivera had Plaintiff Cruz's pay checks docked for official business, such as attending the pre-hearing and a grievance hearing.

110.     Defendants did not give Plaintiff Cruz and others their Annual Professional Performance Review (with important personnel information) during the period when in the Rubber Room or when terminated, as was required by the Defendant's standard accounting practices.

111.     As a result, Defendants improperly caused the improper assessment of fractional absences in reassigned teachers' time sheets months after separation of service NYC DOE's Division of Financial Operations' Billing Unit charged her thousands of dollars for fractional absences.

112.     The decision to NOT give Plaintiff Cruz and others the required APPR was so that Defendants could deprive them of salary, pension and other benefits through the manipulation of attendance records, sick days, years of tenure, salary increases and other matters relevant to their standing, employment and retirement benefits, both short and long term.

113.     As a result of this practice, Defendant NYC DOE caused Plaintiff Cruz to lose, among other things, the following (i) 2 months salary in excess of $12,000, payable upon her receipt of the termination notice; (ii) Summer pay (also known as prior earnings from Sept. to Dec. 2008 ) in excess of $ 5,000; (iii) Illegal garnishment and reversal of direct deposit monies equal to her December 15 and 31, 2008 salary checks in excess of $

6,000; and (iv) Improper deductions of monies for absences connected to official business, including attendance at mandatory disciplinary hearings.

114.     Similarly, when Plaintiff Cruz was terminated in December 2008, she received no 60-day notice or termination pay, direct deposit salary payments made to her account on December 15 and 31, 2008 were reversed without a Direct Deposit Reversal Authorization Form signed by her, and the Amount Earned Prior Period (September to December 2008) by her was decreased by more than 40 or 50 percent, so her July and August 2009 summer pay was significantly decreased and then garnished.

115.     Defendant used information that it knew was inaccurate to calculate Plaintiff Cruz's retirement allowance amounts as a further effort to harass and retaliate against Plaintiff Cruz through an improper reduction of her retirement benefits.

116.     Defendants retaliated against Plaintiff Cruz and others for their participation in federal lawsuits and other protected activities from 2006 to 2008, which included proceeding with an ex-parte 3020-a hearing after the union attorney withdrew in the middle of the hearing.

117.     Defendant wrongfully demanded and forced the 3020-a hearing against Plaintiff Cruz to be conducted on an ex-parte.

118.     Defendants' insistence upon conducting the 3020-a hearing against Plaintiff Cruz on an ex-parte basis was improper and instead they should have remanded the matter to the School Board (as opposed to PEP) for determination of the case and fix the penalty, as if Plaintiff Cruz had never requested the hearing.

119.     Defendants deprived Plaintiff Cruz and other teachers of assistance of counsel, forced the arbitrators to conduct disciplinary hearings when Plaintiff Cruz and others were without counsel and engaged in other wrongful conduct.

120.     Defendants violated the rights of Plaintiff Cruz and other teachers related to disciplinary hearings.

121.     Had Plaintiff Cruz been given her rights under Subdivision (2)(d) of Education Law §3020-a, subdivision (e) of sub part 82-1.5, and had the Panel for Education Policy determined Plaintiff Cruz's case and fixed the penalty or punishment, if any, was to be imposed, Plaintiff Cruz would have been entitled to broader review and greater rights under Art. 78 of the CPLR 90.

122.     Defendants' refusal to stop the 3020a hearing and insistence on pushing Plaintiff Cruz's hearing forward, while she was without counsel, violated her rights.

123.     Defendants improperly demanded that the hearing officer continue with Plaintiff Cruz's hearing and bribed or enticed the Arbitrator to do so, in violation of Plaintiff Cruz's rights, by agreeing to pay even more money than they were required to pay to the arbitrator.

124.     Defendants' retaliatory conduct caused Plaintiff Cruz to be wrongly terminated.

125.     Defendants' retaliation did not stop with Plaintiff Cruz's December 2008 termination but has continued by their use of improper accounting practices, and harassment with fraudulent invoices, garnishments and threats of legal action.

126.     From 2006 to present, Defendants conspired to commit fraud in order to (i) deprive Plaintiff Cruz of her constitutional and contractual rights, (ii) mislead Plaintiff Cruz and others into believing she/they had no rights, (iii) continue a knowing or negligent use of procedures related to her placement and confinement in the Rubber Room and improper discipline imposed on her, with procedures that were already declared unconstitutional, (iv) deceive her and the Court, and (v) conceal facts related to other valid causes of action.

127.     From 2002 to present, Defendant NYC DOE used techniques and procedures through which Plaintiff Cruz and other teachers were removed to Rubber Rooms and disciplined, as part of an ongoing pattern of anti-tenure amendments to Education Law §3020 (to subdivision [4][a][iii]).

128.     From 2002 to present, Defendant NYC DOE modified teacher discipline procedures set forth in Education Law §3020-a* and used procedures taken from subdivision (7) of Education Law §2590-J (which had been ruled unconstitutional in 1975) to make said modified procedures "binding alternative disciplinary procedures without written election by UFT-represented employees covered by 3020-a."

129.     From 2002 to present, as a result of Defendant NYC DOE's actions, Plaintiff Cruz and other teachers, were improperly charged, improperly disciplined and improperly reassigned in rubber rooms where they were left to languish for years.

130.     From 2002 to present, Defendants misled Plaintiff Cruz and other teachers about the disciplinary procedures that were applicable to them.

131.     From 2002, to present, Plaintiff Cruz and other teachers were members of protected groups (ethnic, minority and age) who were targeted for termination, pulled from their classrooms and confined in Rubber Rooms.

132.     From 2006 to 2008, the status Plaintiff Cruz and other teachers were changed without notice and without their consent to being on "leave" and with full salary and benefits.

133.     In 2010, Defendant NYC DOE admitted [8], among other things, that:

---

[8]     The admission is in the April 15, 2010 Letter of Agreement between Defendant NYC DOE and Plaintiff Cruz's union, which has been provided to the Court and which is incorporated by reference.

26

a. Defendant NYC DOE did NOT follow or comply with the requirements of Education Law §3020-a hearings regarding the conduct of the disciplinary hearings related to Plaintiff Cruz and others;

b. Defendant NYC DOE has assumed authority to reassign teachers facing §3020-a charges in rubber rooms and in so doing violated the statutory procedures;

c. Defendant NYC DOE engaged in misconduct, bias, excess of power and procedural defects;

d. Defendant NYC DOE Arbitrators – including the Arbitrator who conducted Plaintiff Cruz's hearing after two years - failed to commence and complete expedited hearings within the time periods prescribed by NYS Educ. Law § 3020-a;

e. Defendant NYC DOE's disciplining of teachers and reassignment of teachers, like Plaintiff Cruz, to Rubber Rooms was in violation of our contract rights of NYC teachers and NYS Educ. Law. § 3020-a;

f. Defendant NYC DOE's conduct caused the lengthy delays and violations of rights for teachers, like Plaintiff Cruz, in violation of their constitutional, contract and procedural due process rights.

134.    In 2010, Defendant NYC DOE admitted that it mismanaged the disciplinary process and system and failed to comply with the stringent due process requirements and time limitations under NYS Educ. Law § 3020-a related to the disciplinary process to which Plaintiff Cruz and other teachers were entitled.

27

135.    From 2006 to 2010, rather than addressing the problems that Defendant NYC DOE knew existed, and rather than ensuring that the constitutional and contractual rights were preserved and complied with, Defendant NYC DOE implemented procedures through which they sought to get rid of Plaintiff Cruz and other teachers by first subjecting them to length Rubber Room confinements and then forcing them to go to ex parte hearings before arbitrators who were not independent of Complainants (the Defendants) and that were paid exclusively by Defendant NYC DOE, and hearings where Plaintiff Cruz was without counsel.

## FIRST CLAIM - 1st AMENDMENT RETALIATION

136.    Plaintiff Cruz repeats and realleges each and every allegation contained in paragraphs 24 through 135 above with the same force and effect as though fully set forth herein.

137.    Speech by Plaintiff Cruz and other teachers directed publicly and to others within the Defendant NYC DOE, was and is entitled to protection under the 1st Amendment to the U.S. Constitution.

138.    As part of their protected speech, Plaintiff Cruz and other teachers spoke out about matters of public interest including, among other things, issues related to the NYC public school system, the quality of education being provided to NYC public school students, the administration of NYS Regents examinations, the rights of tenured teachers, the improper use of Rubber Rooms and other matters.

139.    In response to Plaintiff Cruz and other teachers speaking out on the above matters on public interest, Defendants sought to silence them by, among other things, (i) initiating

false disciplinary charges, (ii) defaming them by placing them on Ineligible Lists , (iii) interfering with their property rights and their ability to work in alternate employment, (iv) removing them from their positions and classrooms, (v) confining them in Rubber Rooms and depriving them of or delaying timely disciplinary hearings through which they could clear their names, (vi) interfering with their salary, pension and other benefits and (vii) imposing excessive charges against their salary and other benefits.

140.    Defendants conduct violated Plaintiff Cruz and other teachers' rights to freedom of speech.

141.    As a direct and proximate result of Defendants' violations of Plaintiffs 1st Amendment rights and unlawful retaliation, Plaintiffs suffered immediate, severe and irreparable harm and damages.


## SECOND CLAIM - DUE PROCESS VIOLATIONS

142.    Plaintiff Cruz repeats and realleges each and every allegation contained in paragraphs 24 through 135 above with the same force and effect as though fully set forth herein.

143.    Plaintiff Cruz and other teachers were entitled to protection under the 14th Amendment to the U.S. Constitution and 42 USC § 1983.

144.    Defendants subjected and/or caused Plaintiff Cruz and other teachers to be subjected to deprivation of their rights, privileges and protections.

145.    Defendants deprived Plaintiff Cruz and other teachers of their rights.

146.    As a direct and proximate result of Defendants' violation of Plaintiff Cruz's rights, Plaintiff Cruz and other suffered financial, physical and emotional damages.

29

## THIRD CLAIM - DEFAMATION

147.     Plaintiff Cruz repeats and realleges each and every allegation contained in paragraphs 24 through 135 above with the same force and effect as though fully set forth herein.

148.     From 2005 to present, Defendants published or caused to be published statements that Plaintiff Cruz was "incompetent", "insubordinate", "failed to comply" with instructions of superiors, malingerer, and "unfit" to serve as a teacher.

149.     The statements published or caused to be published by Defendants were false and were directed to injure or cause harm to Plaintiff Cruz and others in her/their employment.

150.     The statements published or caused to be published by Defendants were made with malice and were intended to and did in fact interfere with Plaintiff Cruz's and other teachers' ability to find alternate employment as teachers.

151.     As a direct and proximate result of the false or malicious statements published or caused to be published by Defendants, Plaintiff Cruz and other teachers, were unable to get alternative employment, and they suffered financial, physical and emotional damages.

## FOURTH CLAIM - PROPERTY RIGHTS VIOLATIONS

152.     Plaintiff Cruz repeats and realleges each and every allegation contained in paragraphs 24 through 135 above with the same force and effect as though fully set forth herein.

153.     From 2005 to present, Defendants sought to and did in fact interfere with the property rights, including but not limited to teaching licenses, of Plaintiff Cruz and other teachers.

30

154.    From 2005 to present, Defendants interference with the property rights, including but not limited to teaching licenses, of Plaintiff Cruz and other teachers, violated her/their constitutional and contractual rights to protection of their property.

155.    As a direct and proximate result of the Defendants interference with the property rights, including but not limited to teaching licenses, of Plaintiff Cruz and other teachers, they suffered financial, physical and emotional damages.

## FIFTH CLAIM - VIOLATION OF CONTRACT RIGHTS

156.    Plaintiff Cruz repeats and realleges each and every allegation contained in paragraphs 24 through 135 above with the same force and effect as though fully set forth herein.

157.    From 2005 to present, Defendants sought to and did in fact interfere with the CBA and other contractual rights, including the rights related to certain disciplinary procedures and processes, of Plaintiff Cruz and other teachers.

158.    From 2005 to present, Defendants interference with the CBA and other contractual rights, including the rights related to certain disciplinary procedures and processes, of Plaintiff Cruz and other teachers, was knowing, negligent and improper.

159.    As a direct and proximate result of the Defendants interference with the CBA and other contractual rights, including the rights related to certain disciplinary procedures and processes, of Plaintiff Cruz and other teachers, they suffered financial, physical and emotional damages.

## SIXTH CLAIM - FRAUD, MISREPRESENTATION & INTENT TO DECEIVE

160.     Plaintiff Cruz repeats and realleges each and every allegation contained in paragraphs 24 through 135 above with the same force and effect as though fully set forth herein.

161.     From 2005 to present, Defendants and their representatives made statements, filed declarations and memoranda in which they made false and misleading statements about the rights related to certain disciplinary procedures and processes, that were applicable to Plaintiff Cruz and other teachers.

162.     From 2005 to present, Defendants and their representatives made statements, filed declarations and memoranda in which they sought to mislead Courts and other judicial officers about the rights related to certain disciplinary procedures and processes, that were applicable to Plaintiff Cruz and other teachers.

163.     From 2005 to present, the false and misleading statements made by Defendants and their representatives related to certain disciplinary procedures and processes, that were applicable to Plaintiff Cruz and other teachers, were made in judicial proceedings pending in NYS Courts and Federal Courts in the Southern and Eastern Districts of NY.

164.     From 2005 to present, the false and misleading statements made by Defendants and their representatives related to certain disciplinary procedures and processes, that were applicable to Plaintiff Cruz and other teachers, did not just relate to the individual claims of or made by Plaintiff Cruz in the various prior case, but was instead part of a larger fraudulent scheme through which Defendants sought to conceal their wrongdoing and in furtherance of the scheme to get rid of older, tenured teachers such as Plaintiff Cruz.

165.    From 2006 to present, Defendants and their representatives, made false statements, misrepresentations and sought to deceive, Plaintiff Cruz, other teachers and the Courts, related to, among other things, (i) the changes in NYS Educ. Law § 3020, (ii) the changes in the CBA, (iii) the authority or lack of authority of Panel for Education Policy to determine §3020-a cases or fix the penalty, (iv) charges made against Plaintiff Cruz, (Defendant NYC DOE employee Superintendent Elaine Gorman made false statements when charging Plaintif Cruz on June 26, 2006), .

166.    Additionally, from 2006 to present, the false statements, misrepresentations and other statements made with intent to deceive made by Defendants and their representatives, including statements that "the sole purpose of (Plaintiff Cruz's union's) and BOE's negotiated agreement" was to eliminate the three person panel to preside over disciplinary hearings and to thereby be able to expedite the disciplinary process.

167.    With the aforesaid statement, Defendants sought to deceive and mislead the Court as to the true motive of Defendant NYC DOE (which was supposed to be replacement of the system set forth in the Education Law with one which would be more just and fair to Plaintiff Cruz and other union members as well as speedier) but which change violated the law when it adopted an Article 21G of the CBA which Plaintiff Cruz and other teachers did not ratify.

168.    From 2006 to present, Defendants sought to deceive and mislead Plaintiff Cruz and other teachers and the Court and hearing officers, about the procedures and rules to be followed in relation to the disciplinary charges preferred against Plaintiff Cruz in June 2006, by stating that she was to be subjected to procedures that only came into effect in August 2006, which they knew to be false and misleading and violated the express terms of the negotiated CBA and the provision of NYS Educ. Law § 3020 (4) (a) (ii) .

169.    In August 2009, Defendants and their representatives made false and misleading statements with intent to deceive Plaintiff Cruz and others, about Plaintiff Cruz's entitlements, the provisions of the law that remained operative as related to Plaintiff Cruz (subdivision (3)(c) of Education Law §3020-a, the authority to charge Plaintiff Cruz and other teachers, the jurisdiction to conduct the hearing against Plaintiff Cruz long after the expiration of the time limitations or failure to meet the time requirements set forth in NYS Educ. Law and CBA, whether or not Plaintiff Cruz and other teachers had a reasonable opportunity to defend herself/themselves at the disciplinary hearing (including testimony at the hearing, representation by counsel, subpoena of witnesses, cross examination of witnesses and testimony taken under oath), the obligation to terminate or continue the hearing on an ex parte basis or after Plaintiff Cruz was stripped of her counsel, payments to and independence of the hearing officers.

170.    From 2005 to 2008, Defendants and their representatives, forged documents, manipulated or fabricated evidence and proffered false testimony against Plaintiff Cruz, including but not limited to (i) meetings that allegedly but never did take place, (ii) the administration of the 2005 Regents exam in Spanish, (iii) progress during marking periods, (iv) principals or associate principal meetings, agendas of meeting and minutes of meetings related to Plaintiff Cruz, and (v) other evidence related to Plaintiff Cruz.

171.    The false and misleading statements made by Defendants and their representatives related to certain disciplinary procedures and processes, that were applicable to Plaintiff Cruz and other teachers, with intent to deceive Plaintiff Cruz and other teachers and the Courts, violated NYS Judiciary Law § 487.

172.    As a direct and proximate result the false and misleading statements made by Defendants and their representatives related to certain disciplinary procedures and

34

processes, that were applicable to Plaintiff Cruz and other teachers, made with intent to deceive, caused Plaintiff Cruz and other teachers to suffer financial, physical and emotional damages.

**WHEREFORE**, Plaintiff Cruz respectfully pray for a judgment from this Court as follows:

(1) Declaring, adjudging and decreeing that Defendants have violated Plaintiff Cruz's and other teachers' 1st Amendment Rights to Freedom of Speech;

(2) Declaring, adjudging and decreeing that Defendants have violated Plaintiff Cruz's and other teachers' 14th Amendment – Due Process Rights;

(3) Declaring, adjudging and decreeing that Defendants have violated Plaintiff Cruz's and other teachers' Civil Rights under 42 USC § 1983;

(4) Declaring, adjudging and decreeing that Defendants have violated Plaintiff Cruz's and other teachers' Property Rights;

(5) Declaring, adjudging and decreeing that Defendants have violated Plaintiff Cruz's and other teachers' Contractual Rights;

(6) Declaring, adjudging and decreeing that Defendants published or caused to be published defamatory statements or statements that were defamatory per se statements that damaged Plaintiff Cruz's and other teachers' in their employment;

(7) Declaring, adjudging and decreeing that Defendants made false and misleading statements with the intent to deceive Plaintiff Cruz, other teachers and Courts, in relation to the disciplinary procedures and rights due to them, and that such statements violated NYS Judiciary Law § 487;

(8) Declaring, adjudging and decreeing that the confinement of Plaintiff Cruz and other teachers to Rubber Rooms was a denial of their due process rights under both U.S.

and NYS Constitutions;

(9)     Declaring, adjudging and decreeing that Plaintiff Cruz and other teachers were improperly subjected to hostile work environments;

(10)    Awarding Plaintiff Cruz and other teachers compensatory, special, exemplary and/or punitive damages in an amount to be determined by a jury;

(11)    Awarding Plaintiff Cruz and other teachers pre-judgment and post-judgment interest, the costs incurred herein, together with reasonable costs and attorney's fees; and

(12)    Awarding Plaintiff Cruz and other teachers such further and other additional equitable and legal relief as this Court deems just and proper.

Dated: New York, NY
       June 3, 2011

*/s/ Josefina Cruz*
Josefina Cruz
301 Cathedral Parkway, Apt. 1-J
New York, NY  10026
Tel. (212) 222-0371
Plaintiff Pro Se

36

and NYS Constitutions;

(9)     Declaring, adjudging and decreeing that Plaintiff Cruz and other teachers were improperly subjected to hostile work environments;

(10)    Awarding Plaintiff Cruz and other teachers compensatory, special, exemplary and/or punitive damages in an amount to be determined by a jury;

(11)    Awarding Plaintiff Cruz and other teachers pre-judgment and post-judgment interest, the costs incurred herein, together with reasonable costs and attorney's fees; and

(12)    Awarding Plaintiff Cruz and other teachers such further and other additional equitable and legal relief as this Court deems just and proper.

Dated:  New York, NY                      /s/ Josefina Cruz
        June 3, 2011                      Josefina Cruz
                                          301 Cathedral Parkway, Apt. 1-J
                                          New York, NY 10026
                                          Tel. (212) 222-0371
                                          Plaintiff Pro Se

36