UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
MARIE ANNE THOMAS, LEVERETT HOLMES,
JOSEFINA CRUZ, BRIAN SALAZAR, DAVID
PAKTER, and PAUL SANTUCCI, on behalf of
all persons similarly situated pedagogues or tenured
educational personnel unfairly brought up on 3020-a
Disciplinary Charges since the 2002 abolishment of
the NYC Board of Education and subjected to unlawful
confinement in Teacher Reassignment Centers a/k/a
Rubber Rooms,

                 Plaintiffs,              **MEMORANDUM AND ORDER**

       -against-                09-CV-5167 (SLT) (RLM)

NEW YORK CITY DEPARTMENT OF EDUCATION
f/k/a BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK;
JOEL I. KLEIN, in his official capacity as Chancellor
of the CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK and individually; LAWRENCE BECKER,
in his official capacity as Chief Executive Officer
DIVISION OF HUMAN RESOURCES and individually;
PHILIP CROWE, in his official capacity as HUMAN
RESOURCES DIRECTOR, and individually; JUDITH
RIVERA, in her official capacity as DEPUTY HUMAN
RESOURCES DIRECTOR and individually,

                 Defendants.
--------------------------------------------------------------------x
**TOWNES, United States District Judge:**

      In November 2009, Plaintiff Josefina Cruz ("Plaintiff" or "Cruz") and four other tenured

New York City public school teachers who had been removed from the classroom and subjected

to disciplinary procedures by the New York City Department of Education (the "DOE")

commenced this action, alleging various federal constitutional violations. Thereafter, the DOE

and the four individuals named as defendants in this action – all of whom are high-ranking

employees of the DOE – collectively moved to dismiss. In a memorandum and order dated

March 29, 2011 (the "Prior M&O"), this Court granted that motion in part, holding, *inter alia*, that the complaint failed to state a due process claim or a First Amendment retaliation claim. This Court granted the plaintiffs leave to amend their pleadings, but placed certain restrictions on the re-alleging of the due process and First Amendment retaliation claims.

In June 2011, Plaintiff, now proceeding *pro se*, filed an amended complaint (the "Amended Complaint") which re-alleges the First Amendment retaliation and due process claims. Defendants now move to dismiss the Amended Complaint, arguing (1) that the restrictions set forth in the Prior M&O preclude Plaintiff from re-alleging these claims and (2) that the claims are barred by *res judicata* and collateral estoppel. For the reasons set forth below, defendants' motion is granted and Plaintiff's Amended Complaint is dismissed.

## BACKGROUND

Prior to her termination in December 2008, Plaintiff was a tenured New York City public school teacher employed by defendant DOE. Amended Complaint at ¶¶ 4, 8. In early 2005 and 2006, Plaintiff and other teachers "spoke out" on various topics which Plaintiff characterizes as "issues of public importance." *Id*. at ¶ 56. Plaintiff alleges that, as a result of these actions, she and the other teachers "were falsely charged or accused as being incompetent, or insubordinate or having engaged in improper sexual or corporal acts, or [being] otherwise unfit for service as teachers." *Id*. at ¶¶ 57-58.

While Plaintiff's Amended Complaint alleges that Plaintiff was charged with "violations for which Defendants sought to impose discipline" in June 2009, *id*. at ¶¶ 62, 82, the pleading does not elaborate on the charges brought against her. However, this Court will take judicial notice of the fact that the "DOE asserted fourteen specifications against Cruz in categories of

incompetent service, insubordination/neglect of duty, and abusive conduct during the 2004–2005, and 2005–2006 school years." *Cruz v. N.Y. City Dep't of Educ.*, 26 Misc.3d 1208(A), 906 N.Y.S.2d 778 (Table), 2010 WL 93235, at *6 (N.Y. Sup. Ct. Jan. 5, 2010). There is nothing in the Amended Complaint or elsewhere to suggest that the "abusive conduct" with which Plaintiff was charged was alleged to be of a physical or sexual nature.

As a result of these charges, Plaintiff was removed from her teaching position and reassigned to a "Teacher Reassignment Center" (or "TRC"), colloquially referred to as a "Rubber Room." *Id.* at ¶ 59. Although defendant Rivera, the Human Resources supervisor in the TRC, may have improperly docked Plaintiff's pay on certain occasions after January 15, 2008, *id.* at ¶109, Plaintiff continued to receive full salary and benefits until December 2008, when her disciplinary hearing concluded and Plaintiff was terminated. *Id.* at ¶¶ 59, 114.

### Plaintiff's Prior State Court Action

Plaintiff has been involved in several other lawsuits relating to her treatment by the DOE, two of which are relevant here. One of these – *Cruz v. N.Y. City Dep't of Educ.*, New York County Index No. 117004/08 – was a State Court proceeding commenced in mid-December 2008 pursuant to Article 75 of New York Civil Procedure Law and Rules (the "CPLR"). In that Article 75 proceeding, Plaintiff sought to set aside the arbitrator's decision that resulted in her termination.

In January 2010, Justice Saliann Scarpulla of the Supreme Court of the State of New York, New York County, ruled that Plaintiff's Article 75 proceeding was "both procedurally infirm and lack[ed] substance on the merits." *Cruz*, 2010 WL 93235, at *6. Justice Scarpulla found two procedural defects. First, the justice noted that Plaintiff had commenced the

3

proceeding by filing a summons and notice, rather than by filing a petition as required by CPLR 304. 2010 WL 93235, at *3. Second, Justice Scarpulla found that the proceeding was time-barred because Plaintiff did not commence the proceeding within 10 days of her receipt of the arbitrator's decision, as required by N.Y. Educ. Law § 3020-a. *Id.*

Justice Scarpulla also addressed the merits of Plaintiff's claims and found Plaintiff's arguments unpersuasive. The justice rejected, *inter alia*, the argument that the disciplinary proceedings were "corrupt" because Plaintiff was forced to proceed without the assistance of counsel," finding that "Cruz was given ample time and opportunity to find replacement counsel" after her original counsel withdrew, but "chose not to retain replacement counsel, and not to participate or provide a defense in the proceedings against her." *Id.* at *5. In addition, Justice Scarpulla rejected arguments that the arbitrator "failed timely to hold a pre-hearing conference, did not complete the hearing within 60-days of the pre-hearing conference, and failed to issue a decision within 30 days of the final hearing date," finding that because Plaintiff "did not timely make and preserve these objections," they were waived. *Id.*

***Plaintiff's Prior Federal Action***

The second of the prior actions which merits discussion was a federal action – *Adams v. N.Y. State Educ. Dep't* – which was commenced in the United States District Court for the Southern District of New York in June 2008. The original complaint in that action was drafted by an attorney named Edward D. Fagan and named 40 plaintiffs, including Cruz, all of whom were New York City public school teachers or other DOE employees who had been charged with misconduct and were involved in disciplinary proceedings. That pleading named the New York State Education Department ("NYSED"), its Commissioner, its Tenure Teaching Hearing Unit

4

(the "Unit"), and approximately 18 NYSED employees as defendants and alleged, *inter alia*, that the hearing procedures employed by the NYSED violated the plaintiff's Fourteenth Amendment due process rights, the terms of their collective bargaining agreement, and provisions of the New York State Education Law.

On October 8, 2008, Fagan was granted leave to withdraw as counsel for approximately half of the 40 plaintiffs, not including Plaintiff. Later that month, Fagan filed an amended complaint on behalf of Plaintiff and his other remaining clients, which discontinued the action against all but one of the 18 NYSED employees and added four new defendants: the City of New York; its Mayor, Michael Bloomberg; the DOE; and Chancellor Klein (collectively, the "City Defendants").

In late 2008, Fagan was disbarred, rendering all of the plaintiffs *pro se.* Thereafter, many of the original 40 plaintiffs either voluntarily dismissed their actions without prejudice or had their actions dismissed without prejudice for failing to appear at conferences or otherwise failing to prosecute their actions. However, Plaintiff and ten other plaintiffs continued to prosecute the action *pro se.* On January 7, 2009, those plaintiffs were granted leave to file a second amended complaint.

Eight of the remaining plaintiffs – including Plaintiff – jointly filed a second amended complaint.[1] That pleading, which named the same defendants as the first amended complaint alleged, *inter alia*, that the defendants violated the plaintiff's First Amendment rights "by retaliating against them after they spoke out against the polices and programs that the . . . City

---

[1]One of the remaining plaintiffs filed a separate amended pleading, which is not relevant to this action. Two other plaintiffs, who failed to file a second amended complaint, were dismissed from the action.

Defendants . . . 'implement[ed]' in the New York City school system and the 'unconstitutionality' of New York Education Law § 3020-a 'as enacted, changed and/or implemented against them.'" *Adams v. New York State Educ. Dept.*, No. 08 Civ. 5996 (VM)(AJP), 2010 WL 624020, at *1 (S.D.N.Y. Feb. 23, 2010) (quoting 2d Am. Compl. ¶¶ 556-66, 627, 631-34). In addition, the complaint alleged that the City Defendants deprived the plaintiffs of "their due process rights to 'fair and impartial' § 3020-a hearings" by including in Article 21G of their collective bargaining agreement with the United Federation of Teachers (the "CBA") provisions "in contravention of NYS Education Law §§ 3020 and 3020-a." *Id.* (quoting 2d Am. Compl. ¶¶ 591-605).

In August 2009, about six months after the second amended complaint was filed, Magistrate Judge Peck held a status conference at which one of Plaintiff's co-defendants voluntarily dismissed her action. Judge Peck gave the remaining seven *pro se* plaintiffs the option of further amending their pleading. However, those defendants elected not to do so.

On September 11, 2009, the City Defendants moved to dismiss the second amended complaint, arguing, *inter alia*, that the First Amendment retaliation claim failed to allege "any details of the plaintiffs' alleged protected speech" and contained "only conclusory allegations of retaliation" and (2) that the due process claim failed to establish that plaintiffs had a "constitutionally protected property interest" and did not receive the process that was due. *Id.* Less than two weeks later, the plaintiffs retained an attorney – Nicholas Alexander Penovsky – to represent them. Penovsky represented all of the remaining plaintiffs for about a month until Plaintiff retained another attorney, Joy Hochstadt, in mid-November 2009. A few weeks later,

another plaintiff – Twana Adams – also retained Hochstadt, but Penovsky continued to represent the other five defendants.

Penovsky and Hochstadt ultimately filed a joint memorandum in opposition to the City Defendants' motion. Thereafter, the motion was referred by District Judge Marrero to Magistrate Judge Peck pursuant to 28 U.S.C. § 636(b)(I)(B). On February 23, 2010, Judge Peck issued a lengthy report and recommendation, in which he recommended that the City Defendants' motion be granted and that the plaintiffs, who "previously had been given a chance to file a third amended complaint and declined to do so," not be granted leave to amend their pleadings. *Adams*, 2010 WL 624020, at *39.

Judge Peck's report and recommendation specifically addressed both the plaintiff's First Amendment retaliation and due process claims. With respect to the former, Judge Peck noted that the speech which allegedly prompted the retaliation against Cruz consisted of complaints "about classroom overcrowding and teacher schedules." *Id*. at *26. Since Plaintiff's speech "concerned her personal grievances." rather than matters of public concern, it could not serve as the basis for a valid First Amendment retaliation claim. *Id*.

With respect to the due process claim, Judge Peck first noted that the plaintiffs contended that Article 21G of the CBA violated their due process rights in three respects: "(1) replacing the three-member panel with a single hearing officer; (2) providing for an "expedited hearing process" where the DOE seeks to discipline teachers for absences or lateness and does not seek to terminate them; and (3) implementing a 'permanent rotational panel' of hearing officers who are allowed to serve 'excessive periods of time' and earn up to $1900 per day." *Id.* at *31 (quoting 2d Am. Compl. ¶¶ 540, 592, 594.). Judge Peck declined to address the argument

relating to the expedited hearing process, noting that none of the plaintiffs alleged that the DOE

was seeking an expedited hearing to discipline them for tardiness or lateness. *Id*., n. 37. Then,

citing to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 547-48 (1985), and other

cases setting forth the constitutional due process requirements, Judge Peck concluded:

> Replacing the three-member panel with a single hearing officer
> and implementing a "permanent rotational panel," neither affects
> whether a tenured teacher receives "oral or written notice of the
> charges against him, an explanation of the employer's evidence,
> and an opportunity to present his side of the story," as due process
> requires.

*Id*. at *31.

The plaintiffs objected to Judge Peck's report and recommendation, arguing that it "did

not take into account relevant facts alleged as to each Plaintiff that, if accepted as true for the

purposes of evaluating a motion to dismiss, would be sufficient to state a cognizable claim for

First Amendment retaliation . . . [and] denial of due process . . . ." *Adams v. New York State*

*Educ. Dept*., 705 F.Supp.2d 298, 301 (S.D.N.Y. 2010). Accordingly, Judge Marrero reviewed

both the First Amendment retaliation and due process claims de novo. *See* 28 U.S.C. § 636(b)(i).

In a Decision and Order dated April 6, 2010, Judge Marrero held that the plaintiff's First

Amendment retaliation claims were "deficient because in each case the incidents upon which

Plaintiffs base their pleadings concerned personal grievances expressed as employees generally

relating to their official duties, work schedules, working conditions, or employer administrative

policies and internal operations, rather than to any matters of public concern raised by Plaintiffs

as private citizens." *Adams*, 705 F. Supp. 2d at 302-03. Judge Marrero also rejected the due

process claims, noting that New York State Education Law § 3020(4) expressly provided that the

procedures set forth in § 3020-a could be modified by collective bargaining agreements. *Id*. at

303. Accordingly, the judge adopted the report and recommendation to the extent that it found that the plaintiff's complaint failed to state First Amendment retaliation and due process claims.

However, Judge Marrero rejected that portion of the report and recommendation that denied the plaintiff leave to file a third amended complaint. The judge noted that the second amended complaint had been "prepared *pro se*," and that the plaintiffs had retained counsel sometime after rejecting Judge Peck's offers to allow them to amend the pleading. *Id.* at 301. "Recognizing the extensive complexities and many pitfalls that are inherent, even for trained attorneys, in drafting a complaint sufficiently alleging multiple constitutional and statutory claims under both federal and state law," Judge Marrero granted the plaintiffs leave to file a third amended complaint. The judge expressly noted that, "[o]n repleading," the plaintiffs could "elaborate on their allegations that Defendants denied them due process of law by not affording them sufficient opportunity to be heard at disciplinary proceedings within a meaningful time." *Id.* at 303.

On May 6, 2010, Penovsky and Hochstadt jointly filed a third amended complaint on behalf of Plaintiff and her six remaining co-plaintiffs. By order dated May 13, 2010, Judge Peck identified certain problems with that pleading and directed the attorneys to file a fourth amended complaint to cure those problems. That pleading, filed June 11, 2010, added one defendant – David M. Steiner, the new State Commissioner of Education – but continued to name all of the City Defendants as parties. The fourth amended complaint alleged, *inter alia*, violations of the plaintiffs' procedural due process rights and First Amendment retaliation in connection with the filing of another lawsuit: *Teahers4Action v. Bloomberg*, S.D.N.Y. Docket No. 08 Civ. 548. The complaint also alleged that the defendants violated three co-plaintiff's First Amendment rights

"by retaliating against them after they spoke out about improper DOE conduct," but did not

advance any such claim on behalf of Plaintiff. *See Adams v. New York State Educ. Dept*.,

752 F. Supp. 2d 420, 432 (S.D.N.Y. 2010).

The City Defendant again moved to dismiss the plaintiffs' due process claims on the

grounds (1) that the fourth amended complaint failed to establish that City Defendants deprived

plaintiffs of a protected property or liberty interest and (2) that the plaintiffs were given the

process that was due. The City Defendants' motion was again referred to Judge Peck. On

August 23, 2010, Judge Peck issued another report and recommendation, again recommending

that the plaintiffs' action be dismissed in its entirety.

With respect to the due process claims, Judge Peck noted that Plaintiff and Adams

claimed to "possess a constitutionally protected property interest in their tenured status and that

defendants deprived them of that property interest." *Id*. at 452. Judge Peck further noted that, in

his prior report and recommendation, he had "already . . . held that plaintiffs' status as tenured

teachers provides them with a constitutionally protected property interest in their continued

employment and is sufficient to trigger their due process rights." *Id*. However, the magistrate

judge rejected the assertions that Plaintiff and Adams had not received the process that was due.

Judge Peck began by addressing an argument made by all of the plaintiffs: "that they did

not receive § 3020-a hearings within a meaningful time after the DOE sent them to the TRCs and

filed charges against them." *Id*. at 456. The magistrate judge rejected that argument, holding

that, because the plaintiffs were paid during their assignment to the TRC, "they were not

deprived of their tenure (their only constitutionally protected property interest) while awaiting

§3020-a hearings." *Id.* Judge Peck then addressed due process arguments raised only by

Plaintiff and Adams – the only other co-defendant represented by Hochstadt – by stating:

> Plaintiffs Adams and Cruz additionally claim that defendants
> violated their due process rights by: (a) "depriving [them] of the
> right to jointly choose a [ ] Hearing Officer" with the DOE (4th
> Am. Compl. ¶¶ 83–84); (b) failing to require the Board of
> Education to vote on the charges against them (4th Am. Compl. ¶
> 83); (c) "abolish[ing] plaintiffs' right to choose a Three Hearing
> Officer Panel" to decide "pedagogical incompetence" cases (4th
> Am. Compl. ¶ 85); and (d) "employing 23 or fewer Hearing
> Officers" (4th Am. Compl. ¶ 89.) Those alleged deprivations do
> not affect whether a tenured teacher receives "oral or written
> notice of the charges against him, an explanation of the employer's
> evidence, and an opportunity to present his side of the story," as
> due process requires.

*Id.* at 456-57 (citing cases).

With respect to the retaliation claims relating to Plaintiff and Adams' alleged

involvement in the *Teachers4Action* case, Judge Peck noted that the alleged retaliation

principally related to the United Federation of Teachers' decision to withdraw lawyers it had

provided to represent Plaintiff and Adams in their disciplinary hearing. The magistrate judge

held that "[a]ny claim in this regard would be against the UFT," but that the plaintiffs had not

sued the UFT. *Id.* at 472. Judge Peck recognized that Plaintiff and Adams had also alleged that

"the DOE decided to go forward with the disciplinary hearings even though plaintiffs did not

have counsel, thus depriving plaintiffs of 'due process,'" but recommended that this claim be

dismissed as abandoned. *Id.* at 473.

The plaintiffs objected to Judge Peck's report and recommendation.[2] With respect to the due process claim, the plaintiffs' objections centered on a footnote in *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005), in which the Second Circuit cited to *Parrett v. City of Connersville*, 737 F.2d 690, 694 (7th Cir. 1984), for the proposition that a teacher suspended with pay who resigned might be able to "bring a procedural due process claim as if actually fired from his job if he can state a claim of constructive discharge." *Id.* at 430 (citing *O'Connor*, 426 F.3d at 200, n. 5). However, in a Decision and Order dated November 18, 2010, Judge Marrero rejected this objection, stating:

> The Court finds no provision in the Fourth Amended Complaint in which Plaintiffs expressly assert constructive discharge either as a distinct claim or as a theory of liability. Nonetheless, even if any of their allegations could be fairly construed to state such a claim, the Court is not persuaded that the circumstances alleged here would come remotely close to those presented in *Parrett* to satisfy the rigorous test of sufficient deliberate, abusive or otherwise intolerable working conditions that must exist to justify an involuntary resignation, thus warranting an application of the constructive discharge doctrine.

*Id.* at 430-31 (citing cases). The plaintiffs did not specifically object to that portion of the report and recommendation which dismissed the retaliation claims relating to Plaintiff and Adams' alleged involvement in the *Teachers4Action* case.

**The Instant Action**

In late November 2009 – after the City Defendants had moved to dismiss the second amended complaint in *Adams*, but three months before Judge Peck issued his February 23, 2010, report and recommendation – Hochstadt commenced the instant action on behalf of Plaintiff,

---

[2]Although those objections were raised solely in a brief filed by Penovsky, Hochstadt joined in those objections.

four other named co-plaintiffs, and all "similarly situated pedagogues or tenured educational personnel unfairly brought up on 3020-a Disciplinary Charges since the 2002 abolishment of the NYC Board of Education and subjected to unlawful confinement in Teacher Reassignment Centers a/k/a Rubber Rooms." *See* Complaint dated Nov. 23, 2009, at 1. The allegations in the original complaint principally related to changes in the DOE's disciplinary procedures which allegedly began in 2002, when the New York City public schools were reorganized. Those allegations are discussed at length in *Thomas v. Board of Educ.*, No. 09-CV-5167 (SLT)(RLM), 2011 WL 1225972 (E.D.N.Y. Mar. 29, 2011) (the "Prior M&O").

The original complaint in this action contained six causes of action, three of which alleged federal claims. The first cause of action related solely to the plaintiffs' reassignment to the TRCs, accusing the defendants of "'deliberately creating hostile work environments' in an attempt to, among other things, 'dissuade tenured educators from asserting whatever rights remain available to NYC teachers under 3020-a' and 'force Plaintiffs and all Class members to retire earlier than they would otherwise wish to.'" *Thomas*, 2011 WL 1225972, at *3 (quoting Complaint dated Nov. 23, 2009, at ¶ 76). The Complaint implied that these actions violated the plaintiff's Fourteenth Amendment rights to due process and, "because '[n]o teacher outside of New York City . . . is confined to a rubber room,' their rights to equal protection under the law." *Id.* (quoting Complaint dated Nov. 23, 2009, at ¶¶ 71, 74).

The second cause of action advanced a First Amendment retaliation claim. However, the Complaint did not specifically allege that any particular plaintiff engaged in constitutionally protected speech. Rather, the second cause of action alleged "that unspecified 'punitive and wrongful actions of Defendants were undertaken, at times, because of the Plaintiffs' . . . exercise

of their 1st Amendment right to oppose defendants' illegal acts of creating false reports and covering up other wrongdoing in their school.'" *Id.* at *4 (quoting Complaint dated Nov. 23, 2009, at ¶ 81).

The third cause of action was purportedly brought pursuant to 42 U.S.C. § 1983 but, with one exception, did not specify (1) the defendants against whom it was brought or (2) what acts or omissions allegedly violated Plaintiffs' federal constitutional rights. In the Prior M&O, this Court described the lone exception as follows:

> This cause of action does allege that defendant Rivera engaged in "[p]ost-hoc rule making" in violation of the privileges and immunities clause of the Fourteenth Amendment by "instruct[ing] her subordinate Donna Dennis to announce on or about January 15, 2008, that conferences with assigned counsel for the purpose of preparing for the 3020-a hearing would be thereafter docked if held during the workday."

*Id.* (quoting Complaint dated Nov. 23, 2009, at ¶ 88). However, this Court noted that Rivera's actions were not mentioned in the "Factual Allegations" portion of the Complaint and that there was "nothing to suggest that any of the Plaintiffs had their pay docked." *Id.*

In late July 2010, the defendants moved to dismiss the original complaint on various grounds. First, the defendants sought to dismiss the plaintiffs' due process claims, arguing (1) that the plaintiffs' property interests were not violated when they were sent to TRCs because their salary and benefits were unaffected by this reassignment and (2) that the process provided to the plaintiffs at their disciplinary hearings exceeded what was constitutionally mandated. Second, the defendants argued that the original complaint failed to state a First Amendment retaliation claim because it did not allege that any of the plaintiffs engaged in any speech, much

less speech on a matter of public concern. Third, the defendants moved to dismiss the third cause of action, believing that this was predicated solely on an equal protection violation.

On September 30, 2010, Plaintiff faxed a letter to Hon. Roanne L. Mann, the Magistrate Judge assigned to this case, expressing dissatisfaction with Hochstadt's representation. That letter further indicated that Plaintiff and some of her co-plaintiffs had contacted another attorney, whom they intended to substitute for Hochstadt. By endorsed order dated October 1, 2010, Judge Mann gave Plaintiff until October 25, 2010, in which to "file a substitution of counsel."

In a letter dated October 21, 2010, Plaintiff and two of her co-plaintiffs – Anna-Marie Thomas and Paul Santucci – indicated that they had not yet obtained counsel, but would proceed *pro se* if they proved unable to do so. When no attorney appeared for Plaintiff or the co-plaintiffs by October 29, 2010, Judge Mann issued an order deeming Plaintiff, Thomas and Santucci to be proceeding *pro se* unless and until an attorney appeared on their behalf. On December 13, 2010, Hochstadt filed a notice of appearance on behalf of Santucci, who chose not to proceed *pro se.* However, no attorney has yet appeared on behalf of either Plaintiff or Thomas.

On March 29, 2011, this Court – having received no supplemental submissions relating to the motion to dismiss from either of the *pro se* plaintiffs – proceeded to adjudicate the defendants' motion. This Court noted that the first of the defendants' arguments – seeking to dismiss the plaintiffs' due process claims – had been addressed in *Adams*, and that Plaintiff was also a plaintiff in that case. Although the defendants had not expressly advanced arguments based on *res judicata* or collateral estoppel, this Court relied on the rationale set forth in *Adams*, 2010 WL 4742168, to dismiss the plaintiffs' due process claims. *Thomas*, 2011 WL 1225972, at *8-*11.

In addressing the second argument, this Court did not cite to *Adams*, but again relied on the same rationale set forth in Judge Peck's February 23, 2010, report and recommendation. The Court noted, *inter alia*, that the speech underlying a First Amendment retaliation claim had to address a "matter of public concern," but that the allegations in the original complaint were "much too vague to permit this Court to determine whether Plaintiffs' speech, if any, related to a matter of public concern or was pursuant to the Plaintiffs' official duties." *Id.* at *13. Accordingly, this Court dismissed the plaintiffs' First Amendment retaliation claims for failure to state a cause of action.

This Court also noted, however, that the memorandum of law which the plaintiffs had filed in opposition to the defendants' motion to dismiss described the speech which allegedly resulted in retaliation as follows:

> Plaintiff # 1 reported the threatening behavior of another teacher toward her to the police . . .; Plaintiff # 2 reported a student who repeatedly assaulted him to the police; . . . Plaintiff # 4 filed grievances concerning class size and failure to grant workplace accommodations, Plaintiff # 5 accepted the Principal's invitation to address a parent and friend fund-raising group and told them of the 25 years of change he had witnessed in the school that included the dilution of the syllabii [ *sic* ] narrowing of the curriculum ... removal of music . . . etc. . . . [H]e also reported a dubious contract for windows to be replaced for the second time in five years, and diversion of the $78,000.00 annual budget earmarked for music to other purposes to the Special Commissioner of Investigations; Plaintiff # 6 reported the scandalous sexual escapades going on in his school to a journalist rather than the school administration because the school administration was itself involved . . . .

*Id.* at *13. In addition, the plaintiffs' memorandum of law requested "permission 'to supplement the complaint with the names of exemplar plaintiffs and class members' and 'the protected

speech . . . they engaged in.'" *Id.* (quoting Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 11).

This Court held that the speech attributed to Plaintiffs #1, #2 and #4 did not relate to matters of public concern, and that Plaintiff #5's speech "during a school fund-raiser at which the Principal had requested that he or she speak . . . was unquestionably pursuant to official duties." *Id*. at *13. This Court also ruled, however, that "Plaintiff # 5's report of possible construction fraud and Plaintiff # 6's speech concerning 'sexual escapades' may relate to issues [of] public concern and may not have been made pursuant to official duties." *Id.* Accordingly, this Court granted the plaintiffs' request for permission to amend the complaint, but "*only* with respect to Plaintiffs # 5 and # 6." *Id*. at *14 (emphasis added). This Court also stated, "If these Plaintiffs wish to state a claim for First Amendment retaliation, they must include specific allegations concerning the speech by Plaintiffs which allegedly gave rise to the retaliation." *Id*.

Turning to the defendants' third argument, this Court noted that the argument was "predicated on the belief that Plaintiffs [were] alleging only that the amendment of New York State Education Law §§ 2590-j, 3020-a and 3020 . . . denies plaintiffs their right to equal protection" by "'treat[ing] New York City different from the rest of the state.'" *Id*. at *14 (citing Defendants' Memorandum of Law in Support of the Motion to Dismiss at 8) (brackets added). This Court noted that the same equal protection argument had been addressed in *Adams*, and relied on the reasoning set forth in Magistrate Peck's August 23, 2010 report and recommendation in holding that "any equal protection claims relating to legislative amendments to the New York Education Law should be dismissed." *Id*. at *16. However, the Court noted that the plaintiffs' third cause of action, brought pursuant to 42 U.S.C. § 1983, did not appear to

relate to these legislative amendments since none of the five defendants named in the original complaint could be held personally liable for actions of the State legislature. *Id*. at *17.

Although it seemed clear that the plaintiffs' § 1983 cause of action did not rest on this equal protection violation, the exact basis for the § 1983 claim was unclear. As this Court observed:

> To say the third cause of action is unclear is a generous overstatement. Although it alleges specific constitutional violations, including an equal protection violation, it does not name specific defendants, much less indicate what these defendants did or failed to do that resulted in the constitutional violations.

*Id*. at *17. Accordingly, this Court directed the plaintiffs to file an amended complaint regarding the basis for the third cause of action. This Court stated:

> Plaintiffs shall explain the basis for their equal protection claims and, to the extent they wish to allege a cause of action pursuant to 42 U.S.C. § 1983, must specifically allege which defendants violated Plaintiffs' Constitutional rights, what each defendant did to violate those rights, and which Plaintiffs' rights were violated.

*Id*. at *21.

### *Plaintiff's Amended Complaint*

On June 3, 2011, Plaintiff filed a 36-page amended complaint (the "Amended Complaint"). Although that pleading expressly states that Plaintiff "understands that as a pro se plaintiff she cannot bring [a] . . . class action under Fed. R. Civ. P. . . . 23," it nonetheless purports to be "a group action on behalf of other similarly situated NYC tenured educators . . . ." Amended Complaint at ¶ 15. Accordingly, the Amended Complaint contains factual allegations concerning not just Plaintiff, but also concerning her co-plaintiffs and other plaintiffs similarly situated.

The Amended Complaint names the same five defendants who were listed as parties in the Original Complaint – the DOE; Chancellor Klein; and three other DOE employees: the Chief Executive Officer of the Division of Human Resources, Lawrence Becker; Human Resources Director Philip Crowe; and Deputy Human Resources Director, Judith Rivera. According to the Amended Complaint, Klein, as Chancellor, was "responsible for [DOE's] operation" from 2002 until the end of 2010; Becker is the "highest level individual below the Chancellor responsible for personnel policies;" and Crowe is "responsible for developing and implementing personnel policies, under the direction of . . . Becker." Amended Complaint at ¶¶ 11-13. However, the Amended Complaint contains no other factual allegations specifically relating to any of these three individuals.

The Amended Complaint contains only slightly more allegations concerning defendant Rivera. The pleading alleges that Rivera was "the Deputy HRD from 2002 until 2009, and was "responsible for the 'oversight' of 'reassigned personnel.'" *Id.* at ¶ 14. The Amended Complaint also alleges that, "[a]fter a January 15, 2008, announcement, . . . Rivera had Plaintiff Cruz's pay checks docked for official business, such as attending the pre-hearing and a grievance hearing." *Id.* at ¶ 109.

The Amended Complaint advances six claims, the first two of which allege federal causes of action. The first claim alleges First Amendment retaliation, stating that "Plaintiff Cruz and other teachers spoke out about matters of public interest," and that "Defendants sought to silence them by, among other things, (i) initiating false disciplinary charges, (ii) defaming them by placing them on Ineligible Lists, (iii) interfering with their property rights and their ability to work in alternate employment, (iv) removing them from their positions and classrooms, (iv)

confining them in Rubber Rooms and depriving them of or delaying timely disciplinary hearings . . . , (vi) interfering with their salary, pensions and other benefits and (vii) imposing excessive charges against their salary and other benefits." *Id.* at ¶¶ 138-39. The Amended Complaint describes the speech in which "Plaintiff Cruz and other teachers" engaged in "early 2005 and 2006," noting that it included comments about NYC public school officials violating State regulations relating to the administration of Regent's Exams; the manner in which NYC public school students were being deprived of equal access to quality education; the manner in which public funds for education were being wasted; the "abuses and horrific conditions" in the NYC public school system; the "cronyism or nepotism of favoritism or corruption of or by superintendents or principals or assistant principals" and "other conduct and practices that affected the quality and education of and in NYC public schools." *Id.* at ¶ 56. Yet, the Amended Complaint does not specifically attribute any particular speech to Plaintiff.

The second claim in the Amended Complaint is entitled, "Due Process Violations," and specifically alleges that "Plaintiff and other teachers" are entitled to protection under the "14th Amendment to the U.S. Constitution and 42 USC § 1983." *Id.* at ¶ 143. However, this cause of action does not attribute specific acts or omissions to particular defendants. Rather, the second claim alleges only that "Defendants subjected and/or caused Plaintiff Cruz and other teachers to be subjected to deprivation of their rights, privileges and protections." *Id*. at ¶ 142.

The fourth claim, entitled "Property Rights Violations," may relate to Plaintiff's due process claim. The fourth claim alleges that "Defendants sought to and did in fact interfere with the property rights, including but not limited to teaching licenses, of Plaintiff Cruz and other teachers." *Id*. at ¶ 153. However, this claim does not specifically mention due process, alleging

only that this interference with property rights violated "constitutional and contractual rights to protection of . . . property."  *Id.* at ¶ 154.

The remaining three claims advance state law claims.  The third claim alleges that, "[f]rom 2005 to present," unspecified "Defendants" defamed Plaintiff by publishing, or causing to be published, statements that accused her of being "incompetent," "insubordinate," and a "malingerer," "'unfit' to serve as a teacher."  *Id.* at ¶ 148.   The fifth claim alleges a "Violation of Contract Rights," alleging that "Defendants" violated Plaintiff's rights under the collective bargaining agreement and other, unspecified contracts, including rights relating "to certain disciplinary procedures and processes."  *Id.* at ¶ 158.

The sixth claim, entitled "Fraud, Misrepresentation & Intent to Deceive," alleges that "Defendants and their representatives" made "false and misleading statements . . . related to certain disciplinary procedures and processes . . . in judicial proceedings in NYS Courts and Federal Courts in the Southern and Eastern Districts of NY."  *Id.* at ¶ 163.   These false and misleading statements "related to, among other things, (i) the changes in NYS Educ. Law § 3020, (ii) the changes in the CBA, (iii) the authority or lack of authority of [the] Panel for Education Policy to determine § 3020-a cases or to fix the penalty [and] (iv) charges made against Plaintiff Cruz."  *Id.* at ¶ 165.   However, the sixth claim implies that a Superintendent Elaine Gorman, who is not named as a defendant in that action, made the "false statements when charging Plaintiff . . . on June 26, 2006," *id.*, and that Plaintiff was terminated as a result of these allegedly false charges.  *Id.* at ¶ 124.

*Defendants' Motion to Dismiss the Amended Complaint*

Defendants now moves to dismiss Plaintiff's Amended Complaint on two grounds.  First, defendants note that this Court's Prior M&O limited the claims that could be raised in the amended pleadings.  Specifically, defendants quote from the Conclusion of the Prior M&O, in which this Court stated (1) that "[o]nly those Plaintiffs . . . who resigned while in the TRCs or who were accused of 'impropriety of a physical or sexual nature' and removed from the payroll without having the opportunity to testify or present witnesses" could re-allege due process claims and (2) that "[o]nly those Plaintiffs identified . . . as Plaintiffs # 5 and # 6" in the memorandum of law in opposition to defendants' initial motion to dismiss could re-allege First Amendment retaliation.  Noting that Plaintiff does not allege that she resigned from the TRC, was accused of either physical or sexual impropriety, or is Plaintiff #5 or #6, defendants argue that "the law of the case compels dismissal of plaintiff's Cruz's amended complaint . . . ."  Defendants' Memorandum of Law in Support of their Motion to Dismiss the Cruz Amended Complaint ("Defendants Memo") at 7.

In their second point, defendants argue that Plaintiff's claims are barred by claim and issue preclusion.  Defendants note that Plaintiff was a plaintiff in *Adams*, and that many of the claims advanced in that case "mirror[] those made in this matter . . . ."  *Id*. at 9.  In addition, defendants note that Plaintiff attempted to challenge her disciplinary proceedings and termination in the Article 75 action, which was dismissed as untimely.  Stating that Plaintiff "already had two bites at the apple" before the Prior M&O was rendered, defendants argue that "[c]laim and issue preclusion require that the results in those cases be given effect and that the instant case be dismissed."  *Id.* at 10.

In response to the first of these two points, Plaintiff argues, among other things, that the Prior M&O "could not and did not preclude new facts and evidence for either Due Process or First Amendment retaliation claims." Letter to Pro Se Clerk of Court from Josefina Cruz, dated Oct. 24, 2011 ("Plaintiff's Objection") at 5. Plaintiff alleges that there are facts in support of these arguments which she "did not know and could not have known despite due diligence," and implies that procedural considerations should not prevent her from vindicating meritorious claims. *Id.* In addition, Plaintiff asserts that because she is a *pro se* plaintiff, this Court should "excuse any inadvertence or excusable neglect on [her] part, so that there can be resolution of this case on the merits." *Id.* at 6.

With respect to issue and claim preclusion, Plaintiff asserts, among other things, that *Adams* involved different parties and different transactions than this case. Plaintiff casts *Adams* as an action against the NYSED alleging errors in the arbitration proceedings, and characterizes the instant action as "against the DOE, alleging violations in rubber room reassignments." *Id.* at 9. In addition, Plaintiff asserts that the Article 75 proceeding cannot serve as a basis for *res judicata* because she has appealed Justice Scarpulla's decision and because she could not raise her federal constitutional issues in the course of such a proceeding. *Id.* at 11.

## DISCUSSION

### Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See*, *e.g.*, *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir.2010). However, "the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a party does not nudge his claims across the line from conceivable to plausible, the complaint must be dismissed. *See id.*

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999). However, if a plaintiff "has already been afforded the opportunity to amend this claim, he need not be . . . afforded another such opportunity prior to dismissal." *Ford v. Smith*, No. 9:11–CV–212 (GTS/RFT), 2012 WL 4492181, at *8 (N.D.N.Y. Sept. 28, 2012) (quoting *Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008), *aff'd*, 357 F. App'x 388 (2d Cir. 2009)).

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citation omitted), materials

outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). However, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc.*, 949 F.2d at 47-48).

### Law-of-the-Case Doctrine

Defendants' first argument relies on the law-of-the-case doctrine. As it relates to this case, that doctrine provides that "when a court has ruled on an issue, 'that decision should generally be adhered to by that court in subsequent stages in the same case.'" *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). However, that doctrine – which is "driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality," *id.* – is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790).

In this case, there is no question that Plaintiff's First Amendment retaliation claim and Fourteenth Amendment due process claim are precluded by the Prior M&O. That decision held that the plaintiffs' original complaint failed to state a First Amendment retaliation claim or due process claim. Although the Prior M&O granted the plaintiffs leave to amend the pleading, "[o]nly those Plaintiffs . . . who resigned while in the TRCs or who were accused of 'impropriety of a physical or sexual nature' and removed from the payroll without having the opportunity to testify or present witnesses" were authorized to re-allege due process claims. *Thomas*, 2011 WL 1225972, at *21. Similarly, "[o]nly those Plaintiffs identified . . . as Plaintiffs # 5 and # 6" in the memorandum of law in opposition to defendants' initial motion to dismiss were authorized to re-allege First Amendment retaliation. *Id*.

Plaintiff does not fit into any of these categories. First, Plaintiff did not resign while in the TRC, but alleges that she was wrongfully terminated. Amended Complaint at ¶ 124. Second, Plaintiff does not allege that the charges against her had anything to do with impropriety of a physical or sexual nature, or that she was prevented from testifying in her own behalf or presenting witnesses at the arbitration. Third, the female Plaintiff cannot be Plaintiff # 5 or # 6, since the pronouns used to describe the actions of these plaintiffs indicates that they are both male. *See* Plaintiff's Memorandum of Law in opposition to defendants' initial motion to dismiss at 6 ("Plaintiff # 5 accepted the Principal's invitation to address a parent and friend fund-raising group and told them of the 25 years of change he had witnessed . . . . Plaintiff # 6 reported the scandalous sexual escapades going on in his school . . . .").

In her response to Defendant's Memo, Plaintiff suggests various reasons for this Court to reconsider its decisions. Plaintiff states that the First Amendment retaliation and due process

claims contained in the Amended Complaint are based on "new facts and evidence" that she did not previously know and could not have discovered through the exercise of "due diligence." Plaintiff's Opposition at 5. In addition, Plaintiff implies that it would unjust to permit procedural considerations to prevent her from advancing meritorious claims. *Id.* In connection with this argument, Plaintiff argues that because she is a *pro se* plaintiff, this Court should "excuse any inadvertence or excusable neglect on [her] part, so that there can be resolution of this case on the merits." *Id.* at 6.

This Court finds Plaintiff's arguments to be unpersuasive. Plaintiff's due process claim relates to her disciplinary proceeding, which concluded in December 2008 – almost a year before this action was initiated. Similarly, the Amended Complaint specifically alleges that the speech which gave rise to the First Amendment retaliation claim occurred in early 2005 and 2006, and any retaliation relating to that speech occurred prior to Plaintiff's termination. Accordingly, all of the facts underlying Plaintiff's due process and First Amendment retaliation claims were either known to Plaintiff or could have been ascertained long before this action was even initiated.

In support of her first argument, Plaintiff asserts that "many of the allegations" in her Amended Complaint could not have been included in earlier pleadings "because either the actions upon which the Amended Complaint is based had not yet occurred or the Defendants engaged in acts of concealment of facts and causes of action and filed false and deceitful pleadings . . . ." Plaintiff's Opposition at 1. However, this Court notes that most, if not all, of the acts or omissions alleged in the Amended Complaint which relate to Plaintiff's due process or First Amendment retaliation claims occurred prior to Plaintiff's December 2008 termination,

and well prior to the filing of the Fourth Amended Complaint in *Adams* and the commencement of this action. Plaintiff's Opposition does not identify specific allegations in the Amended Complaint which could not have been included in earlier pleadings, or any actual concealment of facts.

To be sure, Plaintiff alleges that the DOE deliberately misconstrued the August 13, 2006, amendments to Education Law § 3020 in a way that deprived her of the option of procedures set forth in § 3020-a or the CBA. Plaintiff's Opposition at 3. However, even assuming that Plaintiff only recently learned of this alleged misconstruction, there is nothing to suggest that the procedures set forth in the CBA were constitutionally mandated. Moreover, Plaintiff was obviously aware of the procedures that *were* employed at the hearing and the delays involved in that process. Any due process claims would be based solely on those facts, not on procedures that theoretically might have been employed but that were not.

With respect to Plaintiff's remaining arguments, the fact that Plaintiff is now *pro se* does not entitle her to any special latitude. With the exception of the second amended complaint in *Adams*, all of the pleadings in this case and in her prior actions were all drafted by counsel, as was the original complaint in this case. Moreover, while Plaintiff perceives some injustice in precluding her from attempting to rectify some of the defects in her prior pleading, this Court believes that it would be unjust to defendants to permit Plaintiff to re-litigate her issues repeatedly. As the Second Circuit has observed, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atlantic Airways*, 956 F.2d at 1255 (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.), *cert. denied*, 377 U.S. 934 (1964)).

***Issue and Claim Preclusion***

Even if this Court were to exercise its discretion and reconsider the limitations on re-pleading the due process and First Amendment retaliation claims, it would have to dismiss the first two causes of action alleged in the Amended Complaint. These exact same claims were raised and dismissed on the merits in *Adams*, which involved the same parties and same transactions at issue here. Accordingly, the First Amendment retaliation and due process claims alleged in the Amended Complaint are barred by *res judicata*.

This Court discussed issue preclusion – also known as collateral estoppel – and claim preclusion – also known as *res judicata* – in some detail in its Prior M&O. *See Thomas*, 2011 WL 1225972, at *19-*20. As this Court noted in the Prior M&O, these are judicially created doctrines that "protect parties from having to relitigate identical claims or issues and . . . promote judicial economy." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998)). Although both *res judicata* and collateral estoppel are affirmative defenses, these defenses "may be brought, under appropriate circumstances, . . . via a motion to dismiss . . . ." *Sassower v. Abrams*, 833 F.Supp. 253, 264 n. 18 (S.D.N.Y.1993).

Defendants' Memo principally relies on *res judicata*, arguing that issues raised in the Amended Complaint either were, or could have been, raised in *Adams* and the Article 75 proceeding. "[T]he doctrine of *res judicata,* or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

"To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000) (citing cases).

These elements have been established with respect to *Adams.* Plaintiff was one of the 40 original plaintiffs in *Adams*, and remained a party throughout the entire action. Although the action was originally brought only against the New York State Education Department ("NYSED"), its Commissioner, its Tenure Teaching Hearing Unit (the "Unit"), and approximately 18 NYSED employees, the complaint was amended in February 2009 – about nine months prior to the commencement of this action – to include the City Defendants, including the DOE and Chancellor Klein. Those amended pleadings advanced the same First Amendment retaliation claims and due process claims that Plaintiff seeks to raise herein.

The City Defendants moved to dismiss the First Amendment and due process claim and, in a Decision and Order dated April 6, 2010, Judge Marrero granted that motion. Judge Marrero held that the plaintiff's First Amendment retaliation claims were "deficient because in each case the incidents upon which Plaintiffs base their pleadings concerned personal grievances expressed as employees generally relating to their official duties, work schedules, working conditions, or employer administrative policies and internal operations, rather than to any matters of public concern raised by Plaintiffs as private citizens." *Adams*, 705 F. Supp. 2d at 302-03. Judge Marrero also rejected the due process claims, but granted the plaintiffs leave to amend their complaint with respect to these claims.

The Fourth Amended Complaint in *Adams* made no effort to re-allege a First Amendment retaliation claim on Plaintiff's behalf. Although that pleading did re-allege a due process claim, Judge Peck's report and recommendation dated August 23, 2010, recommended that the due process claim be dismissed. Judge Peck held that the plaintiffs' status as tenured teachers provided them with a constitutionally protected property interest in their continued employment that was sufficient to trigger their due process rights," but rejected the assertions that Plaintiff and Adams had not received the process that was due. Plaintiff and Adams objected to this conclusion but on November 18, 2010, Judge Marrero adopted the report and recommendation in its entirety, thereby dismissing the due process claim on the merits.

Since Judge Marrero dismissed the First Amendment retaliation and due process claims on the merits in *Adams*, plaintiff – as a party to that action – is precluded from re-asserting those same claims against the DOE, Chancellor Klein, or those in privity with them.[3] Accordingly, even if the law-of-the-case doctrine did not preclude Plaintiff from including First Amendment retaliation and due process claims in the Amended Complaint in this action, *res judicata* would preclude Plaintiff from alleging such claims in pleadings filed after November 18, 2010. This prohibition would apply even if the First Amendment retaliation and due process claims alleged in the Amended Complaint were subtly different from the claims raised in *Adams*. Since all of the claims arise from the same events, those claims could have been raised in *Adams*.

---

[3]"[T]he principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995). This Court finds that defendants Becker, Crowe and Rivera – all of whom held high-ranking positions in the DOE's Division of Human Resources at times relevant to this action – are in privity with defendants DOE and Klein.

For these reasons, the First Amendment retaliation and due process claims are dismissed. In light of this conclusion, the Court need not address the questions of what, if any, preclusive effect the Article 75 adjudication had, or whether collateral estoppel also precluded Plaintiff's First Amendment retaliation and due process claims. However, this Court must still examine whether Plaintiff's Amended Complaint suggests any other federal causes of action.

### *Plaintiff's Remaining Causes of Action*

Even construed liberally, Plaintiff's Amended Complaint does not allege federal causes of action other than the First Amendment retaliation and due process claims discussed above. Plaintiff's fourth claim, entitled "Property Rights Violations," alleges that "Defendants sought to and did in fact interfere with the property rights, including but not limited to teaching licenses, of Plaintiff Cruz and other teachers," and that this interference with property rights violated "constitutional and contractual rights to protection of . . . property." Amended Complaint at ¶153-54. However, the "interference" suggested in the Amended Complaint, such as the placement of Plaintiff on the "Ineligble List," resulted from the disciplinary charges against Plaintiff. Accordingly, the fourth claim does not suggest a federal cause of action separate from the due process claim. Rather, that claim appears only to identify other property rights that were violated without due process.

Similarly, although Plaintiff's second claim cites to 42 U.S.C. § 1983, nothing in the Amended Complaint suggests that Plaintiff is seeking to raise a § 1983 claim relating to something other than the manner in which the disciplinary hearing was conducted. In the Prior M&O, this Court advised Plaintiff that if she wished to allege a cause of action pursuant to 42 U.S.C. § 1983, she had to "specifically allege which defendants violated Plaintiff's Constitutional rights, what each defendant did to violate those rights, and which Plaintiffs' rights

were violated." *Thomas*, 2011 WL 1225972, at *21.  The Amended Complaint did not include these specific allegations, thereby implying that Plaintiff is not seeking to raise § 1983 claims against any of the individual defendants.

***The State Law Claims***

"It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  *Klein & Co. Futures, Inc. v. Board of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  Since this Court has dismissed Plaintiff's First Amendment retaliation and due process claims and concludes that there are no other federal causes of action alleged in Plaintiff's Amended Complaint, this Court declines to exercise pendent jurisdiction over the state-law claims contained in the third, fifth and sixth claims.  Accordingly, Plaintiff's Amended Complaint is dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss Plaintiff Josefina Cruz's Amended Complaint is granted.  Plaintiff is dismissed from this action.  To the extent that Plaintiff Cruz wishes to take an immediate appeal from this decision, she may move for entry of partial judgment pursuant to Fed. R. Civ. P. 54(b).

**SO ORDERED**.

_____
            /s/
SANDRA L. TOWNES
United States District Judge

Dated: March 29, 2013
       Brooklyn, New York